# EXHIBITS A, B, C

# EXHIBIT A



275 Battery Street, 23rd Floor, San Francisco, CA 94111 ▪ p 415 986-2800 ▪ f 415 986-2827

David D. Johnson
(415) 365-7262
davidjohnson@crowell.com

December 23, 2013

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Kelly M. Hagemann
Michelman & Robinson, LLP
15760 Ventura Boulevard, 5th Floor
Encino, CA 91436
khagemann@mrllp.com

Re:   IV Solutions v. United Healthcare Services, Inc.
       USDC Case No. CV 12-4887-GAF (MRW)

Dear Kelly:

        This letter is an attempt to meet-and-confer pursuant to Local Rule 37-1 regarding deficiencies that exist in: (i) IV Solutions Inc.'s ("IVS") Responses to Interrogatories by Defendant United Healthcare Services Inc., Set One (Revised), which IVS served on December 2, 2013, and (ii) IVS's Responses to United's Request for Production of Documents, which IVS served on November 15, 2013.

        United is still in the process of reviewing the documents that IVS produced on November 25, 2013 in response to the document requests, and expects to send a supplemental meet-and-confer letter as to IVS's document production at a later time.

<div align="center">

**IVS'S RESPONSES TO UNITED'S INTERROGATORIES**

</div>

        Federal Rule of Civil Procedure 33 requires a responding party to answer each interrogatory "fully." *See Pilling v. General Motors Corp.*, 45 F.R.D. 366 (D.C. Utah 1968) (answers to interrogatories must be full, complete and unevasive). Certain of the responses fail to meet this standard.

<u>**Interrogatory No. 1, 3, 7, 8, 9, 12, 13, and 14**</u>

        Interrogatory Nos. 1, 3, 7, 8, 9, 12, 13, 14 request IVS to "IDENTIFY ALL PERSONS" with relevant information. As defined in the Interrogatories, the term "IDENTIFY ALL PERSONS" requires IVS to provide the "name, position and contact information of the person."

LAACTIVE-601398435.3

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ Anchorage ▪ London ▪ Brussels

Kelly M. Hagemann
December 23, 2013
Page 2

However, the responses for Interrogatory Nos. 1,3, 7, 8, 9, 12, 13, 14 fail to provide the position and contact information for a number of the persons listed.  The responses to Interrogatory Nos. 8 and 9 also fail to provide the complete name of a person listed (*e.g.*, "Fariba ____").

IVS's failure to provide this basic information prevents United from gathering evidence, via subpoena or otherwise, from these persons and hence hinders its ability to litigate this case. Please amend these responses to provide complete answers as required by FRCP 33.

**Interrogatory Nos. 4, 10, and 15**

Interrogatory Nos. 4, 10, and 15 ask IVS to "State the cost YOU actually paid for each of the DRUGS YOU PROVIDED" to D.H., M.S. and A.N.  IVS's responses to these Interrogatories simply refuse to provide this information -- claiming that IVS cannot calculate the cost of the medications because they were purchased in bulk.  These responses appear to be disingenuous and evasive:  Calculation of the cost of a portion of bulk goods provided to an individual requires only grade-school mathematics, and is necessarily within the competence of IVS and its pharmacists.  Moreover, IVS has repeatedly represented to the Court that it actually knows the cost of the drugs it provided to D.H., M.S. and A.N.  For example:

- In the First Amended Complaint (FAC), (¶63), IVS alleges that it provided "expensive . . . pharmaceutical products . . . to members N.A. (sic), D.H. and M.S."  The only way that IVS could make this allegation is if it knew the cost of the drugs it provided to A.N., D.H. and M.S.

- In its Answer to United's Second Amended Counterclaim, ¶ 18, IVS denies that "AWP already includes a substantial markup over its actual cost for the medications provided to A.N., D.H. and M.S."  The only way that IVS could make this denial is if it were able to compute and knew the actual cost of the drugs provided to A.N., D.H. and M.S.

Please amend the responses to provide full and non-evasive answers to these Interrogatories.

**Interrogatory Nos. 5, 11, and 16**

Interrogatories 5, 11 and 16 request IVS to "STATE ALL FACTS" regarding IVS's contentions in the FAC that "Defendants requested" that IVS provide services to A.N., D.H. and M.S.  The use of the term "STATE ALL FACTS" requires IVS to "identify the person(s) involved, including name, position and contact information of the person."  However, the responses for these Interrogatories fail to provide this information.  Namely each of the responses:

Kelly M. Hagemann
December 23, 2013
Page 3

- States "Defendant's agent referred D.H. to Plaintiff", but fails to identify "Defendant's agent" as required.

- States "Defendant's agent entered into a contract with Plaintiff . . .", but again fails to identify "Defendant's agent."

United served these Interrogatories because it has no information that such referrals were ever made. IVS's failure to identify "Defendant's agent" is an evasive answer that still provides United with no facts regarding these allegations. Please amend the responses to identify the person, position and contact information of these alleged "Defendant's agents."

**Interrogatory No. 9:**

Interrogatory No. 9 requests IVS to "IDENTIFY ALL PERSONS who were involved in PROVIDING DRUGS to A.N." "PROVIDING DRUGS" is defined to include "any involvement, whether directly or indirectly, in filling, obtaining, selecting, compounding, preparing, processing, handling, delivering, giving, distributing, sending, transferring, selling, administering, infusing or providing."

The response to this Interrogatory merely states: "The nurse who administered medication to A.N. is Fariba." It fails to identify all other persons, such as pharmacists and technicians, who were involved in other aspects of providing drugs to A.N., such as preparing the prescriptions. Please amend this response to provide a full answer.

**Interrogatory No. 25:**

Interrogatory No. 25 asks IVS to "IDENTIFY EACH INSTANCE, in which YOU agreed, performed or attempted to perform any act to FOREGO PAYMENT potentially due by a CUSTOMER to YOU." IVS's response to this Interrogatory refuses to provide any answer, claiming that the Interrogatory is "ambiguous and unintelligible" and also that providing an answer would require IVS to analyze numerous patient records.

These objections are not well-taken: Interrogatory No. 25 is carefully framed, and each of the main operative words is given a specific definition. If IVS is confused about some portion of the Interrogatory, it should specifically state the element that confuses it, so that United can provide an explanation that will permit IVS to respond. *See Mancia v. Mayflower Textile Services, Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (objecting party must "particularize" basis for objection).

Moreover, the mere fact that responding to an Interrogatory would require the inspection of business records does not excuse a responding party from providing a response. If a response to this Interrogatory would require the examination of voluminous records, IVS may provide a

Kelly M. Hagemann
December 23, 2013
Page 4

response by identifying these records and offering to let Unite examine them. *See* FRCP 33(d). Please provide a response to this Interrogatory.

### IVS'S RESPONSES TO UNITED'S DOCUMENT REQUESTS

United also seeks clarification or further responses for several of IVS's responses to United's document requests.

**Request Nos. 7 and 23**

Request Nos. 7 and 23 seek communications relating to bills IVS generated for the members and communications regarding the price limit agreements referenced in paragraphs 14, 21, 22, 23, 31, 32, 47-52, 54, 61, 64, 67 and 91 of the FAC. In its responses to these requests, IVS states that it assumes that United does not seek communications between IVS and its counsel, and that IVS would therefore not produce these types of communications.

Please clarify whether IVS intends to exclude attorney-client privileged communications by this statement, or whether it intends to exclude all communications between IVS and its counsel irrespective of whether those communications are actually privileged. Any non-privileged communications should be produced.

**Request No. 8**

Request No. 8 seeks documents relating to payments IVS received for bills that it provided to A.N., D.H., and M.S. (the "three United members"). IVS objects that the request is "overbroad because it may encompass records that are beyond the scope of permissible discovery," but agrees to produce "check stubs, explanation of benefits forms, charts reflecting payments, and correspondence discussing payments for each of the three members."

This request is carefully tailored to seek documents relating to the services that IVS provided to the three United members, and goes directly to the payments that IVS has received for those services, one of the central issues in this case. Please explain further why IVS believes this request is overbroad, and identify the types of records relating to this request that IVS asserts are beyond the scope of permissible discovery.

**Request No. 9**

Request No. 9 seeks payroll records, payment records, employee files, contractor records, and any other record for each person or pharmacist that IVS identified in response to Interrogatory No. 3, which seeks the identity of all persons involved in providing drugs to D.H. IVS objects to this request on the grounds that it calls for confidential employee information and financial information protected by the privacy privilege of third parties.

Kelly M. Hagemann
December 23, 2013
Page 5

IVS has attempted to justify its inflated prices by stating that its operating costs are
higher than normal since it, among other things, seeks to recruit and retain excellent employees.
The employee records sought in Request No. 9 are necessary to determine the validity of these
allegations.  While IVS has objected that this information is subject to a privacy privilege, a
party is entitled to third party personnel records where a compelling need is shown and the
information cannot be reasonably obtained from non-confidential sources.  *See Harding Lawson
Assocs. v. Superior Court*, 10 Cal. App. 4th 7, 10 (1992).  This information is relevant to a key
issue in this case and cannot be reasonably obtained from sources other than IVS's payroll
records.  IVS should produce these records concerning the people identified in response to
Interrogatory No. 3.

### Request Nos. 15 and 16

Request Nos. 15 and 16 seek price lists, standard prices, and actual prices that IVS
charged to any of its patients during the relevant time period for Carimune, Gamunex, Octagam,
or any other drug that was provided to the three United members.  IVS objects that these requests
are beyond the scope of permissible discovery, oppressive and burdensome, and seek
information protected by the privacy privileges of third-party patients.  IVS further states that it
intends to limit its production to documents relating only to the three United members, as
opposed to all of its patients during the relevant time period.

IVS's objections that Request Nos. 15 and 16 are beyond the scope of permissible
discovery, oppressive and burdensome are not well-taken.  In its First Amended Complaint
(FAC), IVS alleges that it "charged Defendants its standard retail rates."  FAC ¶¶ 12, 19, 29.
Moreover, in the FAC, IVS further alleges that the rates it charged for its services to the
members was "reasonable."  FAC ¶¶ 71, 76.  United's Request Nos. 15 and 16, which seek
evidence that supports these contentions, are thus entirely appropriate and United is entitled to
this information under FRCP 26(b)(1).

IVS's objection that documents relating to price lists, standard prices, or actual prices
charged by IVS implicate third-party privacy privileges is also not well-taken.  United does not
seek any identifying information about any patients who were treated and expects that any such
information would be redacted from any documents produced by IVS.

### Request No. 32

Request No. 32 seeks documents supporting IVS's contention in paragraph 63 of the
FAC that states: "IV Solutions is a small business without the resources to carry Defendants'
debts for patients such as A.N., D.H., and M.S."  IVS objects to this request on grounds that the
request "does not set forth the material sought with reasonable particularity," requiring IVS to
speculate as to the type of documents sought, and on the basis that the request is burdensome and
protected by IVS's privacy privilege.

