LINK: 358

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. V. United Healthcare Services, Inc., et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes Kerr | None | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:**     (In Chambers)

**ORDER RE: DEFENDANT'S MOTION IN LIMINE NO. 1**

This Order addresses Defendant's Motion in Limine No. 1 to Exclude Evidence Regarding The"Ingenix" Database, Database Actions, and Settlement.

**I.
BACKGROUND**

Plaintiff IV Solutions, Inc. ("IV Solutions") is a medical provider that supplies specialty pharmaceutical products and related in-home infusion services. Defendant United Healthcare Services, Inc. ("United") is a health care service business that administers ERISA plans. (Id. ¶ 2.)

Despite the florid language of United's motion, this case presents the Court with little more than a contract dispute between two sophisticated parties. IV Solutions contends that United, through an agent, contracted with IV Solutions for the purchase of medically necessary "specialty blood products" for three patients, A.N., D.H. and M.S., enrolled in ERISA plans administered by United. (Id. ¶¶ 11, 18, 28.)[1] IV Solutions, which was an out-of-network provider, contends that the needed services were not available from in-network providers, which is why it was retained to deliver these products to the three plan participants. Because the retail cost of the products was so expensive, IV Solutions further contends that United negotiated for the delivery of the products and services at a high, but agreed-on discount from IV Solutions'

---

[1] The A.N. cause of action, which consisted of a claim for interest payments on delayed payments, was resolved on summary judgment and is no longer before the Court.

LINK: 358

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. V. United Healthcare Services, Inc., et al. | | |

normal retail price.

The agreements at issue were memorialized in written contracts that purportedly specified the price to be paid for the products provided and services rendered. Once those agreements were signed, United paid the agreed-on price for the delivery of their specialty products to A.N., but eventually balked at the high prices and refused to make any additional payments for services provided to D.H. and M.S. United does not dispute the existence of the contracts but vigorously disputes any obligation to pay for the services and products that IV Solutions claims to have provided under those agreements. Among other things, United contends that: (1) IV Solutions promised to collect deductibles and co-payments from patients D.H. and M.S. but never billed for those amounts, or indeed any amounts; and (2) IV Solutions agreed to be subject to the terms and conditions of the health benefit plans administered by United. United contends that IV Solutions entered into the agreements with no intention of honoring these promises. Accordingly, while IV Solutions seeks amounts it contends are still due and owing for services and products it provided beneficiaries D.H. and M.S., United seeks a determination that it owes nothing to IV Solutions and indeed that IV Solutions must re-pay amounts it received for services rendered to the three patients.

## II.
## THE MOTION

### A. THE "INGENIX" LITIGATION AND SETTLEMENT

In 2000 the American Medical Association, joined several years later by the New York Attorney General, brought suit against United on the ground that its reimbursements were based on a defective and unreliable database that yielded unreasonably low reimbursements to providers who rendered services to health plan members. IV Solutions refers to that database as the Ingenix Database; United refers to it as the PHCS Database. The database litigation was settled for the payment of substantial sums of money, and an agreement to create a new database for determining reimbursements. However, the settlements also provided that United was not admitting the truth of any material allegations regarding the alleged defects in the database. United cites to provisions of the agreement indicating that the settlement agreement could not be used as evidence in any other proceeding.

IV Solutions has alleged details regarding the settlement in its fraud claim in the First Amended Complaint and quotes the governor of New York who characterized United's conduct (presumably the use of the PHCS database) as a "scam" and "dishonest conduct." The fraud claim also references New York's investigation into an "industry-wide" scheme to defraud

LINK: 358

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 12-4887-GAF (MRWx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. V. United Healthcare Services, Inc., et al. | | |

consumers with a specific reference to an intended suit against United and Ingenix. Finally, United notes that one of IV Solutions' experts, Dr. Roby, included a discussion of the lawsuits in his expert report. However, Dr. Roby conceded that: (1) United never conceded wrongdoing in that litigation; and (2) that he found no evidence that the Ingenix database was used to price products at issue in this case.

### B. UNITED'S POSITION REGARDING ADMISSIBILITY

Based on the foregoing, United contends evidence regarding the Ingenix database should be excluded. United asserts that it is not relevant to this lawsuit, that the allegations are unproven and not similar to the allegations made here, that the evidence should be excluded pursuant to Rule 403 because it is unduly prejudicial, confusing, and would result in the undue consumption of court time.

### C. IV SOLUTIONS' POSITION REGARDING ADMISSIBILITY

IV Solutions opposes the motion on several grounds. First, it contends that United's own witness testified that the Ingenix database was in fact used to price and pay for IV Solutions' claims in many instances. IV Solutions also presents evidence that United's agent consulted the Ingenix database when negotiating the contracts with IV Solutions that are at issue in this case. Finally, IV Solutions contends that the Ingenix database "issue" is highly relevant to its claim for breach of the covenant of good faith and fair dealing and for fraud.

### D. DISCUSSION

The motion raises two separate and distinct issues: (1) should any evidence be permitted regarding the Ingenix/PHCS database; and (2) if so, should any evidence be permitted regarding the New York litigation regarding the adequacy of the database.

With respect to the first issue, this lawsuit involves questions regarding the reimbursement to which IV Solutions is entitled under the terms of its agreements with United. Therefore, evidence regarding how each party purportedly computed the reimbursement amount is a fact that is "of consequence in determining the action." Rule 401, Fed. R. Evid. It follows that IV Solutions may inquire into the information used by United to determine the reimbursement amount. Such an inquiry could properly include questioning regarding whether or not the Ingenix/PHCS database was used by United (or its agent) to determine the reimbursement amount. The Court sees no basis for restricting such testimony. A jury is entitled to hear evidence as to how these two parties have come to such radically different

**LINK: 358**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | November 12, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. V. United Healthcare Services, Inc., et al. | | |

positions regarding what is due and owing under their agreement.

But the Court is not naive. IV Solutions does not wish to use evidence of the Ingenix database in such a benign endeavor. What it really wants to do is to show that the database was in fact used here and then argue that it is fraudulent based on the New York litigation. That was the obvious purpose of Paragraphs 64 and 65 of the First Amended Complaint, which quote inflammatory language of an elected politician seeking a headline. In other words, it seeks to use the New York litigation as a sword in the same way that United seeks to use the Board of Pharmacy proceedings. This the Court will not permit. The New York litigation ended in a settlement with no admission of liability. The amounts negotiated were part of a settlement agreement that the parties agreed should not be used in other proceedings. The presentation of evidence regarding that litigation, including the statements of politicians, would create almost certain prejudice to United, would tend to confuse the jury, and would, because United would have to be given an opportunity to respond to the allegations, substantially broaden this litigation resulting in the undue consumption of time on a completely collateral matter. Evidence of the New York litigation is therefore of questionable relevance under Rule 401 and properly excluded under Rule 403.[2]

For these reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**. Evidence regarding the basis for United's determination of reimbursement amounts, including evidence regarding the Ingenix/PHCS database is admissible. Evidence regarding the existence or substance of the New York litigation is excluded.

**IT IS SO ORDERED.**

---

[2] The Court also bases this ruling on the authorities cited in its order of November 10, 2014. (See Docket No. 371.)