LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:**       (In Chambers)

### ORDER RE: PLAINTIFF'S MOTION IN LIMINE NO. 7

On November 10, 2014, the Court issued an order regarding several motions in limine, including Plaintiff's Motion in Limine No. 7 "To Exclude Evidence and Testimony Regarding Ethics Codes." Because the Court did not have all of the exhibits necessary to rule on that motion and because the parties failed to identify with specificity the code provisions at issue, the Court ordered the submission of additional materials and further briefing. The following sets forth the Court's ruling on the motion.

**A. BACKGROUND**

The following briefly reiterates the background giving rise to the present motion.

Plaintiff, IV Solutions provides in-home infusion services to home bound patients. With respect to Defendant United Healthcare, IV Solutions is an out-of-network provider. IV Solutions contends that United Healthcare entered into written agreements with IV Solutions to pay for in-home infusion services to three patients who allegedly could not obtain these services through a network provider. IV Solutions contends that, after it provided the services at an agreed-on discount to its retail price, United Healthcare concocted bogus reasons to refuse to pay for the services and owes IV Solutions substantial sums of money. Among those reasons: IV Solutions allegedly failed to require the patients to pay deductibles and co-payments as required by their plans. IV Solutions responds that, as an out-of-network provider operating under a separately negotiated agreement with United Healthcare, it had no obligation to perform any of the obligations of an in-network provider, including the collection of payments from the patients whether characterized as co-payments, plan deductibles, or otherwise. United, on the other

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

hand, asserts that its agreement with IV Solutions was subject to the terms and conditions of the plans; IV Solutions' failure to collect those payments was therefore a breach of its obligations under the agreement with United and excused United from its obligation to pay for services rendered.

### B. UNITED'S POSITION

Essentially, United seeks to admit portions of Exhibit 1125 as evidence of industry custom and practice to prove that IV Solutions is in material breach of its agreements with United, that IV Solutions acted unlawfully under the UCL and with unclean hands, that United reasonably relied on IV Solutions' alleged misrepresentations, and that United could be expected to have made administrative errors in meeting its obligations to IV Solutions under their agreements.[1]

#### 1. Patient Care Standards

United intends to offer into evidence Exhibit 1125, the National Home Infusion Association ("NHIA") Standards for Ethical Practice. (Docket No. 377.) NHIA members consist of

> companies (and their employees) that fall into the following categories: Provider Members ('Providers'); Business Firm Affiliate Members ('Business Firm Members'); and Other Member category types. All of these categories involve the provision of infusion therapy in patients' homes and in other alternate sites for infusion care. In all aspects of patient care and business operations, Members shall act in good faith and with high integrity, implement sound and consistent business practices and generally uphold the standards of the profession.

(Docket No. 373, Ex. 1125.) With respect to patient care and caregiver support, Exhibit 1125 also provides what United contends to be relevant provisions as follows:

> The Association recognizes that certain standards of care and service are needed to safely and effectively provide home infusion services at home or in an alternative-site setting. Such standards may be outlined by various independent accreditation

---

[1] At one time United also intended to offer Exhibit 1123, which consists of standards established by the American Dental Association. That exhibit is no longer in issue.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

organizations, professional organizations, and state or federal regulators. When interacting with patients entrusted to their care and with their caregivers, Providers:

14. Shall make a good-faith effort to collect out-of-pocket amounts due (deductibles, cost-shares, etc.) while following all state and federal laws and regulations regarding collections activities. Shall not routinely waive co-insurance amounts when prohibited.

Although IV Solutions is not a member of the NHIA, United notes that IV Solutions is "a home infusion provider" and that evidence regarding ethical standards for such providers "is relevant to interpret the contracts that form the basis of IVS's claims for additional payments from United. United therefore contends that the portions of Ex. 1125 quoted above should be admitted as evidence of "industry custom and practice with respect to collecting co-pays and co-insurance. (Docket 377, at 5.) United also contends that the quoted language is relevant to its counterclaims for intentional and negligent misrepresentation, violation of the UCL, and its affirmative defenses of unclean hands, fraud and mistake. According to United, the existence of this custom and practice, as evidenced by the ethical standards established by the NHIA, supports its contention that it reasonably relied on IV Solutions' purported misrepresentations that it would collect those payments. These standards also allegedly support United's contention that IV Solutions acted unlawfully within the meaning of the UCL and with unclean hands.