Kelly M. Hagemann
December 23, 2013
Page 6

These objections are without merit.  As an initial matter, IVS cannot reasonably contend that it has to speculate as to the type of documents sought, since the request seeks documents supporting IVS's own contention from its FAC.  Further, IVS's objections that this request is burdensome and seeks documents protected by a privacy privilege are not justified in light of the fact that IVS has agreed to produce similar business documents in support of other contentions from its FAC.  *See* Responses to Request Nos. 26-31 and 33.  IVS has chosen to put its financial condition and ability to carry debts at issue, and must provide information and documents relevant to this contention.

**Request Nos. 34-36 and 40**

Request Nos. 34-36 and 40 seek documents relating to the costs for the drugs and supplies IVS provided to the three United members.  IVS objects that these requests are not relevant and exceed the scope of permissible discovery.

In the FAC, IVS claims that the drugs it allegedly sold to the United members were "expensive" and created an "oppressive" financial burden for IVS.  FAC ¶ 63.  The FAC further alleges that IVS refuses to accept "unreasonably low reimbursement rates" for its goods and services.  These allegations thus put the cost IVS paid for the drugs and other products and services it provided at issue.  In the FAC, IVS has also alleged causes of action for quantum meruit and for goods and services rendered.  To prove these claims, IVS must establish the value of the good and services it rendered, and costs of the drugs and supplies provided are highly relevant to this issue.  Moreover, in its Answer to the FAC, United has alleged affirmative defenses which also put the price IVS paid for its drugs at issue – such as Affirmative Defense No. 12, which alleges that the prices IVS charged for its drugs were unconscionably high in relation to their value.  Because both IVS's complaint and United's answer put the cost of IVS's drugs and supplies directly at issue, documents responsive to these Requests should be produced.

**Request No. 41**

Request No. 41 seeks documents relating to IVS's financial condition during the relevant period.  IVS objects that this request is not relevant and is outside the scope of permissible discovery, and that the documents sought are protected by IVS's privacy privilege.

As noted above, IVS has squarely placed its financial condition at issue in this case, by contending that it is unable to carry United's debts.  *See* FAC ¶ 63.  As such, IVS must produce documents relevant to this contention.

**Request Nos. 48 and 49**

Request Nos. 48 and 49 seek documents relating to any offer or agreement by IVS to forego a payment potentially due by any customer or any of the three United members.  IVS objects that these requests are vague and ambiguous, and that the request for documents relating

Kelly M. Hagemann
December 23, 2013
Page 7

to "any customer" is overbroad. IVS also invites a meet-and-confer on these requests to clarify the types of documents sought.

In these requests, United seeks documents relating to every instance in which IVS waived co-pays, deductibles, or co-insurance from any customer. United's counterclaim alleges that IVS has a general practice of waiving these payments, even though IVS indicated that these payments would be charged in the price limit agreements relating to the three United members. Further, this request is not overbroad since United's allegation is that IVS engages in this practice on a widespread basis with all of its patients, not just for the three United members, and United's counterclaim seeks injunctive relief to halt this practice. *See* Second Amended Counterclaim at ¶ 78, Prayer for Relief on First Cause of Action at ¶ 2.

## Request No. 53

Request No. 53 seeks all documents relating to the accusation filed against IVS by the California Board of Pharmacy. IVS objects that this request exceeds the permissible scope of discovery, seeks documents protected by the attorney-client privilege, trade secret privilege, and attorney work product doctrine, and is burdensome.

IVS's objection that this request is beyond the permissible scope of discovery is not well-taken. The Pharmacy Board Accusation contains allegations that mirror many of these in United's Answer and Second Amended Counterclaim, including allegations that IVS makes systematic unconscionable overcharges that far exceed reasonable and customary charges, and that its fails to bill patients for member charges due under their health plans. The Pharmacy Board Accusation also contains other allegations that, if present in this case, could relieve United of any obligation to pay IVS – such as that IVS dispensed drugs without the aid of a pharmacist or without a pharmacist present. As such, this request is relevant both to United's Answer, which denies that United has any liability on IVS's claims, and United's Counterclaim.

IVS's claim that the materials sought by Request No. 53 are privileged is also not well-taken. IVS would not be obligated to produce documents protected by the attorney-client privilege or attorney work product doctrine, and would be entitled to withhold those documents from production and include them in a privilege log. If any responsive documents are protected by the trade secret privilege, the stipulated protective order contains specific provisions relating to the production of such information. It would not be unduly burdensome for IVS to produce the non-privileged documents in this matter. These documents are properly sought and should be produced.

## Request No. 56

Request No. 56 seeks all documents relating to the three United members. IVS objects that this request does not set forth the material sought with reasonable particularity.

Kelly M. Hagemann
December 23, 2013
Page 8

In this request, United seeks any documents relating to IVS's treatment of the three United members. This means IVS's patient files and any other documents relating to IVS's treatment of the members during the relevant time period. This request sets forth the document sought with sufficient particularity.

## REQUEST FOR MEET AND CONFER UNDER LOCAL RULE 37-1

Local Rule 37-1 requires counsel for the parties to confer in good faith to attempt to eliminate discovery disputes and the necessity for a motion to compel. Please contact me to arrange for such a conference. Under Local Rule 37-1, this conference must take place within ten (days) after the service of this letter requesting such a conference.

Regards,

David D. Johnson

## Devoto, Sharan

| | |
|---|---|
| **From:** | Johnson, David |
| **Sent:** | Tuesday, January 14, 2014 3:35 PM |
| **To:** | Devoto, Sharan |
| **Subject:** | FW: 2013-12-23 - Letter to K. Hagemann from D. Johnson re meet and confer.PDF |
| **Attachments:** | 601402554_2013-12-23 - Letter to K. Hagemann from D. Johnson re meet and confer-c.PDF |

**From:** Devoto, Sharan
**Sent:** Monday, December 23, 2013 1:57 PM
**To:** 'khagemann@mrllp.com'
**Cc:** Johnson, David
**Subject:** 2013-12-23 - Letter to K. Hagemann from D. Johnson re meet and confer.PDF

Re:     IV Solutions v. United Healthcare Services, Inc.
        USDC Case No. CV 12-4887-GAF (MRW)

Please see attached letter from David Johnson with today's date concerning the above matter.

Sharan Devoto
Legal Secretary
sdevoto@crowell.com
Direct: 1.415.365.7379 Fax: | 1.415.986.2827

**Crowell & Moring LLP** | www.crowell.com
275 Battery Street, 23rd Floor
San Francisco, CA 94111

This message contains privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT.
Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized
dissemination, forwarding or copying of this e-mail is strictly prohibited.

====================================================================

# EXHIBIT B

1  EDMUND G. BROWN JR.
   Attorney General of California
2  GLORIA A. BARRIOS
   Supervising Deputy Attorney General
3  KIMBERLEE D. KING
   Deputy Attorney General
4  State Bar No. 141813
    300 So. Spring Street, Suite 1702
5   Los Angeles, CA  90013
    Telephone: (213) 897-2581
6   Facsimile: (213) 897-2804
   *Attorneys for Complainant*

7

8                                         BEFORE THE
                                    BOARD OF PHARMACY
9                          DEPARTMENT OF CONSUMER AFFAIRS
                                  STATE OF CALIFORNIA
10

11  In the Matter of the Second Amended          Case No. 3606
    Accusation Against:
12                                               OAH No. L-2010080069

13  **IV SOLUTIONS INC.**
    **Alireza Varastehpour-President**           **SECOND AMENDED ACCUSATION**
14  **3384 Motor Avenue**
    **Los Angeles, CA 90034**
15  **Original Pharmacy Permit No. PHY 45885**

16  **And**

17  **RENEE SADOW**
    **24 Union Jack St., #3**
18  **Marina del Rey, CA 90292-8600**
    **Pharmacist License No. RPH 27398**
19
                                   Respondents.
20

21       Complainant alleges:

22                                        **PARTIES**

23       1.    Virginia Herold (Complainant) brings this Second Amended Accusation solely in her

24  official capacity as the Executive Officer of the Board of Pharmacy, Department of Consumer

25  Affairs.

26       2.    On or about May 9, 2002, the Board of Pharmacy issued Original Pharmacy Permit

27  Number PHY 45885 to IV Solutions Inc. with Alireza Varastehpour aka Alex Vara as President

28  (Respondent IV Solutions).  The Original Pharmacy Permit was in full force and effect at all

                                             1

1   times relevant to the charges brought herein and will expire on May 1, 2010, unless renewed.

2   Board records show that Jeannie Kim was the Pharmacist-in-Charge (PIC) from November 25,

3   2008 to February 16, 2009 and Renee Sadow has been the PIC from February 16, 2009 to the

4   present.

5       3.   On or about April 25, 1971, the Board of Pharmacy issued Original Pharmacist

6   License Number RPH 27398 to Renee Sadow (Respondent PIC Sadow).  The license was in full

7   force and effect at all times relevant to the charges brought herein and will expire on June 30,

8   2011, unless renewed.

9   <u>**JURISDICTION**</u>

10       4.   This Accusation is brought before the Board of Pharmacy (Board), Department of

11   Consumer Affairs, under the authority of the following laws.  All section references are to the

12   Business and Professions Code unless otherwise indicated.

13       5.   Section 4300 provides, in pertinent part, that every license issued by the Board is

14   subject to discipline, including suspension or revocation.

15       6.   Section 4301 of the Code states:

16   "The board shall take action against any holder of a license who is guilty of unprofessional

17   conduct or whose license has been procured by fraud or misrepresentation or issued by mistake.

18   Unprofessional conduct shall include, but is not limited to, any of the following:

19   . . . .

20   "(c) Gross negligence.

21   "(f) The commission of any act involving moral turpitude, dishonesty, fraud, deceit, or

22   corruption, whether the act is committed in the course of relations as a licensee or otherwise, and

23   whether the act is a felony or misdemeanor or not.

24   "(g) Knowingly making or signing any certificate or other document that falsely represents

25   the existence or nonexistence of a state of facts.

26   . . . .

27   "(j) The violation of any of the statutes of this state, or any other state, or of the United

28   States regulating controlled substances and dangerous drugs.

2

. . . .

"(o) Violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of or conspiring to violate any provision or term of this chapter or of the applicable federal and state laws and regulations governing pharmacy, including regulations established by the board or by any other state or federal regulatory agency.

"(p) Actions or conduct that would have warranted denial of a license.

(q) Engaging in any conduct that subverts or attempts to subvert an investigation of the board."