### 2. Business Operation Standards

United also cites to certain "business operations" standards established by NHIA. The relevant provision states:

> V. Compliance Oversight (and Accreditation, If Applicable)
>
> All NHIA Members fully support federal/state authorities' and private payers' objectives to prevent and eradicate waste, fraud and abuse in the United States health care system. The Association also recognizes that the administrative requirements of individual health plans are complex and subject to honest, inadvertent billing errors that may result in voluntary refunds or minor penalties/sanctions. Through their expression of support for the following provisions, Members acknowledge the Association's general expectations based on publicly available guidelines and information, and they:

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

      1. Shall act in good faith and with high integrity, implement sound and consistent business practices and generally uphold the standards of the profession in all aspects of patient care and business operations.

(Docket No. 373, Ex. 1125 at 32.)

      With respect to this provision, United contends that an industry custom and standard has been established that acknowledges the potential for mistakes in the administration and collection of payments, and indicates that this provision explains away its failure to pay claims that it apparently agreed to pay under the terms of its written contracts with IV Solutions.

**C.  IV SOLUTIONS' OPPOSITION**

      IV Solutions opposes the admission of the evidence on several grounds.  First, IV Solutions notes that it is not a member of the NHIA and that the NHIA's hortatory standards do not have the force of law as indicated in a California Attorney General's Opinion and in recent federal and state decisions regarding the offer of discounts to patients.  Second, IV Solutions notes that the NHIA standards were, in fact, adopted *after* the contracts in this case were negotiated and services had been rendered. Third, the NHIA standards rely at least in part on regulations that apply to Medicare payments which are not at issue in this case.  Fourth, the NHIA standards fail to establish a custom and practice that applies to out-of-network providers to collect copayments and deductibles, and that the custom and practice is directly to the contrary.  With respect to this point, IV Solutions again cites to the Attorney General's opinion as indicative that no such custom and practice exists at all, let alone with respect to out-of-network providers.  Finally, with respect to the counterclaims and defenses, IV Solutions contends that there is no evidence that it ever represented anything to United's agent regarding the collection of deductible and copayments but that, in any event, the NHIA standards are not probative on what may or may not have been said and understood by the parties during the negotiation of their agreements.

**D.  DISCUSSION**

      For purposes of this discussion only, the Court assumes that the written contracts between IV Solutions and United, with respect to the obligation to collect deductibles and copayments, are ambiguous.  In those circumstances, the legal question presented is whether the NHIA standards quoted above are relevant under Rule 401, Fed. R. Evid., and, if they do have some probative value, whether it is outweighed by considerations of prejudice, confusion and undue consumption of time.  Rule 403, Fed. R. Evid.  The relevance of the standards to construe the

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

agreements in issue depends on whether they describe a fixed industry custom and practice. *E.g., Southern Pac. Transp. Co. v. Santa Fe Pacific Pipelines, Inc.*, 88 Cal. Rptr. 2d 777, 783 (App. Ct. 1999). If so, custom and practice can be admitted to explain or clarify the agreement, but not to contradict its terms. *Binder v. Aetna Life Ins. Co.*, 89 Cal. Rptr. 2d 540, 554 (App. Ct. 1999); *Dea v. Davy*, 309 P.2d 894, 896 (App. Ct. 1957)(contract language in conflict with custom and usage prevails). It follows that the purported custom and practice had to have been understood by the parties who negotiated the agreements in question, if the custom and practice is to be admitted for the purpose of construing the agreement. *Davy*, 309 P. 2d at 896 (referring to "known usage"). As noted in *Columbia Artists Management., LLC v. Swenson & Burnakus, Inc.*, 2010 WL 1379737 at *2 (S.D.N.Y., Mar. 3. 2010):

> Evidence of custom and usage must establish that "(1) the term in question has a 'fixed and invariable' usage and (2) that the party sought to be bound was aware of the custom, or that the custom's existence was 'so notorious' that it should have been aware of it."

United has not shown either that the NHIA standards establish any custom and practice within the industry, that any such customs and practices were fixed and invariable or that the purported customs and practices were known to the persons who negotiated the contract.