7.     Section 4051 of the Code states:

"(a) Except as otherwise provided in this chapter, it is unlawful for any person to manufacture, compound, furnish, sell, or dispense any dangerous drug or dangerous device, or to dispense or compound any prescription pursuant to Section 4040 of a prescriber unless he or she is a pharmacist under this chapter.

"(b) Notwithstanding any other law, a pharmacist may authorize the initiation of a prescription, pursuant to Section 4052, and otherwise provide clinical advice or information or patient consultation if all of the following conditions are met:

"(1) The clinical advice or information or patient consultation is provided to a health care professional or to a patient.

"(2) The pharmacist has access to prescription, patient profile, or other relevant medical information for purposes of patient and clinical consultation and advice.

"(3) Access to the information described in paragraph (2) is secure from unauthorized access and use."

8.     Section 4078 (a)(1) of the code provides that "no person shall place a false or misleading label or description". Subsection (a) (2) further provides that "no prescriber shall direct that prescription be labeled with any information that is false or misleading".

9.     Section 4076 (a) (6) provides, in pertinent part, that a pharmacist about dispense a prescription except container that meets the requirement of state and federal law and is **correctly** labeled with the name and address of the pharmacy.

3

10.   Section 4081 of the code states:

"(a) All records of manufacture and sale, acquisition, or disposition of dangerous drugs or dangerous devices shall be at all times during business hours (section by authorized officers of the law, it shall be preserved for at least three years from the date of making.  A current inventory shall be kept by every wholesaler [and] pharmacy holding a currently valid and unrevoked certificate, license, [or] permit....."

"(b) The owner, officer, and partner of any pharmacy or wholesaler...shall be jointly responsible with the pharmacist-in-charge or representative-in-charge, for maintaining the records and inventory."

11.   Section 4113 (b) of the Code provides that the pharmacist-in-charge shall be responsible for a pharmacy's compliance with all state and federal laws and regulations pertaining to the practice of pharmacy.

12.   Section 4125 (a) provides that "[e]very pharmacy shall establish a quality assurance program that shall, at a minimum, document medication errors attributable, in whole or in part, to the pharmacy or its personnel".

13.   Section 4305 of the Code states:

"(a) Any person, who has obtained a license to conduct a pharmacy, shall notify the board within 30 days of the termination of employment of any pharmacist who takes charge of, or acts as manager of the pharmacy.  Failure to notify the board within the 30-day period shall constitute grounds for disciplinary action.

"(b) Any person who has obtained a license to conduct a pharmacy, who willfully fails to notify the board of the termination of employment of any pharmacist who takes charge of, or acts as manager of the pharmacy, and who continues to permit the compounding or dispensing of prescriptions, or the furnishing of drugs or poisons, in his or her pharmacy, except by a pharmacist, shall be subject to summary suspension or revocation of his or her license to conduct a pharmacy.

"(c) Any pharmacist who takes charge of, or acts as manager of a pharmacy, who terminates his or her employment at the pharmacy, shall notify the board within 30 days of

4

1  termination of employment.  Failure to notify the board within the 30-day period shall constitute

2  grounds for disciplinary action."

3      14.   Section 4306.5 (a) provides that unprofessional conduct for a pharmacist includes acts

4  or omissions that involve, in whole or in part, the inappropriate exercise of his or her education,

5  training, or experience as a pharmacist, whether or not the act or omission arises in the course of

6  the practice of pharmacy or the ownership, management, administration, or operation of a

7  pharmacy or other entity licensed by the board.

8      15.   Section 4322 of the Code states that:

9      "Any person who attempts to secure or secures licensure for himself or herself or any other

10 person under this chapter by making or causing to be made any false representations, or who

11 fraudulently represents himself or herself to be registered, is guilty of a misdemeanor, and upon

12 conviction thereof shall be punished by a fine not exceeding five thousand dollars ($5,000), or by

13 imprisonment not exceeding 50 days, or by both that fine and imprisonment."

14     16.   Title 16, California Code of Regulations (hereinafter "CCR") section 1709.1,

15 provides in part, that a pharmacist-in-charge of a pharmacy shall be employed at that location and

16 shall have responsibility for the daily operation of the pharmacy.

17     17.   CCR section 1711(d) provides that each pharmacy shall use the findings of its quality

18 assurance program to develop pharmacy systems and workflow processes designed to prevent

19 medication errors. An investigation of each medication error shall commence as soon as is

20 reasonably possible, but no later than 2 business days from the date the medication error is

21 discovered. All medication errors discovered shall be subject to a quality assurance review.

22     18.   CCR section 1716 provides that pharmacists shall not deviate from the requirements

23 of a prescription except upon the prior consent of the prescriber or to select the drug product in

24 accordance with Section 4073 of the Business and Professions Code.

25     19.   CCR Section 1751.6, subsection (a) states that consultation shall be available to the

26 patient and/or primary caregiver concerning proper use of sterile injectable products and related

27 supplies furnished by the pharmacy.

28 ///

20.    CCR Section 1793.1 states that "[o]nly a pharmacist, or an intern pharmacist acting under the supervision of a pharmacist, may:

(a) Receive a new prescription order orally from a prescriber or other person authorized by law.

(b) Consult with a patient or his or her agent regarding a prescription, either prior to or after dispensing, or regarding any medical information contained in a patient medication record system or patient chart.

(c) Identify, evaluate and interpret a prescription.

(d) Interpret the clinical data in a patient medication record system or patient chart.

(e) Consult with any prescriber, nurse or other health care professional or authorized agent thereof.

(f) Supervise the packaging of drugs and check the packaging procedure and product upon completion.

(g) Perform all functions which require professional judgment."

21.    Section 4307(a) of the Code provides that any person who has been denied a license or whose license has been revoked or is under suspension, or who has failed to renew his or her license while it was under suspension, or who has been a manager, administrator, owner, member, officer, director, associate, or partner of any partnership, corporation, firm, or association whose application for a license has been denied or revoked, is under suspension or has been placed on probation, and while acting as the manager, administrator, owner, member, officer, director, associate, or partner had knowledge of or knowingly participated in any conduct for which the license was denied, revoked, suspended, or placed on probation, shall be prohibited from serving as a manager, administrator, owner, member, officer, director, associate, or partner of a licensee.

22.    Section 125.3 of the Code states, in pertinent part, that the Board may request the administrative law judge to direct a licentiate found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case.

///

6

### DRUG DEVICE CLASSIFICATION(S)

23.   "Lovenox" is a prescription anticoagulant that prevents the formation of blood clots and is a dangerous drug per Business and Professions Code Section 4022.

24.   The "Curlin 4000 CMS Pump" is an ambulatory infusion pump and a dangerous device which can only be obtained by prescription from a licensed practitioner.

### FIRST CAUSE FOR DISCIPLINE

#### (Moral Turpitude, Dishonesty, Fraud, Deceit, or Corruption)

25.   Respondents IV Solutions, PIC Sadow, and Respondent Vara are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivision (f), which prohibits the commission of any act involving moral turpitude, dishonesty, fraud, deceit, or corruption, whether the act is committed in the course of relations as a licensee or otherwise, and whether the act is a felony or misdemeanor or not.  The circumstances are as follows:

#### Patient JM

26.   From about November 6, 2009 to September 1, 2010, Respondent IV Solutions furnished several prescription dispensings and sent excessively high bills to JM's insurance plan provider in the amount of $2,031.446.10 in drug treatments while Respondent IV Solutions only incurred an acquisition cost of approximately $34,187.87.

Respondent IV Solutions claimed that its charges in the total amount of $2,031,446.10 are "usual and customary", however, JM's wife researched price comparisons of the average wholesale price of an in-network pharmacy and retail cash price (Walgreens) and Respondent IV Solutions price of the same medications charged to JM which revealed that Respondent's charges were grossly excessive as follows:

///

///

///

///

///

7

| Drug: Pegasys 180mcg/0.5ml syringe; one kit=4 doses (syringes) | |
|---|---|
| Average wholesale price (AWP) | $2764.76 per kit |
| In-network pharmacy's cash price (Walgreens) | $2764.76 per kit |
| IVS charged price | $117,824.00 per kit |

| Drug: ribavirin 200mg; one bottle=84 capsules | |
|---|---|
| Average wholesale price (AWP) | $525.00 per bottle |
| In-network pharmacy's cash price (Walgreens) | $607.99 per bottle |
| IVS charged price | $12,780.00 per bottle |

| Drug: Procrit 40,000 units/ml; one vial | |
|---|---|
| Average wholesale price (AWP) | $777.60 per vial |
| In-network pharmacy's cash price (Walgreens) | $812.00 per vial |
| IVS charged price | $34,425.00 per vial |

| Drug: Neupogen 300mcg/ml; one vial | |
|---|---|
| Average wholesale price (AWP) | $327.99 per vial |
| In-network pharmacy's cash price (Walgreens) | $355.00 per vial |
| IVS charged price | $13,143.00 per vial |

The prescriptions were transmitted by the physician to Respondent IV Solutions, which was an out-of-network pharmacy. Neither the physician nor Respondent IV Solutions ever revealed to JM or his wife that the pharmacy was out of network. Moreover, Respondent IV Solutions failed to provide JM with billing for over a year. The bills were only sent to the insurance company.

The total amount paid by insurance (paid directly to the patient) is $899,577.76. In addition to leaving a remaining balance to the patient in the amount of $1,131,868.34, the overcharging of the drugs affects JM's lifetime coverage cap. JM and his wife retained an attorney who demanded documentation from Respondent IV Solutions. Respondent IV Solutions, through its attorney, produced a forged copy of an agreement and consent form that was purportedly signed by JM. JM and his wife denies ever signing this document.

**Patient RM**

27.    From about April 22, 2011 to May 28, 2011, Respondent IV Solutions furnished several dispensings of Cubicin and billed RM's insurance plan in the amount of $12,755 for each day's drug treatment while Respondent only incurred an acquisition cost of approximately $177.27 for each day. Other pharmacy services such as home health care and nursing care were

billed to insurance in amounts totaling over $59,000. Patient RM was referred to Respondent IV Solutions by the health care provider. Neither the health care provider nor Respondent IV Solutions informed Patient RM that it was an out of network provider. Patient RM's insurance paid out a total of $514,769.43 to Respondent for drugs. Respondent incurred a total cost of $7,309.04 for the drugs.

## SECOND CAUSE FOR DISCIPLINE

### (Obtaining a Dangerous Device from an Unlicensed Wholesaler)

28.     Respondents IV Solutions and PIC Sadow are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivisions (j), (o), and (p) in conjunction with Business and Professions Code section 4169(a)(1) which states that a person or entity may not purchase, trade, sell, or transfer dangerous drugs and devices at wholesale with a person or entity that is not licensed with the Board as a wholesaler or pharmacy. Respondents violated section 4169(a)(1) in that from about January 1, 2009 to about January 1, 2012, Respondent IV Solutions obtained Curling 4000 CMS pumps from an unlicensed wholesaler located in Cincinnati, Ohio.