### 1. *The Business Practice Standard*

The Court starts first with the business practice "standard" because it merits so little discussion. Essentially, the "standard" simply acknowledges that the administration of health plans can be difficult. Based on that statement, United argues as follows:

> In this case, IVS alleges that United "took advantage" of the discounts in the Viant Agreements for some claims, and then failed to pay the remainder of the claims under the agreements. See First Amended Complaint ¶ 33; see also FAC ¶ 24 ("Defendants applied the discounts it negotiated with IV Solutions to a portion of the charges."). IVS also has argued that United's original payment of some claims under the Viant Agreements is relevant to show United's interpretation of the agreements more broadly and a course of dealing between the parties.
> Yet, as evidenced by the Home Infusion Ethics Standards, companies like United face complex administrative requirements, and as a result, it is industry custom and practice that honest, inadvertent errors occur, and voluntary refunds are made as a result.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

(Docket No. 377, at 11.)

Apparently, because everyone in the industry knows that errors can happen due to plan complexity, United's purported breach of its contracts with IV Solutions should therefore be excused as a matter of custom and practice.

Custom and practice is a concept that bears solely on contract negotiations and comes into play only when necessary to resolve an ambiguity or fill in a blank. To argue that mistakes constituting breach constitute a "custom and practice" stretches the concept beyond any meaning ever given to the phrase in any case or treatise. The business practice standard is probative of nothing pertinent to this case and will not be admitted.

### 2. *The Patient Care Standard*

Here United, as the proponent of the evidence has failed to present sufficient evidence to establish that the NHIA standard describes a "fixed and invariable" custom and practice within the industry.

First, the Court notes that the standards in question were apparently not adopted and published until after the contracts in this case were negotiated and performed. Even then, the record is devoid of evidence that would allow the Court to determine whether the NHIA standards were intended to reflect widespread practices of members of the home infusion profession or were established in an attempt to upgrade and enhance the standing of its members by establishing so-called "best practices." Second, the evidence presented regarding membership in the organization undercuts the notion that the NHIA standards are widely known and applied. For example, United offers evidence that only 300 home infusion providers nationally, and 27 providers in California, are members of the NHIA. (Docket No. 377, at 6.) Those are unusually small numbers in a country of more than 300 million people that, as of 2010, was annually spending 17.6%, or about $2.5 trillion, of its multi-trillion dollar GDP on health care. (See, e.g., International Federation of Health Plans 2012 Comparative Price Report; 2011 Organization for Economic Development Report on Health Care Costs.) Moreover, California has fewer than 10% of the association's members but more than 10% of the national population. (Docket No. 377, at 6.) Because no information is given regarding the total number of potential members, there is no way to determine whether 27 constitutes a high or low percentage of membership.

Moreover, the record reflects that IV Solutions is not a member of the NHIA, which would tend to suggest that it likely did not enter into the agreement with the NHIA standards in

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-4887-GAF (MRWx) | Date | December 5, 2014 |
|---|---|---|---|
| Title | IV Solutions, Inc. v. United Healthcare Services, Inc., et al. | | |

mind.  Likewise, the record is devoid of any evidence that the Viant employees who negotiated the contracts on United's behalf were aware of any custom and practice regarding the obligation of out-of-network providers to collect deductibles and copayments.  Furthermore, with respect to United's claim that the failure to collect deductibles and copayments is unethical and inconsistent with custom and practice, the opinion of the California Attorney General, 64 OPS. CAL. ATTY. GEN. 782 (1981) indicates otherwise.  That opinion concluded that a provider who waives a patient's co-payment under an insurance plan does not constitute fraud or misrepresentation under California law.  *See also AFSCME Dist. Council 37 Health & Security Plan, et al. v. Bristol-Myers Squibb Co., et al.*, 948 F. Supp. 2d 338, 347-48 (S.D.N.Y. 2013) (pharmaceutical company's co-pay subsidy program not fraudulent where company had no contractual obligation to third-party payors).

In short, United has failed to present the Court with evidence that would tend to show the existence of any fixed and invariable custom and practice so widespread that the contracting parties here knew or should have been aware of it and intended that it govern their agreements.

The motion to exclude any portion of Exhibit 1125 is **GRANTED.**

**IT IS SO ORDERED.**