## THIRD CAUSE FOR DISCIPLINE

### (Performing the Duties of a Pharmacist without a License)

29.     Respondents IV Solutions, PIC Sadow, and Vara are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivisions (j), (o), and (p) in conjunction with California Code of Regulations 1793.1 subsection (b) which states that only a pharmacist may consult with a patient or his agent regarding a prescription and subsection (e) which states that only a pharmacist may consult with any prescriber, nurse or other health care professional or authorized agent. The circumstances are that from about April 17, 2010 to April 19, 2010, as President of Respondent IV Solutions Inc located at 3384 Motor Avenue in Los Angeles, Respondent Vara, a non-pharmacist, performed the duties of a registered pharmacist without being licensed, by having calls delivered to him and/or responding to calls delivered to the pharmacy for the following reasons:

///

9

a.  4/17/10 at 9:17 am-from Becky (reason-need the RPH) delivered to Alex;
b.  4/17/10 at 9:55 am-from L. Buted for pt. E. E. (reason-need the RPH) delivered to Alex;
c.  4/17/10 at 11:17 am-from L. Kerr for pt. T. (reason-need the RPH) delivered to Alex;
d.  4/17/10 at 11:32 am-from Kevin Gilbreth for pt. D. Kordyak (reason-nursing) delivered to Alex;
e.  4/17/10 at 12:49 am from C. Serna at Genus Home Care for pt. D. Kordyak (reason-office) delivered to Alex;
f.  4/17/10 at 2:39 pm from Donna Gilbreth for pt. D. Kordyak (reason-need the RPH) delivered to OC Pharmacist; message- family member called stating pump is programmed incorrectly;
g.  4/17/10 at 3:25 pm from Donna Gilbreth for D. Kordyak (reason-delivery issue) message-returning call from Alex;
h.  4/17/10 at 3:36 pm from Kevin Gilbreth for D. Kordyak (reason-need the RPH) delivered to OC Pharmacist; message "If there is something wrong with the pump can I get one that works/its Sat and I need this done before Sunday";
i.  4/17/10 at 5:20 pm from Rachel @ Genus Home Care for D. Kordyak (reason-need the RPH) delivered to Alex;
j.  4/17/10 at 7:16 pm from Connie Li (reason-need the RPH) delivered to Alex;
k.  4/18/10 at 3:15 pm from Cheryl @Tri City Hospital for pt. J.R. (reason-need the RPH) delivered to Alex;
l.  4/19/10 at 7:55 pm from Dr. Solsky (reason- need the RPH) delivered to OC Pharmacist; message-***Requesting to speak to Alex***.

## FOURTH CAUSE FOR DISCIPLINE

### (Performing the Duties of a Pharmacist without a License)

30.     Respondents IV Solutions, PIC Sadow, and Vara are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivisions (f), (j), (o), and (p) in conjunction with California Code of Regulations 1793.1 subsection (g) which states that only a pharmacist may perform all functions which require professional judgment. The circumstances are as follows:

On April 17, 2010, Respondent Vara responded to calls from caregivers D. Gilbreth and K. Gilbreth that were delivered to the pharmacy for the following reason: Need the Pharmacist. Respondent Vara represented himself to be a pharmacist. The caregivers informed Respondent Vara that the Curlin IV pump #115698 rented from their pharmacy malfunctioned and that the settings did not match the order/label which resulted in D. Kordyak receiving 13.5gm of Zosyn IV continuously instead of 3.375gm every six (6) hours intermittently. Respondent Vara performed the duties of a pharmacist without being licensed when he determined that the Curlin IV pump #115698 was functioning properly and refused to replace the pump as requested by the patient's caregivers. Moreover, when D. Gilbreth requested to speak to a pharmacist,

10

1  Respondent stated "you can speak to me". Despite her repeated requests, no pharmacist from

2  Respondent IV Solutions ever returned D. Gilbreth's call nor did a pharmacist ever contact any of

3  the caregivers, patient, prescriber, nurse, or other health care professional regarding the

4  aforementioned IV pump issue.

5  ### FIFTH CAUSE FOR DISCIPLINE

6  #### (False Representation of Licensure)

7      31.    Respondent Vara is subject to disciplinary action for unprofessional conduct within

8  the meaning of Code Section 4301, subdivisions (f), (j), (o), and (p) and Code Section 4322 for

9  falsely representing himself as a pharmacist. Specifically, on April 17, 2010, Respondent Vara

10  represented himself as a pharmacist to Genus Home Care and J. Haywood, Administrator for

11  Genus Home Care.

12  ### SIXTH CAUSE FOR DISCIPLINE

13  #### (False and Misleading Label on Prescription)

14      32.    Respondents IV Solutions, and PIC Sadow is subject to disciplinary action for

15  unprofessional conduct within the meaning of Code Section 4301 subdivisions (f), (j), (o), and (p)

16  in conjunction with Business and Professions Code Section 4078(a)(1) which states that no

17  person shall place a false or misleading label on a prescription. Moreover, Respondent violated

18  Code Section 4076(a)(6) which states, in pertinent part, that a pharmacist shall not dispense a

19  prescription except in a container that is **correctly** labeled with the name and address of the

20  pharmacy. Specifically, on April 2, 2010 and April 7, 2010, Respondent PIC Sadow used

21  prescription labels on RX 1813 and RX1837 that falsely represented the name of the pharmacy as

22  "IV Solutions Clinical Pharmacy" an unknown, unlicensed pharmacy instead of "IV Solutions

23  Inc" which is identified on their pharmacy's license PHY 45885.

24  ### SEVENTH CAUSE FOR DISCIPLINE

25  #### (Records of Dangerous Drugs and Devices Kept Open for Inspection)

26      33.    Respondent IV Solutions and PIC Sadow are subject to disciplinary action for

27  unprofessional conduct within the meaning of Code Section 4301 subdivisions (j), (o), and (p) in

28  conjunction with Business and Professions Code Section 4081(a) and (b) by failing to make all

Second Amended Accusation

1    records of manufacture and of sale, acquisition, or disposition of dangerous drugs or dangerous

2    devices available for inspection by the Board as requested.

3        Specifically, on April 2, 2010, Respondent IV Solutions, generated a Delivery Ticket to D.

4    Kordyak and sent wound care supplies including 3x1000ml Sodium Chloride Irrig.; 72 ABD Pads

5    7.5x8inches; 10 adhesive remover; 1 admission packet; 200 Alcohol Prep Pads; 15 Alcohol

6    Swabtx3; 50 Gauze soft sponge 2x2 6Ply; 100 Gauze sponge 4x4 8Ply; 12 Gauze Fluff Roll

7    4.5in.x 4.1Yd; 100 Gloves powder free latex (medium); 10 Povie Swabstix 3s; 10 Syringe with

8    Catheter Tip; and 3 Tape Paper 2" that were not ordered by the prescriber.

9        Respondents failed to provide the list of dangerous drugs, supplies, including wound care

10   supplies, and prescription records, billing records, or protocol for the supplies and/or dangerous

11   drugs sent to D. Kordyak as requested by the Board on August 11, 2010 and September 16, 2010.

## EIGHTH CAUSE FOR DISCIPLINE

### (Medication Error)

14       34.    Respondent IV Solutions and PIC Sadow are subject to disciplinary action for

15   unprofessional conduct within the meaning of Code Section 4301 subdivisions (j), (o), and (p) in

16   conjunction with California Code of Regulations 1716 as follows:

17       On April 2, 2010, Respondent PIC Sadow programmed the Curlin pump #115698 using the

18   intermittent setting but failed to lock down the settings to secure the prescribed dosing regiment

19   as required.  On April 17, 2010, D. Kordyak's family discovered that the total 24 hour dose of

20   13.5gm of Zosyn antibiotic was delivered to him by an unsecured Curlin pump #115698 on the

21   continuous setting instead of the intermittent setting of four divided doses of 3.375gm/dose every

22   six (6) hours.

## NINTH CAUSE FOR DISCIPLINE

### (Quality Assurance Review Not Initiated)

25       35.    Respondent IV Solutions and PIC Sadow are subject to disciplinary action for

26   unprofessional conduct within the meaning of Code Section 4301 subdivisions (j), (o), and (p) in

27   conjunction with Business and Professions Code section 4125(a) which requires a pharmacy to

28   establish a Quality Assurance Program to review medication errors and California Code of

12

1   Regulation, title 16, section 1711(d) which requires all medication errors discovered are subject to

2   a quality assurance review with an investigation to commence within two (2) business days from

3   the date of discovery.  The circumstances are as follows:

4       On April 17, 2010, Respondent PIC Sadow failed to conduct a quality assurance review

5   within two days after discovering that the Curlin pump #115698 continuously infused the total 24

6   hours dose of 13.5gm of IV Zosyn into D. Kordyak instead of intermittently as prescribed.

7   <center>**TENTH CAUSE FOR DISCIPLINE**</center>

8   <center>**(Subvert or Attempt to Subvert an Investigation)**</center>

9       36.   Respondent IV Solutions, Vara, and PIC Sadow are subject to disciplinary action for

10  unprofessional conduct within the meaning of Business and Professions Code section 4301(q) for

11  engaging in conduct that subverted or attempted to subvert an investigation of the Board.

12  Specifically, Respondents failed to provide the list of dangerous drugs, supplies, including wound

13  care supplies, and prescription records, billing records, or protocol for the supplies and/or

14  dangerous drugs sent to D. Kordyak as requested by the Board on August 11, 2010 and

15  September 16, 2010.

16  <center>**ELEVENTH CAUSE FOR DISCIPLINE**</center>

17  <center>**(Unprofessional Conduct-Misuse of Education)**</center>

18      37.   Respondent PIC Sadow is subject to disciplinary action for unprofessional conduct

19  within the meaning of Business and Professions Code Section 4306.5(a) for her inappropriate

20  exercise of her education, training or experience as a pharmacist. On April 2, 2010, Respondent

21  PIC Sadow programmed the Curlin pump #115698 using the intermittent setting but failed to lock

22  down the settings to secure the prescribed dosing regiment as required.  On April 17, 2010, D.

23  Kordyak's family discovered that the total 24 hour dose of 13.5gm of Zosyn antibiotic was

24  delivered to him by an unsecured Curlin pump #115698 on the continuous setting instead of the

25  intermittent setting of four divided doses of 3.375gm/dose every six (6) hours.

26  ///

27  ///

28  ///

<center>13</center>

## TWELFTH CAUSE FOR DISCIPLINE

### (Failure to have Consultation Available)

38.    Respondents IV Solutions, PIC Sadow, and Vara are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivisions (j), (o), and (p) in conjunction with California Code of Regulations 1751.6 subsection (a) which states that consultation shall be available to the patient and/or primary caregiver concerning proper use of sterile injectable products and related supplies furnished by the pharmacy.  The circumstances are as follows:

On October 8, 2010, Respondent IV Solutions dispensed and delivered a curlin infusion pump along with sterile injectable products and relatel supplies to C.R., who had been discharged from the hospital the previous day after her foot surgery.  When the pharmacy delivered the pump, no consultation was provided to C.R. or any caregiver for C.R.  The employee who delivered the pump left a receipt for the delivered items.

On or about October 9, 2010, a home health care nurse visited C.R., to administer intravenous morphine via the Curlin infusion pump.  The nurse was unfamiliar with the Curlin pump and called all of the phone numbers known to her for IV Solutions, but was unable to reach anyone because the phone calls would not roll over to the on-call service.  The Director of the home health care service and C.R. also tried to call as well without success.  Consequently, the nurse and C.R. decided to forego the morphine and C.R. had to rely upon less effective medication to address her pain.

During the Board investigation, Respondent Vara admitted that Respondent IV Solutions does not provide in-service consultations to home health care agency nurses who experience trouble using the pump for their patients as he considers it to be a nursing issue.

### THIRTEENTH CAUSE FOR DISCIPLINE

### Making Up False Document)

Respondent is further subject to disciplinary action for unprofessional conduct under Code Section 4301 subdivision (f) and (g) for creating a false document.  Complainant realleges paragraph 38 as though fully set forth herein.  On Monday, October 11, 2010, C.R. felt that she

14

1  no longer needed the above-rerenewal unused morphine and contacted the pharmacy to request a

2  refund.  She was told that someone would get back to her, however, she received no response.

3  The unused pump, supplies and morphine were picked up by the pharmacy on October 12, 2010

4  and Respondent IV Solutions left a receipt.  The receipt reflects that three (3) bags of morphine

5  were charged to C.R. for a total of $210.00, when in fact, she only received one bag of morphine

6  as indicated on her initial delivery ticket.

7  ### FOURTEENTH CAUSE FOR DISCIPLINE

8  #### (Making of False Documents)

9  39.    Respondent IV Solutions and Vara are subject to disciplinary action under Code

10  Section 4301 subdivision (f) and (g) in that Respondent IV Solutions, through its owner,

11  Respondent Vara, falsely represented an unlicensed facility, Stat Clinic Pharmacy, as a pharmacy

12  and provided pharmacy services to approximately 25 patients, which included creating and

13  receiving pharmacy-related documentation with patients and/or their physicians such as contracts

14  and agreements, medical forms, confidential medical records, and prescriptions.

15  ### FIFTEENTH CAUSE FOR DISCIPLINE

16  #### (Violation of State Law Governing Pharmacy/Receiving and

17  #### Holding Misbranded Dangerous Drugs)

18  40.    Respondent IV Solutions and Vara are subject to disciplinary action for

19  unprofessional conduct within the meaning of Code Section 4301 subdivisions (j) and (o) in

20  conjunction with Health and Safety Code Section 111440 for importing 215 vials of Lovenox

21  which are dangerous drugs, from Canada that were both misbranded and restricted to sales in

22  Canada.

23  ### SIXTEENTH CAUSE FOR DISCIPLINE

24  #### (Noncompliant Ordering and Delivery to an Unlicensed Facility)

25  41.    Respondent IV Solutions and Vara are subject to disciplinary action for

26  unprofessional conduct within the meaning of Code Section 4301 subdivisions (j) and (o) in

27  conjunction with Code Section 4059.5(a) for ordering and delivering Lovenox, a dangerous drug,

28  to an unlicensed premise.

15

**SEVENTEENTH CAUSE FOR DISCIPLINE**

**(Noncompliant Security)**

42.    Respondent IV Solutions and Vara are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 Subdivisions (j) and (o) for violation of Regulation 1714(d) and (e) in that its owner Respondent Vara was in possession of the pharmacy key on February 29, 2008 and April 7, 2008, and opened the pharmacy without a pharmacist present.

**EIGHTEENTH CAUSE FOR DISCIPLINE**

**(Pharmacy Operating without a Pharmacist Present)**

43.    Respondent IV Solutions and Vara are subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivisions (j) and (o) and 4081 for violations of Code Sections 4113(b), 4305(b), 4305(b), and Regulation 1793.1, in that owner Respondent Vara opened the pharmacy for business on February 29, 2008 without a pharmacist present.  On April 17, 2008, Respondent Vara opened the pharmacy for business without a pharmacist present and a pharmacy technician was allowed to mix an IV Solution at the pharmacy while no pharmacist was present.

**NINETEENTH CAUSE FOR DISCIPLINE**

**(Noncompliant Pharmacist Identification)**

44.    Respondent IV Solutions is subject to disciplinary action for unprofessional conduct within the meaning of Code Section 4301 subdivisions (j) and (o) for violation of Regulation 1717(f) in that during a Board investigation on February 29, 2008, an investigator found that the pharmacy did not have a system to identify which pharmacist was responsible for the filling of a prescription.  Moreover, on April 7, 2008, upon further investigation, the investigator found that the pharmacy still had not implemented a system after having been ordered to do so.

**TWENTIETH CAUSE FOR DISCIPLINE**

**(Non-Pharmacist Filling Prescriptions)**

45.    Respondent IV Solutions and Vara are subject to disciplinary action under Code Section 4051 subdivision (a) in that during a Board investigation, the pharmacy was found to

16

1   have non-pharmacists filling multiple prescriptions for controlled substances and dangerous drugs

2   from March 1, 2008 to March 20, 2008.

3   **TWENTY-FIRST CAUSE FOR DISCIPLINE**

4   **(Noncompliant Refilling of Controlled Substance)**

5   46.   Respondent IV Solutions and Vara subject to disciplinary action under Code Section

6   4301 Subdivisions (j) and (o) in conjunction with Health and Safety Code Section 11200(c) for

7   refilling a Schedule II controlled substance on March 14, 2008.

8   **PRAYER**

9   WHEREFORE, Complainant requests that a hearing be held on the matters herein alleged,

10  and that following the hearing, the Board of Pharmacy issue a decision:

11  1.   Revoking or suspending Original Pharmacy Permit Number PHY 45885 issued to IV

12  Solutions, Inc.

13  2.   Revoking or suspending Pharmacist License No. RPH 27398 issued to Renee Sadow.

14  3.   Ordering Respondent IV Solutions, Inc. and PIC Sadow to pay the Board of

15  Pharmacy the reasonable costs of the investigation and enforcement of this case, pursuant to

16  Business and Professions Code section 125.3;

17  4.   Preventing Respondents IV Solutions, Inc., PIC Sadow, and Vara from serving as

18  managers, administrators, owners, members, officers, directors, associates, or partners of a

19  licensee.

20  5.   Taking such other and further action as deemed necessary and proper.

21

22  DATED:   1/17/13

23                                                VIRGINIA HEROLD
                                                  Executive Officer
24                                                Board of Pharmacy
                                                  Department of Consumer Affairs
25                                                State of California
                                                  *Complainant*

26

27  LA2010601512
    51166056.docx

28

17

# EXHIBIT C

# COPY

1  Andrew H. Selesnick (SBN 160516)
   Kevin R. Warren (SBN 242238)
2  MICHELMAN & ROBINSON, LLP
   15760 Ventura Boulevard, 5th Floor
3  Encino, California 91436
   Telephone: (818) 783-5530
4  Facsimile: (818) 783-5507

5  Attorneys for Plaintiff
   IV Solutions, Inc.
6

7              UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9

10  IV SOLUTIONS, INC., a California       CASE NO: CV12-4887 GAF (MRWx)
    corporation,
11                                          [State Complaint No. BC482527
12              Plaintiff,                  Filed: April 9, 2012]

13       vs.                               FIRST AMENDED COMPLAINT
14  UNITED HEALTHCARE SERVICES,            FOR DAMAGES AND OTHER
    INC., a California corporation; AT&T   RELIEF:
15  COMMUNICATIONS OF
    CALIFORNIA, a California               1. BREACH OF CONTRACT
16  corporation; TIME WARNER, INC., a      2. BREACH OF THE COVENANT
    Delaware Corporation; SBC GLOBAL          OF GOOD FAITH AND FAIR
17  SERVICES, INC., a Delaware                DEALING
    Corporation; and DOES 1 through 50,   3. PROMISSORY ESTOPPEL
18  inclusive,                             4. INTENTIONAL
                                              MISREPRESENTATION
19              Defendants.                5. QUANTUM MERUIT
                                           6. OPEN BOOK ACCOUNT
20                                         7. GOODS AND SERVICES
                                              RENDERED
21                                         8. UNFAIR COMPETITION

22                                         DEMAND FOR JURY TRIAL
23

24       Plaintiff IV Solutions, Inc. alleges against Defendants United Healthcare

25  Services, Inc., Time Warner, Inc., SBC Global Services, Inc., AT&T

26  Communications of California, Inc., and Does 1 through 50, inclusive, as follows:

27

28

1   Andrew H. Selesnick (SBN 160516)
    Kevin R. Warren (SBN 242238)
2   **MICHELMAN & ROBINSON, LLP**
    15760 Ventura Boulevard, 5th Floor
3   Encino, California 91436
    Telephone: (818) 783-5530
4   Facsimile:  (818) 783-5507

5   Attorneys for Plaintiff
    IV Solutions, Inc.
6

7                **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  IV SOLUTIONS, INC., a California       CASE NO: **CV12-4887 GAF (MRWx)**
    corporation,
11                                          [State Complaint No. BC482527
                        Plaintiff,          Filed: April 9, 2012]
12
                  vs.                       **FIRST AMENDED COMPLAINT**
13                                          **FOR DAMAGES AND OTHER**
    UNITED HEALTHCARE SERVICES,             **RELIEF:**
14  INC., a California corporation; AT&T
    COMMUNICATIONS OF                       1. **BREACH OF CONTRACT**
15  CALIFORNIA, a California                2. **BREACH OF THE COVENANT**
    corporation; TIME WARNER, INC., a          **OF GOOD FAITH AND FAIR**
16  Delaware Corporation; SBC GLOBAL           **DEALING**
    SERVICES, INC., a Delaware             3. **PROMISSORY ESTOPPEL**
17  Corporation; and DOES 1 through 50,    4. **INTENTIONAL**
    inclusive,                                **MISREPRESENTATION**
18                                          5. **QUANTUM MERUIT**
                        Defendants.         6. **OPEN BOOK ACCOUNT**
19                                          7. **GOODS AND SERVICES**
                                               **RENDERED**
20                                          8. **UNFAIR COMPETITION**
21
                                            **DEMAND FOR JURY TRIAL**
22

23

24       Plaintiff IV Solutions, Inc. alleges against Defendants United Healthcare

25  Services, Inc., Time Warner, Inc., SBC Global Services, Inc., AT&T

26  Communications of California, Inc., and Does 1 through 50, inclusive, as follows:

27

28

                                    1

## PARTIES

1.     Plaintiff IV Solutions, Inc. is, and at all relevant times was, a California corporation qualified to do business in the state of California, with its principal place of business in Los Angeles, California.   IV Solutions is a pharmacy that supplies specialty pharmaceutical products and provides related in-home infusion services. Plaintiff is not a participant in, nor beneficiary of, any health plan issued or administered by Defendants.

2.     Plaintiff is informed and believes, and thereon alleges, that Defendant United Healthcare Services, Inc. ("United") is a California corporation qualified to do business in the state of California, with its principal place of business in California.   In addition, United is a health care service plan within the meaning of Health & Safety Code, Section 1345.   By number of enrollees, United is one of the largest health care service plans in California and in the United States.

3.     Plaintiff is informed and believes that Defendant Time Warner, Inc. ("Time Warner") is a Delaware Corporation with its principal place of business in New York.

4.     Plaintiff is informed and believes that Defendant SBC Global Services, Inc. ("SBC") is a Delaware corporation with its principal place of business in Texas.

5.     Plaintiff is informed and believes, and thereon alleges, that Defendant AT&T Communications of California, Inc. ("AT&T") is a California corporation with its principal place of business in California.

6.     Plaintiff is informed and believes, and thereon alleges, that United, Time Warner, AT&T and SBC (collectively "Defendants") are, and at all relevant times were, for-profit corporations that were qualified to do business, and in fact do business in California.

7.     The true names and capacities of the defendants named herein as Does 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are currently unknown to Plaintiff, and therefore Plaintiff alleges that each of these

2

1  fictitiously named defendants is responsible in some manner for the events sued upon.
2  Plaintiffs will seek leave of this Court to amend the complaint to assert the true
3  identities and capacities of the defendants named herein as Does 1 through 50 when
4  such identities and capacities have been further ascertained.

5      8.     Plaintiff is informed and believes, and thereon alleges, that at all
6  relevant times, each defendant was the agent and/or employee of each of the other
7  defendants and, in doing each of the things herein alleged, was acting within the
8  scope of such agency and/or employment.

9

10                              **JURISDICTION**

11      9.     Plaintiff is informed and believes, and thereon alleges, that the events
12  giving rise to the causes of action set forth herein occurred in the County of Los
13  Angeles, State of California, that the contracts that are the subject of this action were
14  entered into in the County of Los Angeles, that Defendants engage in substantial
15  business in the County of Los Angeles and the damages arising out of the causes of
16  action alleged herein were incurred in the County of Los Angeles. Because Plaintiff
17  alleges only state law based claims, because there is no federal question at issue and
18  because there is not complete diversity between the parties, the proper court for this
19  action is the Superior Court of the State of California, where the action was
20  originally filed.

21      10.    In an attempt to establish federal question jurisdiction over this case,
22  Defendant United has incorrectly asserted that Plaintiff's state law based claims are
23  pre-empted by ERISA. Claims identical to Plaintiff's, however, have been found by
24  many federal courts to be based on grounds that are independent and separate from
25  ERISA, and therefore not pre-empted by that statutory scheme. Indeed, Plaintiff's
26  claims do not involved the interpretation of any ERISA plan as Defendants pre-
27  determined what was due under the plans prior to negotiating with Plaintiff and
28  prior to entering into written agreements with Plaintiff. Plaintiff negotiated

1   discounted rates to Defendants based on their representations that they had

2   interpreted their plans and concluded that Plaintiff was due its full billed charges.

3   The disputes in this matter involve Defendants' failures to pay charges that they

4   asked for, negotiated, and agreed in writing to pay, not on the terms of an insurance

5   plan.   Consequently, Defendants' removal is improper and the case should be

6   remanded to the Superior Court of California where it was filed.

7

8                              **GENERAL ALLEGATIONS**

9                              **PATIENT A.N.**[1]

10        11.   Defendants requested thirteen sets of specialty blood products from IV

11   Solutions for member A.N. Defendants could not locate a provider in their network

12   that was able or willing to provide the treatments to A.N. IV Solutions provided the

13   products and services to him between October 4, 2006 and October 4, 2007. The

14   products and accompanying in-home infusion services were medically necessary to

15   treat his serious health condition. The total charge for the products and services was

16   $4,134,722.80.

17        12.   IV Solutions submitted claims for payment to Defendants for the blood

18   products and related services it provided to A.N. between October 16, 2006 and

19   October 12, 2007. Because IV Solutions did not have a contract with Defendants to

20   provide products or services, it charged Defendants its standard retail rates.

21        13.   After A.N. had received five sets of services from IV Solutions with a

22   total value of over $1.4 million, Defendants sought to enter into a contract for IV

23   Solutions' provision of products and services to A.N.

24        14.   United unilaterally determined that pursuant the terms of A.N.'s plan,

25   IVS was due its full billed charges for the services it had provide and was to provide

26   in the future to A.N. Consequently, there is no dispute about what benefits were due

27

28
_____

[1] The full names of the patients described in this Complaint have been abbreviated to protect their privacy pursuant to
applicable state and federal laws.

4

1   under the terms of the plan.  Subsequently, on February 16, 2007, United, through
2   its agent, Anna Moore of Concentra Preferred Systems, negotiated a 35% discount
3   with IV Solutions and reduced the agreement to writing.  The terms of the contract
4   were that its terms would apply to "all invoices with a date of service on or after
5   12/05/2006 and for any unpaid invoices prior to 12/05/2006 which are not listed
6   above."  One invoice that was dated December 5, 2006, was listed on the contract.
7   Only three payments totaling $34,276.74 were made prior to the contract.   In
8   exchange for the pricing concession, Ms. Moore promised that United would pay the
9   claims quickly and efficiently, thereby eliminating the need for Plaintiff to expend
10  significant resources to collect payment from United, as is generally the case with
11  United.

12          15.    Defendants paid a total of $2,687,117.66, which is equal to the 65% of
13  billed charges for which the parties contracted.  Defendants applied the discount
14  negotiated by Ms. Moore to every claim made by IV Solutions for the services it
15  rendered to A.N.  Defendants do not dispute the validity of the charges.

16          16.    The payments, however, were made, on average, 214 days after the
17  statutory deadline set by California Health & Safety Code, Section 1371.  Of the
18  twenty-eight separate payments made by Defendants, over half were made one to
19  two years after they were submitted for payment.  Over $285,000 in statutory
20  interest is due on the A.N. account and it continues to accrue daily.

21          17.    At all relevant times, A.N. was covered by a medical plan offered by
22  Defendant AT&T and administered by Defendant United.

23
24                              **PATIENT D. H.**
25          18.    Defendants requested two separate courses of specialty blood products
26  and related home-infusion services from IV Solutions for member D.H.   IV
27  Solutions provided the products and services to him from February 27, 2008  to
28  January 4, 2009 and from January 19, 2010 to February 26, 2010.  The products and

1   accompanying in-home infusion services were medically necessary to treat his
2   serious health condition and neither D.H. nor Defendants could locate a network
3   provider that was willing or able to provide the products and services to D.H. The
4   total charge for the products was $8,478,718.03.

5       19.   IV Solutions submitted multiple claims for payment to Defendants for
6   the blood products and related services it provided to D.H. between July 17, 2008
7   and March 8, 2010.   Because IV Solutions did not have a standing contract with to
8   provide healthcare products or services to certain members, it charged Defendants
9   its standard retail rates.

10      20.   In regard to the first course of treatment, United unilaterally determined
11  that pursuant the terms of D.H.'s plan, IVS was due its full billed charges for the
12  services it had provide and was to provide in the future to D.H.  Consequently, there
13  is no dispute about what benefits were due under the terms of the plan.
14  Subsequently, On March 9, 2009, after IV Solutions had provided two sets of blood
15  products and services and billed Defendants for them, it was contacted by Defendant
16  United through its agent, Rose Robinson of Viant, Inc.  Ms. Robinson and Viant
17  negotiate out-of-network provider rates for their principals.  Ms. Robinson informed
18  IV Solutions that Defendants wished to negotiate a rate for the products that IV
19  Solutions was providing to D.H.

20      21.   Consequently, Defendants negotiated a 20% discount off IV Solutions'
21  standard rates.  Viant and Defendants also negotiated the term of the contract to be
22  retroactive: "Provider agrees to accept a 20% discount from their List Price as the
23  Adjusted Price for all invoices with a date of service on or after 12/06/2008 and for
24  any unpaid invoices prior to 12/06/2008 which are not listed above."  In exchange
25  for the pricing concession, Ms. Robinson agreed that United would pay claims
26  quickly and efficiently, thereby eliminating the need for Plaintiff to expend
27  significant resources to collect payment from United, as is generally the case with
28  United.

22.     United confirmed and ratified this contract on September 16, 2021, in an explanation of benefits that it sent to D.H. and Plaintiff: "This physician or health care provider is not a network provider but has accepted a discount on this service as part of the shared savings program and in accordance with his or her TRPN/NCS agreement."

23.     In regard to the second course of treatment, Defendants began paying for D.H.'s treatment pursuant to an agreement negotiated by its agent, Todd Breeden, C.O.O. of Three Rivers Provider Network. Mr. Breeden entered into the contract for United on March 15, 2009. That agreement entitled Defendants to a 5% discount off IV Solutions' standard rates. Defendants paid the invoice submitted by IV Solutions for treatment it provided D.H. on February 26, 2010 pursuant to the terms of the Three Rivers contract. IV Solutions submitted a nearly identical invoice for treatment it provided D.H. on February 17, 2010. This invoice, however, was not paid in full.

24.     Defendants applied the discounts it negotiated with IV Solutions to a portion of the charges, but denied the remainder of the charges based on its contention that D.H.'s lifetime out-of-network maximum had been met with this partial payment. Defendants paid $833,895.65 of the $8,478,718.03 in billed charges, or just under 10%. There remains an unpaid principal balance of $7,644,822.38.

25.     Defendants intentionally improperly classified IV Solutions' services as "out-of-network" in an attempt to repudiate the prior contractual terms that they had proposed, negotiated and entered into with Plaintiff. The plan documents state that if an in-network provider cannot be located, the plan will pay out-of-network providers the network level of benefits. Not only did Defendants pre-authorize the services proved to D.H. as well as the rates for those services, but it also ratified IV Solutions' status as in-network for D.H.'s treatment by negotiating discounts off

1  standard rates, asking IV Solutions to provide the negotiated services and by paying
2  some of the claims pursuant to the negotiated in-network terms.

3      26.    Defendants made 79 payments toward the balances it owed to IV
4  Solutions.  Those payments were made between 0 and 185 days after the statutory
5  deadline set by California Health & Safety Code, Section 1371.  Over $3.2 million
6  in statutory interest is due on the D.H. account and it continues to accrue daily.

7      27.    At all relevant times, D.H. was covered by a medical plan offered by
8  Defendant AT&T.

9

10  **PATIENT M.S.**

11      28.    Defendants requested specialty blood products and related home-
12  infusion services from IV Solutions for member M.S.  IV Solutions provided the
13  products and services to M.S. between December 2, 2007, and June 17, 2011.  The
14  products and accompanying in-home infusion services were medically necessary to
15  treat his serious health condition and neither M.S nor Defendants could locate a
16  network provider he was willing or able to provide the products and services.  The
17  total charge for the products was $3,794,145.52.

18      29.    IV Solutions submitted claims for payment to Defendants for the blood
19  products and nursing services it provided to M.S. between March 28, 2008 and
20  November 11, 2011.  Because IV Solutions did not have a standing contract to
21  provide healthcare products or services to Defendants' members, it charged
22  Defendants its standard retail rates.

23      30.    United unilaterally determined that pursuant the terms of M.S.'s plan,
24  IVS was due its full billed charges for the services it had provide and was to provide
25  in the future to M.S.  Consequently, there is no dispute about what benefits were due
26  under the terms of the plan.  Subsequently, after IV Solutions had provided two sets
27  of blood products and services to M.S. and billed for them, it was contacted by
28  United through its agent, Beverly Cooper of Viant, Inc. on April 30, 2008.  Ms.

1  Cooper informed IV Solutions that United wished to negotiate a rate for the
2  products that IV Solutions was providing to M.S.

3      31.    Through Ms. Cooper, Defendants negotiated a 15% discount off IV
4  Solutions' standard rates.   Viant and Defendants also negotiated the term of the
5  contract to be retroactive: "Provider agrees to accept a 15% discount from their List
6  Price as the Adjusted Price for all invoices with a date of service on or after
7  12/02/2007 and for any unpaid invoices prior to 12/02/2007 which are not listed
8  above."   In exchange for the pricing concession, United agreed to pay the claims
9  quickly and efficiently, thereby eliminating the need for Plaintiff to expend
10  significant resources to collect payment from United, as is generally the case with
11  United.

12      32.    United confirmed and ratified the contract in an explanation of benefits
13  dated May 14, 2008, that it sent to M.S. and Plaintiff: "This facility is not a network
14  provider; however, they have agreed to a reduction in charges on this outpatient
15  claim through Viant (formerly Concentra Preferred Systems)."

16      33.    Defendants took advantage of the negotiated discount on the first
17  payment it made to IV Solutions, and it ratified the terms by making the payment.
18  The remainder of the payments, however, were not made pursuant to the contract
19  with IV Solutions.   Defendants paid a total of $322,024.14, which is 8.5% of the
20  value of the products and services instead of the 85% contracted amount.   There
21  remains an unpaid balance of $3,472,121.38.

22      34.    The Provider Explanation of Benefits states on its face the improper
23  discounting of IV Solutions' charges: "(29)  Your plan covers reasonable charges
24  for covered health services.   The reasonable charge is based on amounts charged by
25  other physicians or health care professionals in the area for similar services or
26  supplies.   Benefits are not available for that portion of the charge that exceeds the
27  reasonable charge determined for this service."   Because Defendants negotiated the
28  reasonable charges for the services provided to M.S., this reason for reduction of IV

1   Solutions' charges is invalid.  Defendants could not locate any provider that was

2   able or willing to provide these services to M.S.  Consequently, there was no basis

3   for Defendants to reduce the charges to "amounts charged by other physicians or

4   health care professionals in the area for similar services or supplies" because none

5   existed during the relevant time.  Defendants cited no other reason for the reduction

6   of the charges.

7       35.   Defendants made 27 payments to IV Solutions.  Those payments were

8   made between 0 and 202 days after the statutory deadline set by California Health &

9   Safety Code, Section 1371.  Over $1.1 million in statutory interest is due on the

10   M.S. account and it continues to accrue daily.

11       36.   At all relevant times, M.S. was covered by a medical plan offered by

12   Defendant Time Warner.

13

14   **FIRST CAUSE OF ACTION**

15   **BREACH OF CONTRACT**

16   **(Defendants and Does 1 through 50)**

17       37.   IV Solutions incorporates by reference every allegation previously set

18   forth as though fully set forth in this cause of action.

19       38.   Defendants entered into a written contract with IV Solutions for the

20   provision of pharmaceutical products and related home-infusion services to member

21   A.N.

22       39.   IV Solutions performed all of its obligations under the contract by

23   providing the products and services to member A.N.

24       40.   Defendants entered into two distinct written contracts with IV Solutions

25   for the provision of pharmaceutical products and related home-infusion services to

26   member D.H.

27       41.   IV Solutions performed all of its obligations under the contracts by

28   providing the products and services to member D.H.

42.    Defendants entered into a written contract with IV Solutions for the provision of pharmaceutical products and related home-infusion services to member M.S.

43.    IV Solutions performed all of its obligations under the contract by providing the products and services to member M.S.

44.    Thereafter, Defendants were obligated to pay I.V. Solutions for the services rendered to A.N., D.H. and M.S.

45.    With the exception of payment for the product and service portion of the contract regarding A.N., Defendants failed to make full payment on any of the contracts pursuant to their terms.

46.    As a direct and proximate result of Defendants' breach, IV Solutions has been damaged in the amount of $11,116,943.76, plus statutory interest.

## SECOND CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

**(Defendants and Does 1 through 50)**

47.    IV Solutions incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

48.    In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything that will deprive the other parties of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an action for damages.

49.    The contracts between Defendants and IV Solutions contemplated that payment for the products and services rendered to A.N., D.H. and M.S. by IV Solutions would be made in a reasonable time after invoices were submitted by IV Solutions.

50.    Defendants did not make the payments due under the contracts in a reasonable time. Instead, they delayed payments by months and by years, in an

11

1  attempt to deprive Plaintiff of its benefits under the contracts, namely, reasonably
2  timely payment of the negotiated charges.  Defendants also established a systematic
3  scheme to deceive Plaintiff by intentionally making false entries of the actual
4  amounts billed by, and due to, Plaintiff, by making intentionally improper denials of
5  Plaintiff's claims and by fabricating improper and inapplicable reasons for its
6  denials.  Defendants actions were intended to, and did, frustrate Plaintiff's right to
7  receive timely payment.

8      51.    By failing to pay IV Solutions within a reasonable time after the
9  provision of products and services to its members and billed for them, Defendants
10  unfairly interfered with IV Solutions' right to receive the benefits of the contracts,
11  and it unjustly enriched itself by using funds owed to IV Solutions for years before
12  paying IV Solutions, and in some instances, by not paying IV Solutions at all.

13      52.    As a direct and proximate result of Defendants' breach, IV Solutions
14  has been damaged in an amount to be proven at trial that includes not less than 15
15  percent per annum interest on the unpaid balances.

16

17  **THIRD CAUSE OF ACTION**
18  **PROMMISORY ESTOPPEL**
19  **(Defendants and Does 1 through 50)**
20      53.    IV Solutions incorporates by reference every allegation previously set
21  forth as though fully set forth in this cause of action.

22      54.    Defendants made clear and definite written promises to IV Solutions to
23  pay amounts contracted for with IV Solutions for the provision of products and
24  services to A.N., D.H. and M.S., and it would be done a timely manner.

25      55.    In doing so, Defendants knew or should have known that IV Solutions
26  would be reasonably induced to rely on these promises, representations and
27  assurances by providing products and services to members A.N., D.H. and M.S.

28

56.   To its detriment, IV Solutions reasonably relied on Defendants' promises, representations and assurances by providing products and services to members A.N., D.H. and M.S.   IV Solutions had no reason to believe that Defendants' promises, representations and assurances were false.

57.   Defendants have failed to pay the amounts and associated statutory interest it promised to pay IV Solutions for the provision of products and services to members A.N., D.H. and M.S.

58.   As a direct and proximate result of Defendants' failure to perform according to the representations and assurances made to IV Solutions, IV Solutions has been damaged in the amount of $11,116,943.76, plus statutory interest.

## FOURTH CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION
### (Defendants and Does 1 through 50)

59.   IV Solutions incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

60.   Defendants represented to IV Solutions that the amounts for which contracts were made for the provision of drugs and services to A.N., D.H. and M.S. would be paid and that it would be done in a timely manner if IV Solutions continued to provide the products and services to these members.

61.   The representations and assurances were false because Defendants only paid IV Solutions a very small portion of the contracted amounts for the services IV Solutions rendered to patients, generally less than 10%, or in the case of A.N., paid what it owed as much as a year after proper claims were submitted even though it had no dispute with the claims, and refused to pay the statutorily required interest amount due for the late payments.

62.   When Defendants made these representations, they knew they were false.   Defendants did not have a network provider that was able or willing to

13

1  provide services to A.N., D.H. and M.S.   Consequently, Defendants knew they
2  would need to engage a non-network provider, a provider that had not agreed to
3  their unconscionably low in-network reimbursement rates, to provide the services,
4  or face breaching the terms of their insurance plans and becoming subject to
5  significant government penalties and private liability to their members.   Defendants
6  intentionally misrepresented to Plaintiff that they would pay the rates they
7  negotiated in the contracts at issue herein, and that they would pay Plaintiff's claims
8  in a timely manner so that they could obtain IV Solutions agreement to provide the
9  services to protect themselves from liability.   Defendants never intended to pay IV
10  Solutions in full or in a timely manner.   Instead, they schemed to subject Plaintiff to
11  their claims systems that are designed to wear providers like Plaintiff down by
12  running them around in endless circles of employees with no last names and no
13  identification numbers, requests for re-submittal of information that had been
14  submitted numerous times, reauthorizations, extensive delays, "mis-keying" of
15  claim information, completely inapplicable explanations of payment amounts and
16  constant underpayments.   Defendants engage in this despicable conduct because
17  they know that most providers will simply give up and take whatever Defendants
18  have decided to pay.   Defendants engaged in this conduct in regard to Plaintiff's
19  claims for payment for services it rendered to A.N., D.H. and M.S.

20       63.   Defendants made their representations with the intention of inducing IV
21  Solutions to provide expensive and difficult-to-obtain pharmaceutical products and
22  related home-infusion services to members N.A., D.H. and M.S.   Defendants'
23  conduct was oppressive to IV Solutions because IV Solutions is a small business
24  without the resources to carry Defendants' debts for patients such as A.N., D.H. and
25  M.S., a fact known by Defendants and used against IV Solutions.

26       64.   Defendants refused to honor their contractual obligations also to
27  attempt to drive IV Solutions out of business because IV Solutions refuses to join
28  Defendants' networks and receive unconscionably low reimbursement rates as an in-

14

1  network provider.  In fact, Defendants have a history of misleading and defrauding

2  out-of-network providers who refuse to give in to its strong-arm tactics.  In 2009,

3  Defendant United's parent company agreed to pay $350 million to resolve class

4  action lawsuits involving its improper reimbursement for out-of-network medical

5  services that dates back to 1994.  Of United's conduct, New York Attorney General

6  Andrew Cuomo stated "[t]his scam cost consumers hundreds of millions of dollars."

7  United's dishonest conduct demonstrates  its intent to make IV Solutions one of the

8  victims of its fraud.

9          65.     In addition, Defendants have a history of engaging in the same anti-

10  competitive oppression it has exerted over IV Solutions here.  In February 2008, the

11  state of New York announced an industry-wide investigation into a scheme by

12  health insurers to defraud consumers by manipulating reasonable and customary

13  rates.  The announcement included a statement that the state intended "to file suit

14  against Ingenix, Inc., its parent UnitedHealth Group, and three additional

15  subsidiaries."  The investigation found that rates found in a database of health care

16  charges maintained by Ingenix were lower than what he determined was the actual

17  cost of certain medical expenses.  United and Ingenix agreed to pay $50 million to

18  settle the matter.

19          66.     Defendants' conduct is malicious because Defendants use their size and

20  power to manipulate small providers such as IV Solutions to provide services to

21  their members when they cannot provide them, knowing that they will not reimburse

22  the providers pursuant to the terms they negotiate with them.  Defendants  know that

23  small providers such as IV Solutions find it difficult to fight giant corporations like

24  Defendants.  In fact, instead of responding to Plaintiff's last request for payment of

25  the amounts at issue, herein, which included detailed accountings of each charge

26  pursuant to the negotiated contract terms, Defendants decided to have their attorney,

27  Jennifer Romano, attempt to intimidate IV Solutions into dropping its claims.  She

28  accused Plaintiff of "illegal" and "fraudulent" conduct and threatened litigation

1   against Plaintiff, all the while refusing to acknowledge the written contracts that

2   were not only requested and negotiated by her clients, but that are referenced

3   throughout United's claim documents.  She also threatened that IV Solutions would

4   be "subject to compensatory and punitive damages."  Defendants engaged in this

5   tactic to scare IV Solutions into taking less than it is owed for the services it

6   provided to their members so that they could increase their profits by not fully

7   paying the claims.

8       67.    In reliance on Defendants' representations, IV Solutions was induced

9   to, and did provide, products and services to N.A., D.H. and M.S.  Had it known that

10   Defendants' promises were false, IV Solutions would not have provided the

11   products and services to these members.  IV Solutions' reliance on Defendants'

12   representations was justified because it was supported by written contracts and

13   partial performance.

14       68.    As a direct and proximate result of Defendants' intentional conduct,

15   Plaintiff has been damaged in the amount of $11,116,943.76, plus statutory interest.

16

17                  **FIFTH CAUSE OF ACTION**

18                  **QUANTUM MERUIT**

19          **(Defendants and Does 1 through 50)**

20       69.    IV Solutions incorporates by reference every allegation previously set

21   forth as though fully set forth in this cause of action.

22       70.    IV Solutions supplied members D.H. and M.S. with specialty

23   pharmaceutical products and in-home infusion services pursuant to Defendants'

24   instances and requests, and continued to provide the products and services based on

25   representations IV Solutions would be reimbursed for their provision at the rates it

26   negotiated with IV Solutions.

27       71.    The reasonable value of the services provided to D.H. is $8,478,718.03,

28   of which $7,644,822.38 remains unpaid.

1       72.   The reasonable value of the services provided to M.S. is $3,794,145.52,

2   of which $3,472,121.38 remains unpaid.

3       73.   Defendants have received the benefits of IV Solutions' services

4   because Defendants did not have a network provider who could provide the same

5   services, and because Defendants had an obligation to ensure that the patients

6   receive those services.  Defendants have thus been unjustly enriched at IV

7   Solutions' expense.

8       74.   As a direct and proximate result, IV Solutions is entitled to recover the

9   reasonable value of services it rendered to Defendants' enrollees in the amount of

10  $11,116,943.76, plus statutory interest.

11

12  ### SIXTH CAUSE OF ACTION

13  ### OPEN BOOK ACCOUNT

14  **(Defendants and Does 1 through 50)**

15      75.   IV Solutions incorporates by reference every allegation previously set

16  forth as though fully set forth in this cause of action.

17      76.   Defendants became indebted to, and promised to pay, IV Solutions for

18  the products and services provided to members N.A., D.H. and M.S. The reasonable

19  value of the services provided to D.H. is $8,478,718.03, of which $7,644,822.38

20  remains unpaid.  The reasonable value of the services provided to M.S. is

21  $3,794,145.52, of which $3,472,121.38 remains unpaid.

22      77.   IV Solutions has maintained an accounting of the amounts owed by

23  Defendants for the provision of products and services to N.A., D.H. and M.S. IV

24  Solutions has kept a record of debits and credits in the form of a permanent ledger,

25  the data in which is supported by Defendants' ongoing and contiguous Explanations

26  of Benefits for N.A., D.H. and M.S. These books show against whom and in whose

27  favor the account charges were made.

28

17

78.     Despite IV Solutions' demands for payment from Defendants, the reasonable value of services rendered has not been paid, and there is now due and owing the amount of $11,116,943.76, plus statutory interest.

### SEVENTH CAUSE OF ACTION
### GOODS AND SERVICES RENDERED
### (Defendants and Does 1 through 50)

79.     IV Solutions incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

80.     Defendants became indebted to IV Solutions for the pharmaceutical products and services provided to members A.N., D.H. and M.S.

81.     Defendants requested that IV Solutions provide the products and services to A.N., D.H. and M.S., and it admitted and ratified its responsibility to pay IV Solutions for those goods and services by negotiating payment rates with IV Solutions and by making payments on the claims, some of which were at the rates it negotiated and some of which were below them.

82.     In spite of the many requests for payment made by IV Solutions to Defendants, the reasonable value of the goods and services rendered has not been paid and there is now due and owing of $11,116,943.76, plus statutory interest.

### EIGHTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (Defendants and Does 1 through 50)

83.     IV Solutions incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

84.     Business & Professions Code § 17200 et seq. (the "UCL") prohibits unfair competition, which "shall mean and include any unlawful, unfair or fraudulent business act or practice. . . ." The "unlawful" prong of the UCL permits a

18

1   plaintiff to obtain relief from anything that can properly be called a business practice
2   and is also forbidden by law, regardless of whether the law violated provides for a
3   private right of action.

4       85.    The "unfair" prong of the UCL is intentionally broad to allow courts
5   maximum discretion to prohibit new schemes to defraud.  Outside of the competitor
6   context, lower courts have enunciated differing tests for unfairness under the UCL.
7   One test balances the victim's harm with the defendant's justification.  Another test
8   analyzes whether the defendant's acts offend a public policy that is tethered to some
9   statutory provision.  Yet another test considers whether the defendant's acts
10  constitute a sharp practice.

11      86.    The "fraudulent" prong of the UCL looks at whether the relevant
12  segment of the public is likely to be deceived.

13      87.    Conduct in violation of Health & Safety Code, Sections 1367 (d), (e)(1)
14  and (g), 1371 and 1371.35, and Title 28 of the Code of Regulations, Sections
15  1300.67.3 and 1300.67.4 (a)(3)(A) may be the basis for a private cause of action
16  under the UCL.

17      88.    Defendants have engaged in unlawful, unfair, and/or fraudulent
18  business acts or practices in violation of the UCL, as alleged herein.

19      89.    Through conduct and practices alleged herein, Defendants have
20  committed violations of the aforementioned statutes and regulations, and is therefore
21  in violation of the "unlawful" prong of the UCL.

22      90.    Through conduct and practices alleged herein, Defendants have
23  engaged in conduct and practices that cause considerable harm and injury in fact to
24  IV Solutions, and that have no justification other than to reduce the costs it is
25  statutorily obligated to bear, which is neither  reasonable nor legitimate.  The
26  conduct and practices offend a public policy of providing adequate medical services
27  to patients who pay to be covered by a health plan. This policy is tethered to Health
28  & Safety Code §§ 1367 & 1371, as well as the California Constitution.

19

91.     Defendants' modus operandi constitutes a sharp practice because it realizes that providers like Plaintiff are unable to expend the time, effort and money necessary to pursue it for proper payments of claims.  Defendants incorporate these non-payment and delayed payment practices into its day-to-day business to enrich itself with the money it refuses to pay or pays late to providers such as IV Solutions. In short, Defendants takes premiums from patients, but later refuse to pay customary or contracted amounts for medically necessary treatment, or it significantly delays the payment therefore, in order to increase profit.  This is done at the expense of providers such as IV Solutions and its own members that do not have the resources to fight giants like Defendants.  Defendants' practices are likely to deceive members of the public, and in fact, do deceive members of the public, who pay premiums for quality care and who provide that care under the dishonest representation that they will be paid for their services pursuant to terms of contracts.   Under any test, Defendants are in violation of the "unfair" prong of the UCL.

92.     IV Solutions has suffered injury in fact and has lost money to which it is entitled as a result of Defendants' UCL violations.  Specifically, Defendants have failed and refused, and continue to fail and refuse to properly and adequately reimburse IV Solutions for the products and services IV Solutions has, at Defendants' request, provided to members.

93.     IV Solutions is entitled to restitution of all monies that Defendants failed to properly pay, in an amount to be proven at trial, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.     For monetary relief in an amount to be proven at trial;

2.     For declaratory relief consistent with the relief requested herein;

3.     For an order directing restitution in an allowable amount to be proved at trial;

1    4.    For pre-judgment and post-judgment interest at the legal rate and

2    penalties to the maximum extent permissible, including, but not limited to, under

3    Health & Safety Code, Sections 1371, 1371.35, 28 Code of Regulations and, in the

4    alternative, Civil Code, Section 3287(a);

5    5.    For attorney fees pursuant to Code of Civil Procedure, Section 1021.5;

6    6.    For punitive damages;

7    7.    For such other or further relief as the court may deem just or proper.

8

9    Dated: July 23, 2012                    **MICHELMAN & ROBINSON, LLP**

10

11

12   By: _____

13        Andrew H. Selesnick
         Kevin R. Warren

14        Attorneys for Plaintiff
         IV Solutions, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Dated: July 23, 2012

MICHELMAN & ROBINSON, LLP

By: _____
    Andrew H. Selesnick
    Kevin R. Warren
    Attorneys for Plaintiff
    IV Solutions, Inc.

22