CROWELL & MORING LLP
Jennifer S. Romano (CSB No. 195953, jromano@crowell.com)
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Steven D. Allison (CSB No. 174491, sallison@crowell.com)
Samrah R. Mahmoud (CSB No. 285168, smahmoud@crowell.com)
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: 949.263.8400
Facsimile: 949.263.8414

Attorneys for Defendant
UNITED HEALTHCARE SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IV SOLUTIONS, INC., a California corporation,<br><br>               Plaintiff,<br><br>        v.<br><br>UNITED HEALTHCARE SERVICES, INC., a California corporation; AT&T COMMUNICATIONS OF CALIFORNIA, a California corporation; TIME WARNER, INC., a Delaware Corporation; SBC GLOBAL SERVICES, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>               Defendants. | Case No. 2:12-cv-04887-FMO-MRWx<br><br>[First Am. Complaint Filed: July 23, 2012]<br><br>[Sec. Am. Counterclaim Filed: May 3, 2013]<br><br>**UNITED HEALTHCARE SERVICES, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial Date:    February 23, 2016<br>Time:        8:30 a.m.<br>Ctrm:       22<br><br>**Judge:  The Honorable Fernando Olguin** |
| UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation,<br><br>             Counterclaimant<br><br>        v.<br><br>IV SOLUTIONS, INC., a California corporation,<br><br>             Counterdefendant | |

LAACTIVE-601612477.11
LAACTIVE-601612477.11

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

CLAIMS AND DEFENSES ............................................................................ 6

    I.     Plaintiff IVS' Claims ................................................................. 6

            A.    Summary Statement of Claims ..................................... 6

            B.    Required Elements for Plaintiff's Claims.................... 6

            C.    United's Key Evidence in Opposition to Plaintiff's Claims ........................................................................ 11

    II.    Summary Statement of United's Counterclaims and Affirmative Defenses ............................................................................... 42

            A.    Summary of Counterclaims and Affirmative Defenses .......... 42

            B.    Required Elements for United's Counterclaims and Affirmative Defenses .................................................. 43

            C.    United's Key Evidence in Support of Its Counterclaims and Affirmative Defenses ........................................... 55

UNITED'S POSITION ON ANTICIPATED EVIDENTIARY ISSUES.............. 79

BIFURCATION OF DAMAGES ................................................................. 80

JURY TRIAL.............................................................................................. 81

CLAIMS FOR ATTORNEYS FEES AND COSTS ............................................ 81

ABANDONMENT OF ISSUES ................................................................... 82

# TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*Aceves v. U.S. Bank, N.A.*,
   192 Cal. App. 4th 218 (2011)................................................................8

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000)..................................................................51

*Bank of America v. Super. Ct.*,
   198 Cal. App. 4th 862 (2011)..........................................................45

*Bennett v. Lew*,
   151 Cal. App.3d 1177 (1984)..........................................................47

*Boschma v. Home Loan Center, Inc.*,
   198 Cal. App. 4th 230 (2011)..........................................................44

*Briosos v. Wells Fargo Bank*,
   737 F. Supp. 2d 1018 (N.D. Cal. 2010)............................................44

*Camp v. Jeffer, Mangels, Butler & Marmaro*,
   35 Cal. App. 4th 620 (1995)..........................................................47

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990)..........................................................7

*Circuit City Stores, Inc. v. Mantor*,
   335 F.3d 1101 (9th Cir. 2003)........................................................50

*City of El Monte v. Super. Ct.*,
   29 Cal. App. 4th 272 (1994)..........................................................54

*Conti v. Board of Civil Serv. Comm. r*, 1 Cal.3d 351 (1969) ..................................................................49

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001)..........................................................81

*Donovan v. RRL Corp.*,
   26 Cal. 4th 261 (2001)..............................................................52, 53

- ii -

LAACTIVE-601612477.11

*Flying Dutchman Park, Inc. v. City and Cnty. of San Francisco*,
    93 Cal. App. 4th 1129 (2001) ....................................................................... 53, 81

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
    135 Cal. App. 4th 958 (2006) ............................................................................. 47

*Haserot v. Keller*,
    67 Cal. App. 659 (1924) ...................................................................................... 48

*Hodge v. Super. Ct.*,
    145 Cal. App. 4th 278 (2006) ............................................................................. 81

*Holomaxx Techs. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ............................................................. 44

*Jefferson v. J. E. French Co.*,
    54 Cal. 2d 717 (1960) .......................................................................................... 49

*Johnson v. City of Loma Linda*,
    24 Cal. 4th 61 (2000) .......................................................................................... 50

*Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*,
    23 Cal. 4th 305 (2000) .......................................................................................... 8

*Kendall-Jackson Winery, Ltd. v. Superior Ct.*,
    76 Cal. App. 4th 970 (1990) ............................................................................. 47

*Koch v. Williams*,
    193 Cal. App. 2d 537 (1961) ............................................................................. 44

*Lazar v. Super. Ct.*,
    12 Cal. 4th 631 (1996) .......................................................................................... 8

*Lynn v. Duckel*,
    46 Cal. 2d 845 (1956) .......................................................................................... 47

*Maggio, Inc. v. Neal*,
    196 Cal. App. 3d 745 (1987) ............................................................................. 10

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
    No. C 07-1027 SI, 2007 WL 1394155 (N.D. Cal. May 9, 2007) ...................... 55

*Martini E. Ricci Iamino S.P.A. v. Trinity Fruit Sales Co., Inc.*,
    No. 1:13-cv-276 AWI SAB, 2014 WL 4446293 (E.D. Cal. Sept. 9, 2014) ................................................................................................................. 10

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW; CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

*McCaffrey Grp., Inc. v. Super. Ct.*,
    224 Cal. App. 4th 1330 (2014)..........................................................................81

*Mendoza v. Ruesga*,
    169 Cal. App. 4th 270 (2008)...........................................................................47

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*,
    789 F.2d 1374 (9th Cir. 1986).........................................................................54

*Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*,
    197 Cal. App. 4th 1146 (2011).........................................................................51

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006).........................................................................51

*Olszewski v. Scripps Health*,
    30 Cal. 4th 798 (2003).....................................................................................44

*Owens v. Cty. of Los Angeles*,
    220 Cal. App. 4th 107 (2013)...........................................................................48

*Perdue v. Crocker Nat'l Bank*,
    38 Cal. 3d 913 (1985).......................................................................................51

*Piccinini v. Cal. Emergency Mgmt. Agency*,
    226 Cal. App. 4th 685 (2014).............................................................................8

*Roling v. E*Trade Secs.*,
    LLC, 756 F. Supp. 2d 1179 (N.D. Cal. 2010)..................................................44

*Thrifty-Tel, Inc. v. Bezenek*,
    46 Cal. App. 4th 1559 (1996)...........................................................................44

*Toscano v. Greene Music*,
    124 Cal. App. 4th 685 (2004).............................................................................8

*Tsemetzin v. Coast Fed. Sav. & Loan Ass'n*,
    57 Cal. App. 4th 1334 (1997)...........................................................................10

*Universal By-Products, Inc. v. City of Modesto*,
    43 Cal. App. 3d 145 (1974)..............................................................................44

*US Ecology, Inc. v. State of California*,
    129 Cal. App. 4th 887 (2005).............................................................................8

*Villalpando v. Transguard Ins. Co. of Am.*,
   17 F. Supp. 3d 969, 983 (N.D. Cal. 2014)............................................................51

*Wang & Wang LLP v. Banco Do Brasil S.A.*,
   No. 2:06-CV-000761-JAM-KJM, 2009 WL 530135 (E.D. Cal. Mar.
   3, 2009)................................................................................................................10

**Statutes**

29 U.S.C. § 1132................................................................................................43

29 U.S.C. § 1144(a) and § 502 ........................................................................43

Cal. Bus. & Prof. Code §§ 4300-4301....................................................44, 55

Cal. Bus. & Prof. Code § 17200 et seq..........................................................*passim*

Cal. Civ. Code § 1577.......................................................................................53

Cal. Civ. Code § 1577(1)..................................................................................52

Cal. Civ. Code § 1611..............................................................................3, 4, 5

Cal. Civ. Code § 1670.5(a).........................................................................50, 51

Cal. Civ. Code § 1670.5 (b)............................................................................51

Cal Civ. Code § 3294.......................................................................................54

Cal. Civ. Code § 3294(a)..................................................................................54

Cal. Civ. Code § 3295(d)...........................................................................54, 80

Cal. Code of Civ. Proc. § 337..........................................................................49

Cal. Code of Civ. Proc. § 337a................................................................9, 49, 71

Cal. Code of Civ. Proc. § 338(d).....................................................................71

Cal. Code of Civ. Proc § 431.70......................................................................52

Cal. Code of Civ. Proc. § 1021...................................................................55, 81

Cal. Health & Safety Code § 1371 ..........................................................43, 54, 82

Cal. Health & Safety Code § 1371.5 .......................................................43, 54, 82

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Other Authorities

13 Witkin, Summary of Cal. Law, Equity, § 3 at p. 284-85 (10th ed.
  2005) ............................................................................................................. 53

Ann Taylor Schwing, California Affirmative Defenses §44:1 (2d ed.
  2014) ............................................................................................................. 52

CACI 307 ................................................................................................................. 7

CACI 325 ................................................................................................................. 7

CACI 330 ............................................................................................................... 53

CACI 335 ............................................................................................................... 47

CACI 338 ............................................................................................................... 49

CACI 372 ............................................................................................................... 10

CACI 1900 ............................................................................................................. 46

CACI 1901 ............................................................................................................. 46

CACI 1902 ............................................................................................................... 9

CACI 1903 ............................................................................................................. 46

CACI 1925 ............................................................................................................. 49

Fed. R. Evid. 401 ........................................................................................... 79, 80

Fed. R. Evid. 402 ........................................................................................... 79, 80

Fed. R. Evid. 403 ........................................................................................... 79, 80

Fed. R. Evid. 404 ................................................................................................. 79

Fed. R. Evid. 408 ................................................................................................. 80

Fed. R. Evid. 702 ................................................................................................. 80

# INTRODUCTION

This action concerns IV Solutions, Inc.'s ("IVS'") fraudulent scheme to obtain 50 times market value for drugs it provides to patients regardless of the terms of the health insurance policy between its patients and their health insurers. As part of this fraudulent scheme, IVS purchases drugs at a price far below wholesale and then marks up the price of the drugs by approximately 50 times the average wholesale price. It then:

- Advertises on its website and in marketing materials, which it provides directly to doctors and hospitals, that it "accepts all insurance";
- Withholds from the patient (and the referring hospital/physician) its exorbitant charges and its status as an out-of-network provider;
- Waives copays, deductibles, and coinsurance to conceal its charges from patients, all while representing to health plans that it collects these charges;
- Delays in submitting claims to the health plans for many months so that it can continue its scheme undetected and allow required copay, coinsurance, and deductibles to exhaust;
- Lies on the claim forms, and commits other acts of deception, to manipulate the health plans' claims processing systems in an effort to receive larger unwarranted payments; and
- Attempts to extort exorbitant payments from the health plans through the cloud of litigation once its charges are discovered.

IVS used this fraudulent scheme to obtain almost $4 million in payments from United for drugs and services IVS provided to three members—D.H., M.S., and A.N—of employer health insurance policies administered by United Healthcare Services, Inc. ("United"). IVS now seeks to obtain millions more in payments for

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

drugs it provided to D.H. and M.S.[1]  IVS bases all of its claims against United on three agreements (the "Agreements"):

(i)  A single-claim pricing agreement IVS entered into in March 2009 with United's agent Viant, Inc. ("Viant"), for $3,000 in nursing services it provided to D.H. (the "D.H. Viant Agreement"), which IVS claims also applies to millions of dollars in claims for drugs provided to D.H. in 2008 and 2009.

(ii)  A contract that IVS entered into with Three Rivers Provider Network, Inc. (the "TRPN Agreement") in March 2009 in which IVS agreed to provide a 5% "discount" off its billed charges to unspecified parties who contract with Three Rivers; United had a separate contact with Three Rivers which gave it the <u>option</u> to access discounts negotiated by Three Rivers.

(iii)  A single-claim pricing agreement IVS entered into in April 2008 with Viant for drugs IVS provided to M.S. in December 2007 (the "M.S. Viant Agreement").  IVS claims this Agreement applied to drugs provided to M.S. over the next three years, even though IVS' subsequent claims were for different List Prices and different drug codes.  Regardless, United rejected the Viant Agreement no later than September 2008.

At trial, United will demonstrate that these Agreements do not entitle IVS to the additional payments it seeks for multiple reasons:

<u>With respect to D.H.:</u>

- The D.H. Viant Agreement, by its terms, applied to a single claim for $3,000 in nursing services.  The evidence will show that when the D.H. Viant Agreement was negotiated, IVS had already billed United millions of dollars in drug claims, and United had rejected those charges and already paid the drug claims based on Medicare rates as set forth in D.H.'s health insurance

---

[1] IVS's complaint also asserted claims for interest for a third patient, A.N. The Court dismissed all of IVS's claims relating to A.N. on summary judgment

policy.  There is no evidence that the parties ever intended the D.H. Viant Agreement to apply to anything other than nursing claims.

- Both the D.H. Viant Agreement and the TRPN Agreement were, by their terms, subject to the terms of the health insurance policy between United and D.H. The following binding terms were in D.H.'s health insurance policy:

   o D.H. was limited to a lifetime maximum of $1,000,000 in out-of-network benefits, and it is undisputed that this limit was reached.

   o Providers that did not charge deductibles or coinsurance were not entitled to payment at all for their services.

   o A party requesting payment of benefits was required to submit certain information to United to allow United to accurately process the claims.

- IVS obtained the D.H. Viant Agreement by falsely representing that it would collect deductibles and coinsurance, while it never intended to do so.  IVS actually hid its exorbitant charges from D.H. by not sending him bills.

- To the extent IVS argues that the D.H. Viant Agreement applies to services for which the price was not set forth in the Agreement (i.e., claims other than nursing), under Civil Code Section 1611, the amount due under the contract is the reasonable value of the goods and services provided.  The only evidence of the reasonable value of the drugs provided to D.H. will be the testimony of United's employee, Eleanore Soriano, and United's expert, Kevin Cornish, who will testify that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- United's contract with Three Rivers gave United the right to decide if it would access the TRPN Agreement for particular claims.  United never accessed the TRPN Agreement for the claims at issue – the drugs IVS provided D.H. in January 2010 – because D.H. had exceeded his lifetime benefit maximum provided by his health benefit policy and had no benefits

1    remaining to cover these services.

2    • The TRPN Agreement included no specific price term, and instead provided

3    for a 5% discount off of unspecified billed charges.  Because it left the

4    ultimate price term to the full discretion of IVS, under California Civil Code

5    Section 1611, the amount due under the contract is the reasonable value of

6    the goods and services provided.  The only evidence of the reasonable value

7    of the drugs provided to D.H. will be the testimony of United's employee,

8    Eleanore Soriano, and United's expert, Kevin Cornish, who will testify that

9    United has already paid more than the reasonable value of the drugs and

10   services provided by IVS to D.H.

11   With respect to M.S.:

12   • The M.S. Viant Agreement, by its terms, applied to a single claim for a

13   specific List Price for a specific drug code.  There is no evidence that the

14   parties ever intended the M.S. Viant Agreement to apply to anything other

15   than the specific claim with the specific List Price for the specific drug code

16   set forth in that Agreement.

17   • Any obligations under the M.S. Viant Agreement terminated no later than

18   September 2008 when United exercised its right to terminate the M.S. Viant

19   Agreement.

20   • The M.S. Viant Agreement was, by its terms, subject to the terms of the

21   health insurance policy between United and M.S. The following binding

22   terms were in M.S.'s health insurance policy:

23        ○ M.S. was required to pay copays, deductibles, and coinsurance.

24        ○ Benefits may be forfeited if information required to complete or

25          verify a claim is not provided to United; and

26        ○ United was permitted to pay out-of-network providers who

27          provided services to M.S. based on agreed rates or competitive fees

28          in the geographic area.

- IVS obtained the M.S. Viant Agreement by falsely representing that it would collect copays, deductibles, and coinsurance, while it never intended to do so. IVS actually hid its exorbitant charges from M.S. by not sending him bills.

- Since the List Prices and drug codes in many of the claims at issue were not addressed in the M.S. Viant Agreement, under California Civil Code Section 1611, to the extent the Agreement applies to those List Prices and drug codes, the amount due under the contract is the reasonable value of the goods and services provided. The only evidence of the reasonable value of the drugs provided to M.S. will be the testimony of United's employee, Eleanore Soriano, and United's expert, Kevin Cornish, who will testify that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.

Not only is IVS due no money under the Agreements, but United is also entitled to recover the money it has already paid IVS for services to D.H., M.S. and a third member, A.N., because IVS obtained the payments through unlawful business practices and fraud. The evidence at trial will show that IVS engaged in the unethical and fraudulent scheme discussed above in violation of California Business and Professions Code sections that prescribe standards for professional conduct and disciplinary standards for pharmacy license holders. Further, IVS committed fraud against United by making false statements on claims forms and in correspondence and other communications, and by failing to inform United's agent Viant about additional claims during the negotiations for the Viant Agreements. IVS also knew that D.H., M.S. and A.N.'s health insurance policies required it to collect deductibles, coinsurance, and copay. It fraudulently represented to United that it would collect these charges to convince United to enter into the Viant Agreements, as well as to convince United to pay its claims. Despite these representations, IVS' long-standing policy was never to make these charges – and IVS never sent a single bill to any of the Members, or collected a single deductible,

copay, or coinsurance from them.  United is thus entitled to recover all of the payments it made to IVS because of IVS' unlawful business practices and its fraud.

**CLAIMS AND DEFENSES**

**I.     Plaintiff IVS' Claims**

    **A.     Summary Statement of Claims**

Plaintiff IVS has pleaded eight causes of action against Defendant United:

Claim 1: United allegedly breached the Agreements.

Claim 2:  United allegedly breached the covenant of good faith and fair dealing for each of three Agreements.

Claim 3: United is allegedly liable for promissory estoppel based on its alleged promises in the Agreements.

Claim 4:  United is allegedly liable for intentionally misrepresenting its intention to perform on the Agreements.

Claim 5:  United is allegedly liable under quantum meruit based on the implied promises it made in the Agreements.  (IVS withdrew this claim at the parties' Rule 16 conference on August 27, 2014.)

Claim 6:  United is allegedly liable for an open book account.

Claim 7:  United is allegedly liable for goods and services rendered.  (IVS withdrew this claim at the parties' Rule 16 conference on August 27, 2014.)

Claim 8:  United is allegedly liable for unfair business practices.  (This claim was dismissed by the Court on summary judgment.)

    **B.     Required Elements for Plaintiff's Claims**

        **1.     Claim 1:  Breach of contract**

IVS claims that United is liable for damages for breaching the Agreements. To recover under breach of contract, IVS must prove these essential elements for each of the three Agreements:

(a)     IVS and United entered into the contract(s);

(b)     IVS did all, or substantially all, of the significant things that the

contract(s) required it to do;

(c)     All conditions required by the contract for United's performance had occurred/or were excused;

(d)     United failed to do something that the contract(s) required it to do; and

(e)     IVS was harmed by that failure.

*Authorities:*  California Civil Jury Instruction (CACI) 303.

### 2.     Claim 2:  Breach of the covenant of good faith and fair dealing

IVS claims that United is liable for breach of the covenant of good faith and fair dealing because it did not timely pay IVS under the Agreements.  First Amended Complaint ("FAC") at ¶¶ 50-51.

To recover on a breach of the covenant of good faith and fair dealing theory, IVS must prove by a preponderance of the evidence, these essential elements:

(a)     That IVS and United entered into a contract;

(b)     That IVS did all, or substantially all, of the significant things that the contract required it to do or that it was excused from having to do those things;

(c)     That all conditions for United's performance had occurred or were excused;

(d)     That United unfairly interfered with IVS' right to receive the benefits of the contract; and

(e)     That IVS was harmed by United's conduct.

However, if a claim for breach of the implied covenant does nothing more than allege a mere contract breach and, relying on the same alleged acts, simply seeks the same damages or other relief already claimed in a contract cause of action, it may be disregarded as superfluous because no additional claim is actually stated.

*Authorities:*   CACI 325; *see also Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

### 3.    Claim 3:  Promissory estoppel

IVS claims that United is liable for failing to perform on the "written" promises it made in the Agreements.  FAC at ¶ 54.

Promissory estoppel is an equitable theory that is rooted in contract, not tort. *Piccinini v. Cal. Emergency Mgmt. Agency*, 226 Cal. App. 4th 685, 689 (2014).  If proven, it would entitle IVS to contract damages.  *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692–93 (2004).  To recover under this theory, IVS must prove the following elements:

(a)    That United made a promise that was clear and unambiguous in its terms;

(b)    That IVS relied on this promise;

(c)    That IVS' reliance was both reasonable and foreseeable;

(d)    That IVS was injured by its reliance; and

(e)    That injustice can be avoided only by enforcement of United's promise.

*Authorities:  US Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 901 (2005); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011); *see also Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).

### 4.    Claim 4:  Intentional misrepresentation (false promise)

IVS claims that United is liable for intentional misrepresentation in the form of promissory fraud, because United allegedly entered into the Agreements without the intent to perform.  FAC at ¶¶ 61-62.

A party is liable for promissory fraud when it enters into a contract without the intent to perform.  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  In order to recover on its claim of false promise, IVS must prove the following essential elements:

(a)    That United made a promise to IVS;

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LAACTIVE-601612477.11

1   (b)   That United did not intend to perform this promise when it made it;

2   (c)   That United intended that IVS rely on this promise;

3   (d)   That IVS reasonably relied on United's promise;

4   (e)   That United did not perform the promised act;

5   (f)   That IVS was harmed; and

6   (g)   That IVS' reliance on United's promise was a substantial factor in

7   causing its harm.

8   *Authorities:*  CACI 1902.

9   **5.   Claim 5: Quantum meruit**

10   Withdrawn by IVS at the Rule 16 conference.

11   **6.   Claim 6:  Open book account**

12   IVS claims that United is liable under the doctrine of open book account for

13   "reasonable value of services rendered."  FAC at ¶¶ 76-77.

14   As provided in California Code of Civil Procedure Section 337a:

15   The term "book account" means a detailed statement which constitutes

16   the principal record of one or more transactions between a debtor and a

17   creditor arising out of a contract or some fiduciary relation, and shows

18   the debits and credits in connection therewith, and against whom and

19   in favor of whom entries are made, is entered in the regular course of

20   business as conducted by such creditor or fiduciary, and is kept in a

21   reasonably permanent form and manner and is (1) in a bound book, or

22   (2) on a sheet or sheets fastened in a book or to backing but detachable

23   therefrom, or (3) on a card or cards of a permanent character, or is kept

24   in any other reasonably permanent form and manner.

25   To recover under this theory, IVS must prove:

26   (a)   IVS and United had financial transactions;

27   (b)   IVS kept an account of the debits and credits involved in the

28   transactions;

1  (c)  United owes IVS money on the account; and

2  (d)  The amount of money that United owes IVS based on the reasonable

3  value of IVS' services less the amounts United has already paid.

4  To prove that IVS kept an account of the debits and credits involved in the

5  transactions, IVS must also prove that United agreed that the money due on the

6  parties' transactions would be the subject of an account kept by IVS.

7  *Authorities:* FAC at ¶ 76-78 (alleging the IVS is entitled to the "reasonable

8  value of services rendered"); CACI 372 (as modified); *see also Martini E. Ricci*

9  *Iamino S.P.A. v. Trinity Fruit Sales Co., Inc.*, No. 1:13-cv-276 AWI SAB, 2014

10  WL 4446293, at *10-11 (E.D. Cal. Sept. 9, 2014) ("Whether a book account exists

11  is determined by examining the agreements and conduct of the parties in the context

12  of their commercial dealings"; granting summary judgment dismissing book

13  account claim where transactions were subject to an express contract and there was

14  no evidence defendant had agreed to be bound by a book account); *Wang & Wang*

15  *LLP v. Banco Do Brasil S.A.*, No. 2:06-CV-000761-JAM-KJM, 2009 WL 530135,

16  at *4 (E.D. Cal. Mar. 3, 2009) ("An action for an open book account will arise only

17  where the parties have agreed that the money due on a transaction will be the

18  subject of an account between them. . . . The mere incidental keeping of accounts

19  does not alone create a book account."); *Tsemetzin v. Coast Fed. Sav. & Loan*

20  *Ass'n*, 57 Cal. App. 4th 1334, 1343-44 (1997) ("It seems to be well settled that

21  monies which become due under an *express* contract . . . cannot, *in the absence of a*

22  *contrary agreement between the parties*, be treated as items under an open book

23  account . . . ."); *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752 (1987) (reversing

24  trial court judgment for plaintiff on open book account claim because there was "no

25  evidence of an agreement between the parties that the loans to [the defendant]

26  would be carried as a book account.")

27  **7.  Claim 7:  Goods and services rendered**

28  Withdrawn by IVS at the Rule 16 conference.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

10

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

### 8.   Claim 8:  Unfair competition.

Dismissed by the Court on summary judgment. ECF No. 264.

## C.   United's Key Evidence in Opposition to Plaintiff's Claims

### 1.   Claim 1:  Breach of contract

#### a.   Claims for D.H.

##### (1)   IVS and United entered into a contract.

IVS alleges that D.H.'s first course of treatment – from February 2008 to January 2009 – is governed by the D.H. Viant Agreement IVS executed with Viant in March 2009.  FAC at ¶¶ 18, 20.  IVS alleges that D.H.'s second course of treatment from January to February 2010 is governed by a network agreement it executed with Three Rivers Provider Network, Inc. (the "TRPN Agreement"), also in March 2009.  FAC at ¶¶ 18, 23.  Evidence of the Agreements includes:

- The D.H. Viant Agreement, which:
  - applies to the products/services with a "List Price" of $3000, which were nursing charges only, with no other price term included;
  - provides:  "Payment of benefits, if any, is subject to the terms and conditions of the policy.  Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and
  - twice refers to IVS' obligations to charge D.H. for deductibles, coinsurance, and other patient responsibility amounts.
- The TRPN Agreement, which makes no reference to United or to any of its members, but does refer to IVS' obligations to charge patients deductibles, coinsurance, and/or copays.
- The January 2010 Network Access Agreement between United and Three Rivers, which gave United the right (but not the obligation) to "access" providers who were contracted with Three Rivers.

- The health insurance policy for D.H., which (1) required collection of deductibles and coinsurance for services by out-of-network providers and provided that no benefits were available if these amounts were not charged to D.H.; (2) required that certain information was submitted to United when requesting payment of benefits; and (3) included a $1,000,000 lifetime maximum for out-of-network benefits for D.H.

      **(2)**     **IVS did not do all, or substantially all, of the significant things that the contract required it to do.**

The evidence will show that IVS violated material provisions of the D.H. Viant Agreement and the TRPN Agreement by failing to charge D.H. deductibles and coinsurance and by submitting false information to United on claims forms, in correspondence, and in other communications.  Evidence regarding these material breaches includes:

- Testimony of IVS' employees that it is their understanding that pharmacies are required to collect applicable deductibles, copays, and coinsurance when required under a member's health insurance policy.
- Testimony of IVS' witnesses and corroborating records showing that IVS inquired from United and learned that D.H. had specific deductible and coinsurance obligations and a lifetime out-of-network maximum of $1,000,000 before providing drugs and services to D.H.
- United's Explanation of Benefits ("EOB") documents sent to IVS for services provided to D.H., which repeatedly reference those portions of IVS' claims that were D.H.'s responsibility.
- Testimony of United's expert, Professor Katherine Baicker, that health insurance policies typically require providers to charge deductibles, copays, and coinsurance for pharmaceuticals as an important means to lower health care costs to members.  By requiring copays, coinsurance, and deductibles, health plans are able to steer members to higher-value providers, which then

CROWELL
& MORING LLP
ATTORNEYS AT LAW

12

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

lowers costs to the health insurance plan and ultimately decreases plan members' premiums.  These are important to incentivize members to use the optimal amount of health care services.

- Testimony of United's expert Mr. Cornish, who will testify that it is the custom and practice in the health care industry, including for infusion service providers, to collect deductibles, copays, and coinsurance.

- Testimony of IVS' witnesses and documents, which confirm that IVS never collected or even attempted to collect deductibles, copays, or coinsurance from D.H.

- Claims forms submitted by IVS to United in which IVS misrepresented that the services it provided were an emergency (or "urgent/emergent") and/or that there was no in-network provider available.

- Documents and testimony from United's witnesses that establish IVS misrepresented in correspondence and communications that the services it provided were an emergency (or "urgent/emergent") and/or that there was no in-network provider available.

### (3) All conditions for United's performance had not occurred and were not excused.

The evidence will show that the D.H. Viant Agreement does not apply to the claims that IVS asserts and that United was not required to pay IVS for its claims at the rate provided in the Viant Agreement.  The evidence will also show that (1) United was not required to pay IVS under the terms of D.H.'s health benefit policy unless IVS complied with the terms of the policy; and (2) IVS failed to comply with these terms by waiving coinsurance and deductibles and by submitting false information to United in claims forms, correspondence, and other communications.  This evidence includes:

- The D.H. Viant Agreement, which:
  - applies to the products/services with a "List Price" of $3000, which

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LAACTIVE-601612477.11

were nursing charges only, with no other price term included;

- o provides: "Payment of benefits, if any, is subject to the terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and

- o twice refers to IVS' obligations to charge D.H. for deductibles, coinsurance, and other patient responsibility amounts.

- The TRPN Agreement, which makes no reference to United or to any of its members, but does refer to IVS' obligations to charge patients deductibles, coinsurance, and/or copays.

- The January 2010 Network Access Agreement between United and Three Rivers, which gave United the right (but not the obligation) to "access" providers who were contracted with Three Rivers.

- The health insurance policy for D.H., which (1) required collection of deductibles and coinsurance for services by out-of-network providers and provided that no benefits were available if these amounts were not charged to D.H.; (2) required that certain information was submitted to United when requesting payment of benefits; and (3) included a $1,000,000 lifetime maximum for out-of-network benefits for D.H. The policy also provided that out-of-network providers will be reimbursed at "140 percent of the published rates allowed by Medicare for the same or similar service" (i.e., MNRP) where there are no applicable negotiated fees.

- United's Explanation of Benefits ("EOB") documents sent to IVS for services provided to D.H., which repeatedly reference those portions of IVS' claims that were D.H.'s responsibility.

- Testimony of IVS' witnesses and documents, which confirm that IVS never collected or even attempted to collect deductibles, copays, or coinsurance

1   from D.H.

2   • Claims forms submitted by IVS to United in which IVS misrepresented that

3   the services it provided were an emergency (or "urgent/emergent") and/or

4   that there was no in-network provider available.

5   • Documents and testimony from United's witnesses that establish IVS

6   misrepresented in correspondence and communications that the services it

7   provided were an emergency or ("urgent/emergent") and/or that there was no

8   in-network provider available.

9                    **(4)   United did not fail to do something that the**
                              **contract required.**
10
        The evidence that will show United did not breach the D.H. Viant Agreement
11
   or TRPN Agreement includes:
12
        • The D.H. Viant Agreement, which:
13
            o applies to the products/services with a "List Price" of $3000, which
14
              were nursing charges only, with no other price term included;
15
            o provides:  "Payment of benefits, if any, is subject to the terms and
16
              conditions of the policy.  Therefore, this letter of agreement does not
17
              constitute, nor should it be construed as, a guarantee of benefit
18
              payment by the Payor, and will be null and void if no benefit payment
19
              is determined to be payable to the Payor."; and
20
            o twice refers to IVS' obligations to charge D.H. for deductibles,
21
              coinsurance, and other patient responsibility amounts.
22
        • The claim forms submitted by IVS for services provided to D.H., which
23
          show that IVS charged 50 times the average wholesale price for the drugs it
24
          provided to D.H., but that IVS' charges for nursing services were closer to
25
          market ($3000 combined for multiple dates of service).
26
        • Testimony of the employees of Viant (the third-party company that
27
          negotiated discounts with out-of-network providers for individual claims on
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

15

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

behalf of United) who will testify that:

- o the D.H Viant Agreement was negotiated in 2009, after IVS sent United a $3,000 claim for nursing services; and
- o the Viant claims negotiator was not provided with information regarding drug claims and had no discussions of drug claims with IVS.

- Documents, including EOBs, demonstrating that United paid for the drugs IVS provided to D.H. from February to January 2009 at Medicare-based rates under the terms of D.H.'s health insurance policy.

- Documents, including EOBs, showing that United paid for applicable nursing services at the rate set forth in the D.H. Viant Agreement.

- The TRPN Agreement and Network Access Agreement, which did not obligate United to pay IVS' exorbitant charges for drugs (minus a 5% discount) for D.H.'s second course of treatment.

- Testimony of United's employee, Sarah Peterson, that (1) United understood, and at all times acted consistent with the understanding; (2) the D.H. Viant Agreement applied only to nursing claims; (3) United paid the full $1,000,000 in out-of network benefits available to D.H. during the time period at issue in this case; and (4) United did not access the TRPN Agreement for any of the claims after the out-of-network maximum was reached.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony of IVS' witnesses that they knew of D.H.'s deductible and coinsurance obligations under his health insurance policy and his lifetime out-of-network maximum, but that they did not charge D.H. for a deductible or coinsurance.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the

amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

(5) **IVS was not harmed by any failure of United under the D.H. contracts.**

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony of United's employee, Sarah Peterson, that United paid the full $1,000,000 in out-of network benefits available to D.H. during the time period at issue in this case.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### b. IVS' Claims for M.S.

(1) **IVS and United entered into a contract for M.S.**

IVS alleges that all of its services to M.S. from December 2007 through June 2011 are governed by a pricing agreement it executed with Viant on April 30, 2008 (the "M.S. Viant Agreement"). Evidence of the Agreement includes:

- The M.S. Viant Agreement, which:
  - by its terms, applied to a single claim for a specific List Price for a specific drug code. There is no evidence that the parties ever intended the M.S. Viant Agreement to apply to anything other than the specific claim with the specific List Price for the specific drug code set forth in that Agreement;
  - contains no provision relating to duration or termination;
  - provides: "Payment of benefits, if any, is subject to the terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit

CROWELL & MORING LLP ATTORNEYS AT LAW

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW; CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and

- o twice refers to IVS' obligations to charge M.S. for deductibles, coinsurance, and other patient responsibility amounts.

- M.S.'s health insurance policy, which provides that
  - o M.S. was required to pay copays, deductibles, and coinsurance and states that the waiver of such charges without notification to United constitutes a "serious violation of the provisions of the Plan";
  - o the failure to furnish information required to complete or verify a claim could result in delayed or forfeited benefits;
  - o claims forms should be submitted within 90 days of the date of service or as soon as reasonably possible; and
  - o United would pay for claims for M.S. based on agreed rates or competitive fees in the geographic area.

- United's EOBs relating to M.S., which, beginning in September 2008, gave notice that United was rejecting the M.S. Viant Agreement and was instead paying reasonable and customary amounts as provided in M.S.'s health insurance policy.

### (2) IVS did not do all, or substantially all, of the significant things that the contract required.

The evidence will show that IVS violated material provisions of the M.S. Viant Agreement by (1) failing to charge M.S. deductibles, copays, and coinsurance; (2) delaying in submitting claims forms to United, sometimes as long as six months after the date of service; and (3) submitting false information to United on claims forms and in correspondence and other communications. Evidence regarding these material breaches includes:

- Testimony of IVS' employees that it is their understanding pharmacies are required to collect applicable deductibles, copays, and coinsurance when

1    required under a member's health insurance policy.

2    • Testimony of IVS' witnesses and corroborating records showing that IVS

3    inquired from United and learned that M.S. had specific copay, deductible,

4    and coinsurance obligations before providing drugs and services to M.S.

5    • United's EOBs sent to IVS for services provided to M.S., which repeatedly

6    reference those portions of IVS' claims that were M.S.'s responsibility.

7    • Testimony of United's expert, Professor Katherine Baicker, that health

8    insurance policies typically require providers to charge deductibles, copays,

9    and coinsurance for pharmaceuticals as an important means to lower health

10   care costs to members.  By requiring copays, coinsurance, and deductibles,

11   health plans are able to steer members to higher-value providers, which then

12   lowers costs to the health insurance policy and ultimately decreases policy

13   members' premiums. These are important to incentivize members to use the

14   optimal amount of health care services.

15   • Testimony of United's expert Mr. Cornish, who will testify that it is the

16   custom and practice in the health care industry, including for infusion service

17   providers, to collect deductibles, copays, and coinsurance.

18   • Testimony of IVS' witnesses and documents which will confirm that IVS

19   never collected or even attempted to collect deductibles, copays, or

20   coinsurance from M.S.

21   • Testimony of M.S. that he was not informed by IVS that it was an out-of-

22   network provider, was not informed prior to treatment what IVS would

23   charge, and was never billed a copay, deductible, or coinsurance by IVS.

24   • Claims forms and work product created by IVS' expert, Mr. Kaplan, that

25   show IVS delayed in submitting claims forms to United, sometimes as long

26   as six months after the date of service.

27   • Claims forms submitted by IVS to United in which IVS misrepresented that

28   the services it provided were an emergency (or "urgent/emergent") and/or

CROWELL
& MORING LLP
ATTORNEYS AT LAW

19

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

1   that there was no in-network provider available.

2   • Documents and testimony from United's witnesses establishing that IVS

3     misrepresented in correspondence and communications that the services it

4     provided were an emergency or ("urgent/emergent") and/or that there was no

5     in-network provider available.

6                   **(3)    All conditions required for United's**

7                   **performance had not occurred and were not**
                    **excused.**

8       The evidence will show that the M.S. Viant Agreement does not apply to the

9   claims that IVS asserts and that United was not required to pay IVS for those

10  claims at the rate in the Viant Agreement.  The evidence will also show that  (1)

11  United was not required to pay IVS under the terms of M.S.'s health insurance

12  policy unless IVS complied with the terms of the policy; and (2) IVS failed to

13  comply with these terms.  This evidence includes:

14  • The M.S. Viant Agreement, which:

15      o applies only to the specific drug and amount listed in the Agreement;

16      o provides:  "Payment of benefits, if any, is subject to the terms and

17        conditions of the policy.  Therefore, this letter of agreement does not

18        constitute, nor should it be construed as, a guarantee of benefit

19        payment by the Payor, and will be null and void if no benefit payment

20        is determined to be payable to the Payor."; and

21      o twice refers to IVS' obligations to charge M.S. for deductibles,

22        coinsurance, and other patient responsibility amounts.

23  • United's EOBs relating to M.S., which, beginning in September 2008, gave

24    notice that United was rejecting the M.S. Viant Agreement and was instead

25    paying reasonable and customary amounts as provided in M.S.'s health

26    insurance policy.

27  • M.S.'s health insurance policy, which provides that

28      o M.S. was required to pay copays, deductibles, and coinsurance and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

20

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

states that the waiver of such charges without notification to United constitutes a "serious violation of the provisions of the Plan";

o  the failure to furnish information required to complete or verify a claim could result in delayed or forfeited benefits;

o  claims forms should be submitted within 90 days of the date of service or as soon as reasonably possible; and

o  United would pay for claims for M.S. based on agreed rates <u>or</u> competitive fees in the geographic area.

- Testimony of IVS' witnesses and corroborating records showing that IVS inquired from United and learned that M.S. had specific deductible, copay, and coinsurance obligations before providing drugs and services to M.S.

- United's EOBs sent to IVS for services provided to M.S., which repeatedly reference those portions of IVS' claims that were M.S.'s responsibility.

- Testimony of IVS' witnesses and documents that will confirm that IVS never collected or even attempted to collect deductibles, copays, or coinsurance from M.S.

- Claims forms and work product by Mr. Kaplan that show IVS delayed in submitting claims forms to United, sometimes as long as six months after the date of service.

- Claims forms submitted by IVS to United in which IVS misrepresented that the services were an emergency (or "urgent/emergent") and/or that there was no in-network provider available.

- Documents and testimony from United's witnesses establishing that IVS misrepresented in correspondence and communications that the services it provided were an emergency (or "urgent/emergent") and/or that there was no in-network provider available.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

21

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

**(4)    United did not fail to do something that the contract required.**

The following evidence establishes that United did not breach the M.S. Viant Agreement:

- The M.S. Viant Agreement, which:
  - applies only to the specific drug and amount listed in the Agreement;
  - provides:  "Payment of benefits, if any, is subject to the terms and conditions of the policy.  Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor.";
  - limits out-of-network benefits to the "reasonable and customary charge" and expressly states that amounts above this charge are not eligible for reimbursement.  Reasonable and customary charges are defined as agreed rates or competitive fees in the geographic area; and
  - twice refers to IVS' obligations to charge M.S. for deductibles, coinsurance, and other patient responsibility amounts.
- The claim forms submitted by IVS for services provided to M.S., which show that IVS charged 50 times the average wholesale price for the drugs it provided to M.S.
- Testimony of Viant employees that (1) there was no discussion relating to the duration or termination of the Agreement; and (2) the only claim that was negotiated or discussed between Viant and IVS was the specific claim identified in the Viant Agreement.
- Documents, including EOBs, demonstrating that IVS concealed its claims until the M.S. Viant Agreement was negotiated, and in September 2008, United terminated the M.S. Viant Agreement and paid for all subsequent claims for M.S. based on M.S.'s health insurance policy.
- Testimony of United's employee, Sarah Peterson, regarding United's

payment based on the terms of M.S.'s health insurance policy and termination of the M.S. Viant Agreement.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.

- Testimony of IVS' witnesses that
  - they knew all of M.S.'s copay, deductible, and coinsurance obligations under his health insurance policy, but they did not charge M.S. any copays, deductibles, or coinsurance; and
  - by September 2008, IVS recognized that United was not paying under the M.S. Viant Agreement.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### (5) IVS was not harmed by any failure of United under the M.S. Viant Agreement.

- Testimony of United's employee, Sarah Peterson, regarding United's payment based on the terms of M.S.'s health insurance policy and termination of the M.S. Viant Agreement.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### 2. Claim 2: Breach of the covenant of good faith and fair dealing

United is not liable for IVS' claim for breach of the covenant of good faith

CROWELL
& MORING LLP
ATTORNEYS AT LAW

23

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

and fair dealing on largely the same grounds cited for IVS' breach of contract claim:

### a. Claims for D.H.

**(1) IVS and United entered into a contract.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(2) IVS did not do all, or substantially all, of the significant things that the contract required and it was not excused from having to do those things.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(3) All conditions for United's performance did not occur and were not excused.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(4) United did not unfairly interfere with IVS' right to receive the benefits of the contract.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(5) IVS was not harmed by United's conduct.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

### b. Claims for M.S.

**(1) IVS and United entered into a contract.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(2) IVS did not do all, or substantially all, of the significant things that the contract required and it was not excused from having to do those things.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(3) All conditions for United's performance did not occur and were not excused.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(4) United did not unfairly interfere with IVS' right to receive the benefits of the contract.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**(5)    IVS was not harmed by United's conduct.**

*See* evidence cited above for IVS' Breach of Contract cause of action.

**3.    Claim 3:  Promissory Estoppel**

United is not liable for Promissory Estoppel for many of the same reasons it is not liable for Breach of Contract – because the Agreements on which IVS relies for Promissory Estoppel did not obligate United to pay for the specific drug claims at issue in the FAC.  In addition, IVS cannot establish reliance or causation because the evidence shows it could not have, and did not, rely on the Agreements.

**a.    Claims for D.H.**

**(1)    United did not make a promise that was clear and unambiguous on the terms claimed by IVS.**

Evidence of the promises is as follows:

- The D.H. Viant Agreement, which:
  - applies to the products/services with a "List Price" of $3000, which were nursing charges only, with no other price term included;
  - provides:  "Payment of benefits, if any, is subject to the terms and conditions of the policy.  Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and
  - twice refers to IVS' obligations to charge D.H. for deductibles, coinsurance, and other patient responsibility amounts.
- The TRPN Agreement, which makes no reference to United or to any of its members, but does refer to IVS' obligations to charge patients deductibles coinsurance, and/or copays.
- The January 2010 Network Access Agreement between United and Three Rivers, which gave United the right (but not the obligation) to "access" providers who were contracted with Three Rivers.
- The health insurance policy for D.H., which (1) required collection of

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW; CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

deductibles and coinsurance for services by out-of-network providers and provided that no benefits were available if these amounts were not charged to D.H., (2) required that certain information was submitted to United when requesting payment of benefits; and (3) included a $1,000,000 lifetime maximum for out-of-network benefits for D.H.

### (2)    IVS did not rely on a promise.

- Testimony of IVS' witnesses that:
  - IVS did not rely on the D.H. Viant Agreement in providing drugs to D.H. because the Viant Agreement did not apply to drug charges and IVS had provided all services for which it claims this agreement controls *before* the agreement was executed.;
  - when IVS entered into the TRPN Agreement, IVS knew that United had the right to decide whether or not to access the agreement, and IVS did not know whether United would ever access the agreement for services to D.H.; and
  - IVS has never billed, and never had the intent to bill, D.H. for its services, and IVS still has no intent to bill any charges to D.H.
- Testimony of Viant's witnesses that IVS did not rely on the D.H. Viant Agreement in providing drugs to D.H. because the Viant Agreement did not apply to drug charges.
- Documents, including EOBs, showing that IVS did not rely on United's alleged promises in the D.H. Viant Agreement because IVS had provided all services for which it claims this agreement controls *before* the agreement was executed.
- Documents, including EOBs, showing that IVS did not rely on alleged promises in the TRPN Agreement because United did not access the TRPN Agreement for any claim until after IVS had completed services to D.H.

**(3)    Any reliance by IVS was not reasonable or foreseeable.**

- Testimony of IVS' witnesses that:

   o IVS did not rely on the D.H. Viant Agreement in providing drugs to D.H. because the Viant Agreement did not apply to drug charges and IVS had provided all services for which it claims this agreement controls *before* the agreement was executed;

   o When IVS entered into the TRPN Agreement, IVS knew that United had the right to decide whether or not to access the agreement, and IVS did not know whether United would ever access the agreement for services to D.H.; and

   o IVS has never billed, and never had the intent to bill, D.H. for its services, and IVS still has no intent to bill any charges to D.H.

- Testimony of Viant's witnesses that IVS did not rely on the D.H. Viant Agreement in providing drugs to D.H. because the Viant Agreement did not apply to drug charges.

- Documents, including EOBs, showing that IVS did not rely on United's alleged promises in the D.H. Viant Agreement because IVS had provided all services for which it claims this agreement controls *before* the agreement was executed.

- Documents, including EOBs, showing that IVS did not rely on alleged promises in the TRPN Agreement because United did not access the TRPN Agreement for any claim until after IVS had completed services to D.H.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

**(4)    IVS was not injured by any reliance.**

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and

CROWELL
& MORING LLP
ATTORNEYS AT LAW

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

services provided by IVS to D.H.

- Testimony of United's employee, Sarah Peterson, that United paid the full $1,000,000 in out-of network benefits available to D.H. during the time period at issue in this case.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

(5) <b>Injustice is not avoided only by enforcement of United's promise.</b>

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony of United's employee, Sarah Peterson, that United paid the full $1,000,000 in out-of network benefits available to D.H. during the time period at issue in this case.

- Documents showing that IVS acted inequitably and defrauded United.

<b>b.     Claims for M.S.</b>

(1) <b>United did not make a promise that was clear and unambiguous in the terms claimed by IVS.</b>

Evidence of the promise includes:

- The M.S. Viant Agreement, which:
  - by its terms, applied to a single claim for a specific List Price for a specific drug code.  There is no evidence that the parties ever intended the M.S. Viant Agreement to apply to anything other than the specific claim with the specific List Price for the specific drug code set forth in that Agreement;
  - contains no provision relating to duration or termination;
  - provides:  "Payment of benefits, if any, is subject to the terms and conditions of the policy.  Therefore, this letter of agreement does not

constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and

- o twice refers to IVS' obligations to charge M.S. for deductibles, coinsurance, and other patient responsibility amounts.

- M.S.'s health insurance policy, which provides that:
  - o M.S. was required to pay copays, deductibles, and coinsurance and states that the waiver of such charges without notification to United constitutes a "serious violation of the provisions of the Plan";
  - o the failure to furnish information required to complete or verify a claim could result in delayed or forfeited benefits;
  - o claims forms should be submitted within 90 days of the date of service or as soon as reasonably possible; and
  - o United would pay for claims for M.S. based on agreed rates <u>or</u> competitive fees in the geographic area.

- United's EOBs for services to M.S., which, beginning in September 2008, gave notice that United was not paying IVS' drug claims based on the M.S. Viant Agreement and was instead paying reasonable and customary amounts as provided in M.S.'s health insurance policy.

### (2)    IVS did not rely on a promise.

- Testimony of IVS' witnesses that:
  - o when IVS received the EOB dated September 2, 2008 paying at reasonable rates under the policy, IVS knew that United had rejected the M.S. Viant Agreement and understood that United was not paying IVS' claims based on the M.S. Viant Agreement; and
  - o IVS has never billed, and never had the intent to bill, M.S. for its services, and IVS still has no intent to bill any charges to M.S.

- Documents, including EOBs, showing that (1) IVS could not have relied on

United's alleged promises in the M.S. Viant Agreement for services provided before the M.S. Viant Agreement was executed that IVS concealed; and (2) IVS did not reasonably rely on the M.S. Viant Agreement after United rejected it and stated that United was paying under the policy based on reasonable charges.

- Testimony of Viant's witnesses that at the time the Viant Agreement was executed, Viant was aware of only one claim for M.S. with a specific List Price for a specific drug code, and Viant was not aware of any claims for services to M.S. other than the claim Viant negotiated with IVS.

- Testimony of Sarah Peterson that at the time the M.S. Viant Agreement was executed, IVS had only billed for one date of service to M.S.

### (3) Any reliance by IVS was not reasonable or foreseeable.

- The M.S. Viant Agreement, which:

  - by its terms, applied to a single claim for a specific List Price for a specific drug code. There is no evidence that the parties ever intended the M.S. Viant Agreement to apply to anything other than the specific claim with the specific List Price for the specific drug code set forth in that Agreement;

  - contains no provision relating to duration or termination;

  - provides: "Payment of benefits, if any, is subject to the terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and

  - twice refers to IVS' obligations to charge M.S. for deductibles, coinsurance, and other patient responsibility amounts.

- Testimony of IVS' witnesses that:

CROWELL
& MORING LLP
ATTORNEYS AT LAW

30

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

- when IVS received the EOB dated September 2, 2008, IVS knew that United had rejected the M.S. Viant Agreement and understood that United was not paying IVS' claims based on the M.S. Viant Agreement; and

- IVS has never billed, and never had the intent to bill, M.S. for its services, and IVS still has no intent to bill any charges to M.S.

- Documents, including EOBs, showing that IVS could not have relied on United's alleged promises in the M.S. Viant Agreement for services provided before the M.S. Viant Agreement was executed that IVS concealed.  These documents further show that IVS did not reasonably rely on the M.S. Viant Agreement after United rejected the M.S. Viant Agreement and stated that United was paying under the policy based on reasonable charges.

- Testimony of Viant's witnesses that at the time the Viant Agreement was executed, Viant was aware of only one claim for M.S. with a specific List Price for a specific drug code, and Viant was not aware of any claims for services to M.S. other than the claim Viant negotiated with IVS.

- Testimony of Sarah Peterson that at the time the M.S. Viant Agreement was executed, IVS had only billed for one date of service to M.S.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### (4)    IVS was not injured by any reliance.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony of United's employee, Sarah Peterson, regarding United's payment based on the terms of M.S.'s health insurance policy and termination of the M.S. Viant Agreement.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

> **(5)** **Injustice is not avoided only by enforcement of United's promise.**

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.

- Documents, including EOBs, showing that IVS could not have relied on United's alleged promises in the M.S. Viant Agreement for services provided before the M.S. Viant Agreement was executed that IVS concealed.  These documents further show that IVS did not reasonably rely on the M.S. Viant Agreement after United rejected the M.S. Viant Agreement and stated that United was paying under the policy based on reasonable charges.

- Documents showing that IVS acted inequitably and defrauded United.

### 4. Claim 4: Intentional misrepresentation (false promise)

The evidence showing that United is not liable for intentional misrepresentation (false promise) largely overlaps the evidence for IVS' Breach of Contract and Promissory Estoppel claims.  In addition, IVS cannot show the critical element that United did not intend to perform the Agreements at the time they were executed – because United actually did perform on each of the Agreements under its terms.

### a. Claims for D.H.

> **(1)** **United did not make the promise IVS asserts.**

Evidence of the promises is as follows:

- The D.H. Viant Agreement, which:
  - applies to the products/services with a "List Price" of $3000, which were nursing charges only, with no other price term included;

- provides: "Payment of benefits, if any, is subject to the terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and

- twice refers to IVS' obligations to charge D.H. for deductibles, coinsurance, and other patient responsibility amounts.

- The TRPN Agreement, which makes no reference to United or to any of its members, but does refer to IVS' obligations to charge patients deductibles, coinsurance, and/or copays.

- The January 2010 Network Access Agreement between United and Three Rivers, which gave United the right (but not the obligation) to "access" providers who were contracted with Three Rivers.

- The health insurance policy for D.H., which (1) required collection of deductibles and coinsurance for services by out-of-network providers and provided that no benefits were available if these amounts were not charged to D.H.; (2) required that certain information was submitted to United when requesting payment of benefits; and (3) included a $1,000,000 lifetime maximum for out-of-network benefits for D.H. The policy also provided that out-of-network providers will be reimbursed at "140 percent of the published rates allowed by Medicare for the same or similar service" (i.e., MNRP) where there are no applicable negotiated fees.

**(2)    United intended to perform its promise when it made it.**

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano,

that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony of Sarah Peterson concerning the payments made by United to IVS and the reasons for those payments.

        **(3)**      **United did not intend that IVS rely on the purported promise alleged by IVS.**

*See* evidence cited above for Element 1 of Intentional Misrepresentation.

        **(4)**      **IVS did not reasonably rely on United's purported promise.**

- The D.H. Viant Agreement, which:
  - applies to the products/services with a "List Price" of $3000, which were nursing charges only, with no other price term included;
  - provides: "Payment of benefits, if any, is subject to the terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and
  - twice refers to IVS' obligations to charge D.H. for deductibles, coinsurance, and other patient responsibility amounts.
- Testimony of IVS' witnesses that:
  - IVS did not rely on the D.H. Viant Agreement in providing drugs to D.H. because IVS had provided all services for which it claims this agreement controls *before* the agreement was executed, and the Viant Agreement did not apply to drug charges;
  - when IVS entered into the TRPN Agreement, IVS knew that United had the right to decide whether or not to access the agreement, and IVS did not know whether United would ever access the agreement for services to D.H.; and
  - IVS has never billed, and never had the intent to bill, D.H. for its

services, and IVS still has no intent to bill any charges to D.H.

- Testimony of Viant's witnesses that IVS did not rely on the D.H. Viant Agreement in providing drugs to D.H. because the Viant Agreement did not apply to drug charges.

- Documents, including EOBs, showing that IVS did not rely on United's alleged promises in the D.H. Viant Agreement because IVS had provided all services for which it claims this agreement controls *before* the agreement was executed.

- Documents, including EOBs, showing that IVS did not rely on alleged promises in the TRPN Agreement because United did not access the TRPN Agreement until after IVS had completed services to D.H.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### (5) United did not fail to perform the promised act.

- Testimony of Sarah Peterson that United complied with all terms of the D.H. Viant Agreement and Three Rivers Network Agreement with respect to D.H.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### (6) IVS was not harmed.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H.

- Testimony of United's employee, Sarah Peterson, that United paid the full

$1,000,000 in out-of network benefits available to D.H. during the time period at issue in this case.

### (7) IVS' purported reliance on United's promise was not a substantial factor in causing harm.

*See* evidence cited directly above for Element 6 of Intentional Misrepresentation.

### b. Claims for M.S.

### (1) United did not make the promise IVS asserts.

Evidence of the promises is as follows:

- The M.S. Viant Agreement, which:
  - by its terms, applied to a single claim for a specific List Price for a specific drug code. There is no evidence that the parties ever intended the M.S. Viant Agreement to apply to anything other than the specific claim with the specific List Price for the specific drug code set forth in that Agreement;
  - contains no provision relating to duration or termination;
  - provides: "Payment of benefits, if any, is subject to the terms and conditions of the policy. Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and
  - twice refers to IVS' obligations to charge M.S. for deductibles, coinsurance, and other patient responsibility amounts.
- M.S.'s health insurance policy, which provides that
  - M.S. was required to pay copays, deductibles, and coinsurance and states that the waiver of such charges without notification to United constitutes a "serious violation of the provisions of the Plan";
  - the failure to furnish information required to complete or verify a

CROWELL
& MORING LLP
ATTORNEYS AT LAW

36

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

claim could result in delayed or forfeited benefits;

  o   claims forms should be submitted within 90 days of the date of service or as soon as reasonably possible; and

  o   United would pay for claims for M.S. based on agreed rates or competitive fees in the geographic area.

- United's EOBs relating to M.S., which, beginning in September 2008, gave notice that United was not paying IVS' drug claims based on the M.S. Viant Agreement and was instead paying reasonable and customary amounts as provided in M.S.'s health insurance policy.

### (2)   United intended to perform its promise when it made it.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.

- Testimony of Sarah Peterson concerning the payments made by United to IVS and the reasons for those payments.

### (3)   United did not intend that IVS rely on the purported promise alleged by IVS.

*See* evidence cited above for Element 1 of Intentional Misrepresentation.

### (4)   IVS did not reasonably rely on United's purported promise.

- The M.S. Viant Agreement, which:

  o   by its terms, applied to a single claim for a specific List Price for a specific drug code.  There is no evidence that the parties ever intended the M.S. Viant Agreement to apply to anything other than the specific claim with the specific List Price for the specific drug code set forth in

1    that Agreement;

2    o contains no provision relating to duration or termination;

3    o provides: "Payment of benefits, if any, is subject to the terms and

4    conditions of the policy. Therefore, this letter of agreement does not

5    constitute, nor should it be construed as, a guarantee of benefit

6    payment by the Payor, and will be null and void if no benefit payment

7    is determined to be payable to the Payor."; and

8    o twice refers to IVS' obligations to charge M.S. for deductibles,

9    coinsurance, and other patient responsibility amounts.

10   • Testimony of IVS' witnesses that:

11   o when IVS received the EOB dated September 2, 2008, IVS knew that

12   United had rejected the M.S. Viant Agreement and understood that

13   United was not paying IVS' claims based on the M.S. Viant

14   Agreement; and

15   o IVS has never billed, and never had the intent to bill, M.S. for its

16   services, and IVS still has no intent to bill any charges to M.S.

17   • Documents, including EOBs, showing that IVS could not have relied on

18   United's alleged promises in the M.S. Viant Agreement for services provided

19   before the M.S. Viant Agreement was executed that IVS concealed. These

20   documents further show that IVS did not reasonably rely on the M.S. Viant

21   Agreement after United rejected it and stated that United was paying under

22   the policy based on reasonable charges.

23   • Testimony of Viant's witnesses that at the time the Viant Agreement was

24   executed, Viant was aware of only one claim for M.S. with a specific List

25   Price for a specific drug code; Viant was not aware of any claims for M.S.

26   other than the claim Viant negotiated with IVS.

27   • Testimony of Sarah Peterson that at the time the M.S. Viant Agreement was

28   executed, IVS had billed only for one date of service to M.S.

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

**(5)    United did not fail to perform the promised act.**

- The M.S. Viant Agreement, which:
  - by its terms, applied to a single claim for a specific List Price for a specific drug code.  There is no evidence that the parties ever intended the M.S. Viant Agreement to apply to anything other than the specific claim with the specific List Price for the specific drug code set forth in that Agreement;
  - contains no provision relating to duration or termination;
  - provides:  "Payment of benefits, if any, is subject to the terms and conditions of the policy.  Therefore, this letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor, and will be null and void if no benefit payment is determined to be payable to the Payor."; and
  - twice refers to IVS' obligations to charge M.S. for deductibles, coinsurance, and other patient responsibility amounts.
- Testimony of Sarah Peterson that United complied with all terms of the M.S. Viant Agreement.
- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.
- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

**(6)    IVS was not harmed.**

- Testimony of Sarah Peterson that United complied with all terms of the M.S.

CROWELL & MORING LLP
ATTORNEYS AT LAW

Viant Agreement.

- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to M.S.

        **(7)    IVS' purported reliance on United's promise was not a substantial factor in causing harm.**

*See* evidence cited above for Element 6 of Intentional Misrepresentation.

### 5.    Claim 5: Quantum meruit

IVS withdrew this claim at the Rule 16 conference.

### 6.    Claim 6:  Open book account

IVS has not established the elements of an open book account claim, namely that United agreed to be bound by an account kept by IVS and that IVS actually kept an account of the debits and credits involved in the transactions.  Further, the evidence will show that United already paid IVS more than the reasonable value of its drugs and services and thus no additional money is due IVS.

#### a.    IVS and United had financial transactions.

United does not dispute that IVS sent United claims and that United made payments on IVS' claims.

#### b.    IVS did not keep an account of the debits and credits involved in the transactions.

IVS has produced no document that constitutes a book account in this matter:

1.    There is no permanent record which lists the transactions between the parties; and

2.    The sole documents that IVS relies on to show the alleged amounts due from United are schedules prepared for litigation by its damages expert and its attorneys.

Further, IVS has no evidence that United agreed to be bound by an account kept by IVS of the money due on the transactions between the parties.  Indeed the evidence establishes the opposite: that United *expressly disagreed* to be bound by

IVS' account and that it asserted no additional monies to IVS were due.  This evidence includes:

- Documents, including EOBS, which show that United contested IVS' invoices and the billed charges therein.
- Documents, including EOBS and checks, which show that United paid for IVS' services and asserted that no further money was due IVS.
- Testimony of IVS' employees, who will testify that IVS received and read United's EOBs and checks, and understood them to mean that United was not paying under IVS' interpretation of the Agreements and was contesting the invoices.
- Testimony from United's witnesses that it did not agree to be bound by any account kept by IVS of the alleged money due for IVS' services.

### c.     United does not owe IVS money on the account.

- IVS' and United's records, which show the amounts United paid IVS for drugs and services provide to D.H. and M.S.
- Testimony of United's expert, Mr. Cornish, and employee, Eleanore Soriano, that United has already paid more than the reasonable value of the drugs and services provided by IVS to D.H. and M.S.
- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members and the dates on which those amounts were paid.

### d.     United owes no amount to IVS.

*See* evidence cited directly above.

### 7.     Claim 7:  Goods and services rendered

IVS withdrew this claim at the Rule 16 conference.

### 8.     Claim 8:  Unfair competition.

This claim was dismissed by the Court on summary judgment.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

41

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

II.     **Summary Statement of United's Counterclaims and Affirmative Defenses**

A.     **Summary of Counterclaims and Affirmative Defenses**

1.     **Counterclaim 1:** IVS is liable to United for violating the fraud and unlawful prongs of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.).

2.     **Counterclaim 2:** IVS is liable to United for intentional misrepresentation.

3.     **Counterclaim 3:** IVS is liable to United for negligent misrepresentation.

4.     **Affirmative defense 1:** Failure to state a claim. United does not plan to pursue this as an affirmative defense at trial.

5.     **Affirmative defense 2:** Fraud

6.     **Affirmative defense 3:** Unclean hands

7.     **Affirmative defense 4:** Failure of consideration. United does not plan to pursue this as an affirmative defense at trial.

8.     **Affirmative defense 5:** Waiver

9.     **Affirmative defense 6:** Estoppel. United does not plan to pursue this affirmative defense at trial.

10.     **Affirmative defense 7:** Statutes of limitations

11.     **Affirmative defense 8:** Laches

12.     **Affirmative defense 9:** Material breach. United does not plan to pursue this as an affirmative defense at trial.

13.     **Affirmative defense 10:** Unjust enrichment. United does not plan to pursue this as an affirmative defense at trial.

14.     **Affirmative defense 11:** IVS' claims are barred because they seek payments in excess of the benefits available under a plan member's health care benefits plan. United does not plan to pursue this as an affirmative defense at trial.

15.   **Affirmative defense 12:** Unconscionability

16.   **Affirmative defense 13:** Setoff and recoupment.

17.   **Affirmative defense 14:** Mistake of fact.

18.   **Affirmative defense 15:** Justification and privilege.  United does not plan to pursue this as an affirmative defense at trial.

19.   **Affirmative defense 16:** IVS has no right to restitution from Defendant.  United does not plan to pursue this as an affirmative defense at trial.

20.   **Affirmative defense 17:** IVS' equitable claims are barred because IVS has an adequate remedy at law.

21.   **Affirmative defense 18:** Any claims for interest under the California Knox-Keene Act (including Health & Safety Code §§ 1371 and 1371.5) in the Complaint, in whole or in part, are barred because the Plaintiff is not entitled to such interest under these provisions of state law.  United does not plan to pursue this as an affirmative defense at trial.

22.   **Affirmative defense 19:** The claims for punitive damages in the Complaint, in whole or in part, are barred, because, inter alia, at all relevant times, Defendant did not act with fraud, malice or oppression. United does not plan to pursue this as an affirmative defense at trial.

23.   **Affirmative defense 20:** Claims for relief in the Complaint, including but not limited to the prayer for interest, in whole or in part, are barred because all claims in the complaint are pre-empted by ERISA, including Section 514(a), 29 U.S.C. § 1144(a) and Section 502, 29 U.S.C. § 1132.

24.   **Affirmative defense 21:** No entitlement to attorney's fees. United does not plan to pursue this as an affirmative defense at trial.

**B.    Required Elements for United's Counterclaims and Affirmative Defenses**

**1.    Counterclaim 1:  Violation of the UCL (under fraudulent and unlawful prongs)**

IVS is liable for violating the UCL's unlawful and fraud prongs because IVS

1   engaged in an unethical and fraudulent scheme to obtain 50 times the average

2   wholesale price for drugs it provided to D.H., M.S., and A.N.

3       A business practice is actionable under the unlawful prong of the UCL if it

4   violates another law. *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1033

5   (N.D. Cal. 2010).  The underlying law may be civil, criminal, federal, state,

6   municipal, statutory, regulatory or judicially-made. *Id*.  IVS' conduct violated

7   California Business & Professions Code §§ 4300-4301, which provide standards for

8   professional conduct and disciplinary standards for pharmacy license holders.

9   Sections 4300-4301 provide that a holder of a pharmacy license can be subject to

10  discipline for the "commission of any act involving moral turpitude, dishonesty,

11  fraud, deceit or corruption."

12      A business practice is actionable under the fraud prong of the UCL if it is

13  likely to deceive members of the public. *Holomaxx Techs. v. Microsoft Corp.*, 783

14  F. Supp. 2d 1097, 1108 (N.D. Cal. 2011).

15      To recover under this cause of action, United must show that:

16      (a)    IVS engaged in one of the practices prohibited by the statute; and

17      (b)    United suffered actual injury as a result of defendant's actions.

18      *Authorities:* Cal. Bus. & Prof. Code §§ 17200 *et seq.; Roling v. E*Trade

19  *Secs.*, LLC, 756 F. Supp. 2d 1179, 1192 (N.D. Cal. 2010); *Boschma v. Home Loan

20  Center, Inc.*, 198 Cal. App. 4th 230, 254 (2011).); *Olszewski v. Scripps Health*, 30

21  Cal. 4th 798, 827 (2003).

22          **2.    Counterclaim 2:  Intentional misrepresentation**

23      IVS is also liable for intentional misrepresentations.

24      An actionable misrepresentation may be made in a wide variety of ways:  it

25  may be made expressly; it may be implied from conduct; it may be made by

26  concealment of material facts, or it may be inferred from the circumstances. *Thrifty-

27  Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567 (1996); *Universal By-Products,

28  Inc. v. City of Modesto*, 43 Cal. App. 3d 145, 151 (1974); *Koch v. Williams*, 193

1   Cal. App. 2d 537, 541 (1961).  Nondisclosure may constitute actionable fraud

2   "when the defendant had exclusive knowledge of material facts not known to the

3   plaintiff" or "when the defendant actively conceals a material fact from the

4   plaintiff." *Bank of America v. Super. Ct.*, 198 Cal. App. 4th 862, 870-71 (2011).

5         To establish a fraud claim based on an affirmative intentional

6   misrepresentation, United must prove the following elements:

7         (a)  IVS represented to United that a fact was true;

8         (b)  IVS' representation was false;

9         (c)  IVS knew that the representation was not true when it made it, or IVS

10   made the representation recklessly and without regard for its truth;

11        (d)  IVS intended United to rely on the representation;

12        (e)  United reasonably relied on the representation;

13        (f)  United was harmed; and

14        (g)  United's reliance on IVS' representation was a substantial factor in

15   causing its harm.

16        To prove a fraud claim based on concealment or nondisclosure, United must

17   prove the following elements:

18        (a) IVS disclosed some facts to United but intentionally failed to disclose

19   other facts, making the disclosure deceptive, or that IVS intentionally failed to

20   disclose certain facts that were known only to it and that United could not have

21   discovered;

22        (b) United did not know of the concealed facts;

23        (c) IVS intended to deceive United by concealing the facts;

24        (d) Had the omitted information been disclosed, United reasonably would

25   have behaved differently;

26        (e) United was harmed; and

27        (f) IVS' concealment was a substantial factor in causing United's harm.

28

*Authorities*:  CACI 1900; CACI 1901 (as modified).

### 3.    Counterclaim 3:  Negligent misrepresentation

IVS is also liable for negligent misrepresentations.  To establish a claim for negligent misrepresentation, United must prove the following elements:

(a)    That IVS represented to United that a fact was true;

(b)    That IVS' representation was not true;

(c)    That IVS had no reasonable grounds for believing the representation was true when it made it;

(d)    That IVS intended that United rely on this representation;

(e)    That United reasonably relied on IVS' representation;

(f)    That United was harmed; and

(g)    That United's reliance on IVS' representation was a substantial factor in causing its harm.

*Authorities*:  CACI 1903.

### 4.    Affirmative defense 1:  Failure to state a claim upon which relief can be granted

United does not plan to pursue this as an affirmative defense at trial.

### 5.    Affirmative defense 2:  Fraud

United is entitled to the affirmative defense of fraud for all of IVS' causes of action.  To establish this defense, United must prove the following elements:

(a)  IVS represented a fact to United or intentionally concealed an important fact from United, creating a false representation;

(b)  IVS knew that the representation was not true;

(c)  IVS made the representation to persuade United to enter into the contracts;

(d)  United reasonably relied on this representation; and

(e)  United would not have entered into the contracts if it had known that the representation was not true.

1    *See* CACI 335.

2    ### 6.    Affirmative defense 3:  Unclean hands

3    United is entitled to this affirmative defense for all of IVS' causes of action.

4    The elements for an unclean hands defense are:

5        (a)    IVS engaged in unconscionable, bad faith, or inequitable conduct; and

6        (b)    The conduct was in connection with the matter in controversy.

7    *Authorities*: *Kendall-Jackson Winery, Ltd. v. Super. Ct.*, 76 Cal. App. 4th

8    970, 978-79 (1999) ("The defense of unclean hands arises from the maxim, 'He

9    who comes into Equity must come with clean hands.' . . . The doctrine demands

10   that a plaintiff act fairly in the matter for which he seeks a remedy. He must come

11   into court with clean hands, and keep them clean, or he will be denied relief,

12   regardless of the merits of his claim. . . . The defense is available in legal as well as

13   equitable actions." (internal citations omitted)); *Mendoza v. Ruesga*, 169 Cal. App.

14   4th 270, 279 (2008) ("The doctrine of unclean hands requires unconscionable, bad

15   faith, or inequitable conduct by the plaintiff in connection with the matter in

16   controversy."); *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App.

17   4th 958, 1005 (2006) ("Consistent with the law, the jury was instructed that Fuller–

18   Austin was guilty of unclean hands if it committed misconduct that violated

19   conscience or good faith"); *Bennett v. Lew*, 151 Cal. App.3d 1177, 1186 (1984)("It

20   is a fundamental principle of equity that he who comes into equity must do so with

21   clean hands.  '[Plaintiff's] hands are rendered unclean within the purview of the

22   maxim by any form of conduct that, in the eyes of honest and fair-minded men,

23   may properly be condemned and pronounced wrongful'" (internal citations

24   omitted)); *Lynn v. Duckel*, 46 Cal. 2d 845, 850 (1956) (plaintiff who, without

25   obtaining required permit, had graded and paved alley so as to make it passable for

26   vehicular traffic to his premises was barred by doctrine of unclean hands from

27   seeking judicial relief against obstruction of alley); *Camp v. Jeffer, Mangels, Butler*

28   *& Marmaro*, 35 Cal. App. 4th 620, 638 (1995) (unclean hands available in tort and

contract actions), *superseded by statute on other grounds recognized in Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1073 (9th Cir. 2004).

### 7.    Affirmative defense 4:  Lack of consideration

United does not plan to pursue this affirmative defense at trial.

### 8.    Affirmative defense 5: Waiver

United is entitled to the affirmative defense of waiver for any drugs IVS provided to D.H. or M.S. after United paid for the claims based on D.H.'s and M.S.'s health insurance policies because IVS waived any right to additional payment under the D.H. Viant Agreement, TRPN Agreement, and M.S. Viant Agreement.  In addition, on the M.S. claims, United is entitled to the defense of waiver for any drugs IVS provided to M.S. after termination of the M.S. Agreement.

A simple voluntary relinquishment of a right with knowledge of all the facts -- an expression of intention, by speech or conduct, not to demand a certain thing – is sufficient to constitute such a waiver.  To succeed on this defense, United must prove the following elements by clear and convincing evidence:

1.    IVS claims that United was required to pay for drugs and services at the price stated in the D.H. Viant Agreement and M.S. Viant Agreement; and

2.    IVS voluntarily and knowingly gave up its right to have United perform these obligations.

*Authorities: Haserot v. Keller*, 67 Cal. App. 659, 669 (1924) ("A simple voluntary relinquishment of a right with knowledge of all the facts-an expression of intention, by speech or conduct, not to demand a certain thing-is sufficient to constitute such a waiver."); *Owens v. Cty. of Los Angeles,* 220 Cal. App. 4th 107, 118 (2013) ("Waiver is the intentional relinquishment of a known right.")

### 9.    Affirmative defense 6:  Equitable Estoppel

United does not plan to pursue this affirmative defense at trial.

### 10.    Affirmative defense 7:  Statute of limitations

IVS' suit, which was filed on April 9, 2012, was not filed within the time set by law for certain of its claims.  To succeed on this defense, United must prove that:

(a)    For IVS' breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and open book account claims:  that IVS' claimed harm occurred before April 9, 2008.

(b)    For IVS' intentional misrepresentation claims: that IVS' claimed harm occurred before April 9, 2009.

*Authorities:*  CACI 338 and CACI 1925.  *See also* Cal. Civ. Proc. Code §§ 337 (prescribing four-year limitations period for written contract and book account), 337a (defining "book account"), 338(d) (prescribing three-year limitations period for fraud); *Jefferson v. J. E. French Co.*, 54 Cal. 2d 717, 718-19 (1960) (nature of right sued upon determines limitations period).

### 11.    Affirmative defense 8:  Laches

United is entitled to a laches defense because IVS waited too long to sue United after United indicated that it was not paying additional amounts.  The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.  To succeed on this defense, United has the burden of proving each of the following elements:

1.    That IVS unreasonably delayed in bringing suit on a claim for drugs or services on which IVS seeks relief; and

2.    That IVS either acquiesced to United's payment for services at rates less than those billed by IVS, or its delay in bringing suit caused prejudice to United.

*Authorities*:  *Conti v. Bd. of Civil Serv. Comm'rs,* 1 Cal. 3d 351, 359 (1969) ("The defense of laches requires unreasonable delay plus either acquiescence in the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LAACTIVE-601612477.11

act about which plaintiff complains or prejudice to the defendant resulting from the delay."); *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000).

### 12.   Affirmative defense 9:  Material breach

United does not plan to pursue this as an affirmative defense at trial. However, United will present evidence, as described above, that IVS is not entitled to recover under its breach of contract theories because it cannot prove by a preponderance of the evidence that it did all, or substantially all, of the significant things that the contract required it to do.

### 13.   Affirmative defense 10:  Unjust enrichment

United does not plan to pursue this as an affirmative defense at trial.   United, however, will present evidence that United has already paid IVS much more than the reasonable value of IVS' services.

### 14.   Affirmative defense 11:  Payments sought in excess of benefits available under member's policy

United does not to pursue this as an affirmative defense at trial.  However, United will present evidence that United is not obligated to pay the sums sought based on the terms of the Members' health insurance policies – terms that IVS had to comply with in order to be entitled to payment.

### 15.   Affirmative defense 12:  Unconscionability

United is entitled to this affirmative defense for all of IVS' claims, because they are all based on the unconscionable pricing that IVS seeks to enforce via the Agreements.

The Code of Civil Procedure provides that a court may refuse to enforce any clause of a contract that it finds to be unconscionable.  Cal. Civ. Code. § 1670.5(a). A contract term is unconscionable if its terms are unreasonably favorable to one side.  *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003). When a party claims that a contract term is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting,

1  purpose, and effect to aid the court in making the determination." Cal. Civ. Code §
2  1670.5(b).

3      "The price term, like any other term in a contract, may be unconscionable."
4  *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 926 (1985).  To determine if a price
5  term is unconscionable, "courts consider not only the market price, but also the cost
6  of the goods or services to the seller . . . the inconvenience imposed on the seller . . .
7  and the true value of the product or service." *Id*. at 927 (internal references
8  omitted).

9      "In addition to the price justification, decisions examine . . . the 'procedural
10  aspects' of unconscionability." *Id*.  Procedural unconscionability involves
11  oppression or surprise due to unequal bargaining power. *Villalpando v. Transguard*
12  *Ins. Co. of Am.*, 17 F. Supp. 3d 969, 983 (N.D. Cal. 2014).  The fact that a party is
13  sophisticated cannot defeat an unconscionability claim. *Nagrampa v. MailCoups,*
14  *Inc.*, 469 F.3d 1257, 1283 (9th Cir. 2006).

15      Procedural and substantive unconscionability need not be present to the same
16  degree; the more substantively oppressive the contract term, the less evidence of
17  procedural unconscionability is required to come to the conclusion that the term is
18  unenforceable, and vice versa. *Mission Viejo Emergency Med. Assocs. v. Beta*
19  *Healthcare Grp.*, 197 Cal. App. 4th 1146, 1158-60 (2011).

20      To prevail on this defense, United must show that given their commercial
21  setting, purpose, and effect, the price terms that IVS seeks to enforce in the
22  Agreements are unreasonably favorable to IVS, and that in obtaining these price
23  terms, IVS engaged in oppression or surprise.

24      *Authorities*:  Cal. Civ. Code. § 1670.5; *Armendariz v. Found. Health*
25  *Psychcare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000); *Perdue*, 38 Cal.3d at 926-28.

26          **16.**    **Affirmative defense 13:  Setoff and recoupment**
27      Setoff is an equitable doctrine under which the defendant may offset sums
28  owing to the plaintiff against sums owing from the plaintiff.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

51

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

1   United asserts this defense to the extent that the trier of fact finds that money

2   is due *from* United to IVS under some claims in this case and that money is due *to*

3   United from IVS under other claims in this case.

4       *Authorities*:  Ann Taylor Schwing, California Affirmative Defenses §44:1

5   (2d ed. 2014) ("Setoff is an equitable doctrine under which a defendant may offset

6   sums owing to the plaintiff against sums owing from plaintiff to the defendant, with

7   the result that the offsetting amounts are cancelled and the defendant is obligated to

8   pay plaintiff only the net amount, if any."); Cal. Civ. Proc. Code § 431.70 ("Where

9   cross-demands for money have existed between persons at any point in time when

10  neither demand was barred by the statute of limitations, and an action is thereafter

11  commenced by one such person, the other person may assert in the answer the

12  defense of payment in that the two demands are compensated so far as they equal

13  each other, notwithstanding that an independent action asserting the person's claim

14  would at the time of filing the answer be barred by the statute of limitations.")

15  **17.    Affirmative defense 14:  Mistake of fact (unilateral)**

16      United pleads this defense, in the alternative, for IVS' claims that are based

17  on the D.H. Viant Agreement, the TRPN Agreement and the M.S. Viant

18  Agreement.

19      A mistake of fact is "either an unconscious ignorance or forgetfulness of a

20  past or present fact that is material to the contract . . ." Schwing, *supra*, at § 40:3;

21  Cal. Civ. Code § 1577(1); *see also Donovan v. RRL Corp.*, 26 Cal. 4th 261, 279-81

22  (2001) (unilateral mistake without knowledge of other party at time of contract will

23  support relief if enforcement of the contract would be unconscionable).

24      To establish this defense United must prove the following elements:

25      (a)  United (or its agent) was mistaken about the claims that existed that were

26  covered by the contracts;

27      (b)  IVS knew that United (or its agent) was mistaken and used that mistake

28  to take advantage of it;

(c)  United's (or its agent's) mistake was not caused by its excessive carelessness; and

(d)  United (or its agent) would not have agreed to enter into the contracts if it had known about the mistake.

*Authorities:*   CACI 330; Cal Civ. Code § 1577 ("Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract"); Schwing, *supra*, at § 40:3; *Donovan*, 26 Cal. 4th at 279-81.

## 18.    Affirmative defense 15:  Justification and privilege

United does not plan to pursue this as an affirmative defense at trial.

## 19.    Affirmative defense 16:  No right to restitution

United does not plan to pursue this as an affirmative defense at trial.  United, however, will present evidence that it has already paid IVS far more than the reasonable value of IVS' services; IVS is therefore not entitled to any restitution.

## 20.    Affirmative defense 17:  Equitable claims barred because adequate remedy is available at law

Under California law, declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law.  If IVS is successful in its claims against United, it will be entitled to money damages, which will be an adequate remedy at law, rendering declaratory relief unnecessary and moot.

*Authorities:  Flying Dutchman Park, Inc. v. City and Cnty. of San Francisco*, 93 Cal. App. 4th 1129, 1138 (2001); 13 Witkin, Summary of Cal. Law, Equity, § 3 at p. 284-85 (10th ed. 2005) .[2]

---

[2] In its prayer for relief, IVS seeks "declaratory relief consistent with the relief requested herein."  FAC at p. 20.

### 21.   Affirmative defense 18:  Claims for interest under Health & Safety Code §§ 1371 and 1371.5 barred

Based on this Court's ruling on summary judgment that 15% interest is not available, United no longer needs to pursue this affirmative defense.  In addition, this is an issue post-trial, and not one that needs to be presented at trial.

### 22.   Affirmative defense 19:  No entitlement to punitive damages

United does not plan to pursue this as a technical affirmative defense at trial. However, punitive damages are not available for contract or quasi-contract causes of action.  Cal Civ. Code § 3294. Further, to recover punitive damages on a tort cause of action, the plaintiff must show by clear and convincing evidence that an officer, director or managing agent of the defendant has been guilty of oppression, fraud, or malice.  Cal. Civ. Code § 3294(a).

United is seeking bifurcation of any determination of the amount of punitive damages to be awarded.  Trial of the amount of punitive damages may be bifurcated after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud warranting an award of punitive damages.  Cal. Civ. Code § 3295(d).  The purpose of this provision is "to protect defendants from the premature disclosure of their financial positions when punitive damages are sought." *City of El Monte v. Super. Ct.,* 29 Cal. App. 4th 272, 276 (1994).

### 23.   Affirmative defense 20:  Claims preempted by ERISA.

United plans to pursue this defense at trial because the agreements on which IVS bases its claims specifically incorporate by reference the terms of the D.H. and M.S. health insurance policies.  Both of these policies are employee welfare plans governed by ERISA.  *See Misic v. Bldg. Serv. Emps. Health & Welfare Trust,* 789 F.2d 1374, 1377 (9th Cir. 1986) (ERISA preempts the state claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan). ERISA preempts IVS' claims to the extent that ruling on these claims would require the court to examine the terms of the Members' employer health policies.

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, No. C 07-1027 SI, 2007 WL 1394155, at *5 (N.D. Cal. May 9, 2007).

### 24.   Affirmative defense 21:  No entitlement to attorney's fees

United does not plan to pursue this as an affirmative defense at trial. Because IVS' claim for violation of unfair competition law was dismissed by the Court on summary judgment, United does not expect that IVS will be seeking any attorney's fees under Section 1021 of the California Code of Civil Procedure.  If it does, United will oppose such request in post-trial motions.

### C.   United's Key Evidence in Support of Its Counterclaims and Affirmative Defenses

#### 1.   Counterclaim 1:  Violation of the UCL (under fraudulent and unlawful prongs)

##### a.   Defendant engaged in one of the practices prohibited by the statute.

Unlawful business practices prong:

IVS violated the unlawful business practice prong of the UCL by engaging in conduct that violated California Business & Professions Code Sections 4300-4301, which provide standards for professional conduct and disciplinary standards for pharmacy license holders.  Sections 4300-4301 provide that a holder of a pharmacy license can be subject to discipline for the "commission of any act involving moral turpitude, dishonesty, fraud, deceit or corruption."  Evidence of IVS' unlawful acts includes:

- Testimony of IVS' witnesses that:
    - IVS advertises on its website and in its marketing materials that it "accepts all insurance";
    - IVS did not inform the Members (or their referring physicians) that it was an out-of-network provider and not contracted with any insurance company before providing services to them;
    - IVS did not inform the Members (or their referring physicians) of its

prices or its 50 times Average Wholesale Price (AWP) pricing policy before providing services to them;

- o IVS did not inform United of its prices or its 50 times AWP pricing policy at the time that it called United and verified coverage of services for the Members and key terms of the Members' health insurance policies, including verifying deductible, copay, and coinsurance obligations; and

- o IVS did not bill or attempt to collect any amounts from the Members.

- Documents, including EOBs, showing that (1) after providing services to the Members, IVS charged 50 times market rates (50 times AWP) for its services – with charges that ranged up to $457,000 for a single infusion to D.H.; and (2) IVS delayed sending claims for its services to United until months after the services were rendered.

- Claims forms and work product from Mr. Kaplan showing that IVS delayed sending claims to United until months after the services were rendered.

- Documents, including claims forms and correspondence, that show IVS made false statements to United; these statements included that there were no in-network providers available (when there were) and that the services were provided on an emergency (or "urgent/emergent") basis (which they were not).

- Testimony of M.S. that IVS did not inform him it was an out-of-network provider or inform him prior to treatment what it would charge and that IVS never charged him a copay, deductible, or coinsurance.

- Testimony of IVS' former employee, Renee Sadow, who observed IVS' unlawful and fraudulent conduct.

- Testimony of Jay Smith concerning IVS' misrepresentation to United about the terms of the A.N. Concentra Agreement and the negotiations with Viant of the same.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

56

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

- Testimony of United's expert, Mr. Cornish, who will testify that pharmaceutical industry custom and practice is to collect deductibles, copays, and coinsurance.

- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members, and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by these charges.

- Documents and testimony from Viant witnesses that establish that the only claim that was negotiated or discussed between Viant and IVS was the specific claim identified in the Viant Agreement.

Fraudulent business practices prong:

*See* evidence cited below for United's Intentional Misrepresentation cause of action. Additionally, IVS delayed in submitting bills to conceal its scheme and to allow required copay, coinsurance, and deductible amounts to exhaust. Evidence of this includes:

- Claims forms that show IVS delayed in submitting claims to United, sometimes as long as six months after the date of service.

- Testimony and work product from IVS' expert, Mr. Kaplan, that show IVS delayed in submitting claims to United, sometimes as long as six months after the date of service.

    b.    **United suffered actual injury as a result of IVS' actions.**

United suffered actual injury as the result of IVS' violations of the unlawful and fraud prongs of the UCL because as a result of these practices, it paid money to IVS on the Members' claims that it otherwise would not have paid. The evidence that shows this includes:

- Testimony and work product of IVS' expert, Mr. Kaplan, showing the amounts United paid for drugs and services to the Members.

- Testimony of Sarah Peterson that if United had known of IVS' conduct, it would not have entered into any agreement with IVS, it would not have paid IVS' claims, and it would have asked its Fraud, Waste, and Abuse department to seek recovery of its prior payments to IVS.

- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members, and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by these charges.

- EOBs sent to IVS, which state the dates on which IVS billed and United paid IVS' claims, and the amounts paid.

### 2.     Counterclaim 2:  Intentional misrepresentation

Intentional Affirmative Misrepresentations

### a.     IVS represented to United that certain facts were true.

IVS, through its communications and conduct (1) represented that it would charge deductibles, coinsurance, and or copays to the Members; and (2) represented on claims forms that some of its services were provided on an emergency or ("urgent/emergent") basis and that there were no in-network providers available. The following evidence establishes this claim:

- Testimony of United's expert, Mr. Cornish, who will testify that pharmaceutical industry custom and practice is to collect deductibles, copays, and coinsurance.

- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members, and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by deductibles and coinsurance.

- The Members' health insurance policies, which require the Members to pay deductibles, coinsurance, and/or copays.

- Testimony of IVS' witnesses that:
  - pharmacies are required to collect applicable deductibles, copays, and coinsurance provided by a member's health policy;
  - deductibles, coinsurance, and copays are the responsibility of the patient, and deductibles must be paid before the health plan has the responsibility to start paying claims;
  - IVS' standard practice is to telephone a patient's health plan to "verify" a patient's coverage, including whether the patient's policy has deductible, copay, and coinsurance obligations; and
  - IVS did request and obtain each of the Member's insurance information from United, including his copay, deductible, and coinsurance obligations prior to beginning services and, in addition, after services began.
- The D.H. Viant Agreement, M.S. Viant Agreement, and A.N. Concentra Agreement, which twice reference billing the patient for a deductible, coinsurance, and other patient responsibility amounts, and provide that "Payment of benefits, if any, is subject to all terms and conditions of the policy."
- The TRPN Agreement, which references billing patients for deductibles, coinsurance, and/or copays.
- Documents, including EOBs for the members, which provided that IVS was required to collect a copay, deductible, and/or coinsurance from the Members.
- Documents in IVS' files documenting the verification of each Member's insurance information, including deductible, coinsurance, and other patient responsibility amounts.
- Claims forms submitted by IVS to United in which IVS misrepresented that the services it provided were an emergency (or "urgent/emergent") and/or

1   that there was no in-network provider available.

2   • Documents and testimony from United's witnesses that establish IVS

3   misrepresented in correspondence and communications that the services it

4   provided were "urgent/emergent" and/or that there was no in-network

5   provider available.

6   **b.     IVS' representations were false.**

7   IVS' representations were false because (1) it did not intend to collect

8   deductibles, coinsurance, and copays from D.H., M.S. or A.N.; and (2) the services

9   it provided were not an emergency (or "urgent/emergent").  This is established by

10   the following evidence:

11   • Testimony of IVS' witnesses that since at least 2006 it has been IVS' policy

12   never to collect deductibles, copays, or coinsurance from patients, and IVS

13   never billed and never attempted to collect any deductibles, copays, or

14   coinsurance from the Members.

15   • IVS' response to United's Requests for Admissions, in which IVS admitted

16   that it never charged D.H., M.S., or A.N. for any deductible, copays, or

17   coinsurance and never charged them for any drugs.

18   • Testimony of M.S. that he was not informed by IVS that IVS was an out-of-

19   network provider, was not informed prior to treatment what IVS would

20   charge, and was never billed a copay, deductible, or coinsurance by IVS.

21   • Testimony from IVS' witnesses that they did nothing to verify that there

22   were no in-network providers available before making this representation on

23   claims forms and in correspondence and other communications.

24   • Documents, including medical records, demonstrating that the services IVS

25   provided were not an emergency (nor "urgent/emergent").

26   • Testimony of United's employee, Eleanore Soriano and United's expert Mr.

27   Cornish, who will testify that there were other providers for the drugs IVS

28   provided to the Members.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

60

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

### c. IVS knew that the representations were not true when it made them, or IVS made the representations recklessly and without regard for their truth.

IVS knew that its representations were false as shown by the following evidence:

- Testimony of IVS' witnesses that since at least 2006 it has been IVS' policy never to collect deductibles, copays, or coinsurance from patients, and IVS never billed and never attempted to collect any deductibles, copays, or coinsurance from the Members.

- Testimony from IVS' witnesses that they did nothing to verify that there were no in-network providers available before making this representation on claims forms and in correspondence and other communications.

- Documents, including medical records, demonstrating that the services IVS provided were not an emergency (nor "urgent/emergent").

### d. IVS intended United to rely on its representations.

IVS intended United to rely on its representations because it knew that if United knew the truth, United would not have paid it and would not have entered into the Agreements, as shown by the following evidence:

- Testimony of United's expert, Mr. Cornish, who will testify that pharmaceutical industry custom and practice is to collect deductibles, copays, and coinsurance.

- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by these charges.

- Testimony of IVS' witnesses that claims forms are intended to provide accurate information to health plans so that the health plans can process claims.

- The Members' health insurance policies, which require the Members to pay

1  deductibles, coinsurance, and/or copays.

2  • Testimony of IVS' witnesses that:

3      o pharmacies are required to collect applicable deductibles, copays, and

4        coinsurance provided by a member's health insurance policy;

5      o deductibles, coinsurance, and copays are the responsibility of the

6        patient, and deductibles must be paid before the health plan has the

7        responsibility to start paying claims;

8      o IVS' standard practice is to telephone a patient's health plan to

9        "verify" a patient's coverage, including whether the patient's policy

10       has deductible, copays, and coinsurance obligations; and

11     o IVS did request and obtain each of the Member's insurance

12       information from United, including his copay, deductible, and

13       coinsurance obligations prior to beginning services and, in addition,

14       after services began.

15 • The D.H. Viant Agreement, M.S. Viant Agreement and A.N. Concentra

16   Agreement, which twice reference billing the patient for a deductible,

17   coinsurance, and other patient responsibility amounts, and provide that

18   "Payment of benefits, if any, is subject to all terms and conditions of the

19   policy."

20 • The TRPN Agreement, which references billing patients for deductibles,

21   coinsurance, and/or copays.

22 • Documents, including EOBs for the members, which provided that IVS was

23   required to collect a copay, deductible, and/or coinsurance from the

24   Members.

25        **e.    United reasonably relied on the representations.**

26   United reasonably relied on IVS' representations by entering into the

27 Agreements and by paying IVS as shown by the following evidence:

28 • Testimony of Sarah Peterson that if United had known of IVS' conduct, it

1    would not have entered into any agreement with IVS, it would not have paid

2    IVS' claims, and it would have asked its Fraud, Waste, and Abuse

3    department to seek recovery of its prior payments to IVS.

4    • Testimony of Sarah Peterson that United relies on the accuracy of claims

5    forms in processing claims.

6    • Testimony of United's expert, Mr. Cornish that it is common practice for

7    pharmaceutical providers to collect applicable deductibles and coinsurance.

8                    **f.      United was harmed.**

9    United was harmed because it paid claims that it otherwise would not have

10   paid and entered into the Agreements.

11   • Testimony of Sarah Peterson that if United had known of IVS' conduct, it

12   would not have entered into any agreement with IVS, it would not have paid

13   IVS' claims, and it would have asked its Fraud, Waste, and Abuse

14   department to seek recovery of its prior payments to IVS.

15   • Testimony of United's expert, Professor Baicker, who will testify as to the

16   harm caused to United, consumers, health plan members and the health care

17   industry by the waiver of copays, deductibles, and coinsurance by health care

18   providers, and the economic incentives provided by these charges.

19   • The health insurance policies for D.H. and A.N., which provided that no

20   benefits are due where a provider waives deductibles or coinsurance, and the

21   M.S. health insurance policy, which requires the payment of deductibles and

22   copays/coinsurance.

23                 **g.      United's reliance on IVS' representations was a
                            substantial factor in causing its harm.**

24

25   United's reliance on IVS' false statements was a substantial cause of

26   United's damages, because if United had known the truth, it would have taken

     action to avoid or mitigate its damages.

27

28   • Testimony of Sarah Peterson that if United had known of IVS' conduct, it

1   would not have entered into any agreement with IVS, it would not have paid

2   IVS' claims, and it would have asked its Fraud, Waste, and Abuse

3   department to seek recovery of its prior payments to IVS.

4   • Testimony of United's expert, Professor Baicker, who will testify as to the

5   harm caused to United, consumers, health plan members and the health care

6   industry by the waiver of copays, deductibles, and coinsurance by health care

7   providers, and the economic incentives provided by these charges.

8   • The health insurance policies for D.H. and A.N., which provided that no

9   benefits are due where a provider waives deductibles or coinsurance.

10   • The M.S. health insurance policy, which provides that M.S. is required to pay

11   copays, deductibles, and coinsurance.

12   • Testimony of United's employee, Eleanore Soriano and United's expert Mr.

13   Cornish, who will testify that there were other providers for the drugs IVS

14   provided to the Members.

15   <u>Intentional Misrepresentation by Fraudulent Concealment</u>

16   **a.   IVS disclosed some facts to United but intentionally
17   failed to disclose other facts or IVS intentionally failed
to disclose certain facts that were known only to it and
18   that United could not have discovered.**

19   IVS, through its communications and conduct (1) represented that it would

20   charge deductibles, coinsurance, and/or copays to the Members but failed to

21   disclose that it had never collected those charges and had no intent to collect those

22   charges from the Members; and (2) omitted during negotiations with Viant that

23   there were other claims for services provided to the Members.  The evidence for

24   this element largely overlaps the evidence discussed above under element one of

25   the Intentional Affirmative Misrepresentation section.  Additional evidence

26   includes:

27   • Documents and testimony from Viant witnesses establishing that the only

28   claim that was negotiated or discussed between Viant and IVS was the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

64

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

specific claim identified in the Viant Agreement.

### b.    United did not know of the concealed facts.

- Testimony of Sarah Peterson that if United had known of IVS' conduct, it would not have entered into any agreement with IVS, it would not have paid IVS' claims, and it would have asked its Fraud, Waste, and Abuse department to seek recovery of its prior payments to IVS.

- Testimony of United's expert, Mr. Cornish that it is common practice for pharmaceutical providers to collect applicable deductibles, copays, and coinsurance.

- Testimony from Viant witnesses that the only claim that was discussed between IVS and Viant was the specific claim identified in the Viant Agreement.

### c.    IVS intended to deceived United by concealing the facts.

*See* evidence cited above under the intent element for the Intentional Affirmative Misrepresentation.  Additional evidence includes:

- Testimony from Viant witnesses that the only claim that was discussed between IVS and Viant was the specific claim identified in the Viant Agreement.

### d.    Had the omitted information been disclosed, United reasonably would have behaved differently.

*See* evidence discussed above under the reasonable reliance element for the Intentional Affirmative Misrepresentation.

### e.    United was harmed.

*See* evidence cited above under the harm element for the Intentional Affirmative Misrepresentation.

### f.    IVS' concealment was a substantial factor in causing United's harm.

*See* evidence cited above under the causation element for the Intentional

1   Affirmative Misrepresentation.

2   ### 3.   Counterclaim 3:  Negligent misrepresentation

3   United's evidence for its negligent misrepresentation claim largely overlaps

4   its evidence for its intentional misrepresentation claim, with a few exceptions.

5   #### a.   IVS represented to United that certain facts were true.

6   *See* evidence cited above for United's Intentional Misrepresentation

7   counterclaim.

8   #### b.   IVS' representations were not true.

9   *See* evidence cited above for United's Intentional Misrepresentation

10   counterclaim.

11   #### c.   IVS had no reasonable grounds for believing these representations were true when it made them.

12

13   IVS had no reasonable grounds to believe its misrepresentations were true, as

14   shown by the following evidence:

15   - Testimony of IVS' witnesses that since at least 2006 it has been IVS' policy

16   never to collect deductibles, copays, or coinsurance from patients, and IVS

17   never billed and never attempted to collect any deductibles, copays, or

     coinsurance from the Members.

18   - Testimony from IVS' witnesses that they did nothing to verify that there

19   were no in-network providers available.

20   - Documents, including medical records, demonstrating that the services IVS

21   provided were not an emergency (nor "urgent/emergent").

22   - Documents, including claims forms, that establish IVS had additional claims

23   for services it provided to the Members when it negotiated the Viant

24   Agreements.

25   #### d.   IVS intended that United rely on these representations.

26

27   *See* evidence cited above for United's Intentional Misrepresentation

28   counterclaim.

### e.    United reasonably relied on IVS' representations.

*See* evidence cited above for United's Intentional Misrepresentation counterclaim.

### f.    United was harmed.

*See* evidence cited above for United's Intentional Misrepresentation counterclaim.

### g.    United's reliance on IVS' representations was a substantial factor in causing its harm.

*See* evidence cited above for United's Intentional Misrepresentation counterclaim.

## 4.    Affirmative defense 2:  Fraud

United is entitled to this defense because IVS engaged in fraud with respect to the Agreements and the drugs and services provided to the Members.  IVS knew that it had a duty to collect copay, deductibles, and coinsurance from the Members, and misrepresented to United that it would make these collections even though it never intended to do so.  IVS also (1) submitted false information to United on claims forms and in correspondence and other communications to manipulate United's claims processing system into making a larger payment to IVS; and (2) failed to inform Viant during negotiations about additional claims so that Viant would sign the pricing agreements.

The evidence for this affirmative defense is the same as that cited above for United's counterclaim for Intentional Misrepresentation.

### a.    Plaintiff represented to United that facts were true or intentionally concealed an important fact from United, creating a false representation.

*See* evidence cited above for United's Intentional Misrepresentation counterclaim.

### b.    Plaintiff knew that its representations were not true.

*See* evidence cited above for United's Intentional Misrepresentation counterclaim.

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

1

### c. Plaintiff made the representations to persuade Defendant to enter into the contracts.

2

*See* evidence cited above for United's Intentional Misrepresentation

3

counterclaim.

4

### d. United reasonably relied on these representations.

5

*See* evidence cited above for United's Intentional Misrepresentation

6

counterclaim.

7

### e. United would not have entered into the contracts if it had known that the representations were not true.

8

9

*See* evidence cited above for United's Intentional Misrepresentation

counterclaim.

10

### 5. Affirmative defense 3: Unclean hands

11

12

IVS has been guilty of unconcscionable, bad faith, or inequitable conduct in

connection with this matter and has violated the basic tenets of equity

13

jurisprudence.  IVS' improper conduct includes:

14

- purchasing IVIG at a price far below wholesale and then marking up the

15

16

    price of the drug by approximately 50 times its average wholesale price;

- advertising on its website and in marketing materials that it "accepts all

17

    insurance" while withholding from D.H., M.S., and A.N. (and their referring

18

19

    hospital/physicians) its exorbitant charges and its status as an out-of-network

    provider;

20

- waiving deductibles, coinsurance, and/or copays for D.H., M.S., and A.N. to

21

22

    conceal its charges from these patients and continue its scheme, all while

    representing to United that it would collects these charges;

23

- delaying in submitting claims to United for many months so that it could

24

25

    continue its scheme undetected and allow coinsurance, deductible, and/or

    copay requirements to exhaust;

26

- submitting false information to United on claims forms and in

27

28

    correspondence and other communications to manipulate United's claims

CROWELL
& MORING LLP
ATTORNEYS AT LAW

68

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

processing system in an effort to receive larger payments; and

- attempting to extort exorbitant payments from United through the cloud of litigation once its charges were discovered.

The evidence that will establish this conduct includes:

- Testimony of IVS' witnesses that:
  - o IVS advertises on its websites and in marketing materials that it accepts "all insurance";
  - o IVS did not inform the Members (or their referring physicians) that it was an out-of-network provider and not contracted with any health insurance company before providing services to them;
  - o IVS did not inform any of the Members (or their referring physicians) of its prices or its 50 times Average Wholesale Price (AWP) pricing policy before providing services to them;
  - o IVS did not inform United of its prices or its 50 times AWP pricing policy at the time that it called United and verified coverage of services for the Members and key terms of the Members' health insurance policies; and
  - o IVS did not bill or attempt to collect any amounts from the Members.

- Documents, including EOBs, showing that after providing services to the Members, IVS charged 50 times market rates (50 times AWP) for its services – with charges that ranged up to $457,000 for a single infusion to D.H.

- Documents, including claims forms and work product from Mr. Kaplan, showing that IVS delayed sending claims for its services to United until months after the services were rendered.

- Documents, including claims forms, that establish IVS submitted false information to United on claims forms and in correspondence and other communications, including representing that the services provided were an emergency (or "urgent/emergent") and that there was no in-network provider

CROWELL
& MORING LLP
ATTORNEYS AT LAW

69

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

available.

- Testimony of United's employee, Eleanore Soriano and United's expert Mr. Cornish, who will testify that there were other providers for the drugs IVS provided to the Members.

- Testimony of United's employee, Sarah Peterson, that United paid the full $1,000,000 in out-of network benefits available to D.H. during the time period at issue in this case, and thereafter, D.H. had no remaining out-of-network benefits.

- Testimony of M.S. that IVS never informed him it was an out-of-network provider and did not inform him prior to treatment what it would charge, and that IVS never charged him a copay, deductible, or coinsurance.

- Testimony of IVS' former employee, Renee Sadow, who observed IVS' unlawful and fraudulent conduct.

- Testimony of United's expert, Mr. Cornish, who will testify that pharmaceutical industry custom and practice is to collect deductibles, copays, and coinsurance.

- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by these charges.

- Testimony of Sarah Peterson that if United had known of IVS' conduct, it would not have entered into any agreement with IVS, it would not have paid IVS' claims, and it would have asked its Fraud, Waste, and Abuse department to seek recovery of its prior payments to IVS.

### 6.    Affirmative defense 5: Waiver

IVS waived any right to payment it had under the Agreements when it continued to provide services to the Members after United indicated that it would no longer pay under the Agreements.

### a.  IVS alleges that it believed United was required to pay for future shipments of goods at the price stated in the D.H. and M.S. Viant Agreement.

- IVS' complaint, which asserts that it is entitled to be paid for all services it provided to D.H. and M.S. at the prices stated in the D.H. and M.S. Viant Agreements.

### b.  IVS voluntarily and knowingly gave up its right to have United perform these obligations.

- Documents, including EOBs for M.S., which show that as of September 2008, United was paying for IVS' claims for M.S. at their reasonable amount.

- Documents, including EOBs for D.H., which show that United had paid claims other than the specific nursing claims in the Viant Agreement based on Medicare.

- Testimony of IVS' witnesses that IVS received and read the EOBs and checks, and understood that United was not paying under the terms of the M.S. Viant Agreement.  IVS accepted the checks and continued to render services to M.S.

- Testimony of M.S. that he continued to receive treatment from IVS after IVS told him that it was not being paid.

## 7.  Affirmative defense 7:  Statutes of Limitations

IVS' claims fail, in whole or in part, because they were not filed within the time set by law.  IVS' claims against United accrued when United informed IVS that it did not intend to pay each of the charges asserted by IVS.

IVS' breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel and open book account claims, in whole or in part, were not brought until four years after the alleged causes of action accrued.  Cal. Civ. Proc. Code §§ 337, 337a.

IVS' intentional misrepresentation claim, in whole or in part, was not brought until three years after the alleged cause of action accrued.  Cal. Civ. Proc.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

LAACTIVE-601612477.11

Code § 338(d).

Evidence relevant to United's statute of limitations defenses includes:

- The original complaint filed by IVS in this action, which was filed in April 2012.
- United's EOBs, which it sent to IVS, and which state the amount United paid on each claim.
- Testimony and work product from IVS' expert Mr. Kaplan who prepared summaries of the claims at issue.
- Testimony from Sarah Peterson regarding the dates on which United sent its explanations of benefits to IVS.
- Testimony of IVS' employees, who will testify that IVS received and read United's EOBs and checks, and understood them to mean that United was not paying under IVS' interpretation of the Agreements.

### 8.   Affirmative defense 8:  Laches

Evidence that United is entitled to a laches defense for IVS' claims for its services for M.S. includes the following:

#### a.   IVS unreasonably delayed in bringing suit.

- IVS' records and documents, which show that on September 2, 2008, United informed IVS that it would not pay for services to M.S. under the M.S. Viant Agreement, but would pay these based on the reasonable charge.
- The original complaint filed by IVS in this action in April 2012.
- United's EOBs, which it sent to IVS, and which state the amount United paid on each claim.
- Testimony and work product from IVS' expert Mr. Kaplan who prepared summaries of the claims at issue, including the relevant dates when claims were paid.
- Testimony from Sarah Peterson regarding the dates on which United sent its explanations of benefits to United.

**b.      IVS either acquiesced to United's payment for services at rates less than those in the Agreements, or its delay in bringing suit caused prejudice to United.**

- IVS' records and documents, which show that (1) United informed IVS it would not pay for services under the Agreements, but would pay based on the benefit plans; and (2) IVS continued to provide drugs and services to the Members.

- Testimony of IVS' employees, who will testify that IVS received and read United's EOBs and checks, and understood them to mean that United was not paying under IVS' interpretation of the Agreements.

- Testimony of Sarah Peterson that if United had known of IVS' conduct, it would not have entered into any agreement with IVS, it would not have paid IVS' claims, and it would have asked its Fraud, Waste, and Abuse department to seek recovery of its prior payments to IVS.

- Testimony of United's employee, Eleanore Soriano and United's expert Mr. Cornish, who will testify that there were other providers for the drugs IVS provided to the Members.

### 9.      Affirmative defense 12:  Unconscionable pricing.

Given their commercial setting, purpose, and effect, the price terms that IVS seeks to enforce in the Agreements are so grossly excessive as to shock the conscience and common sense of all men.  The evidence that establishes this defense includes:

- Testimony of IVS' witnesses that the method that it used to set the prices for the drugs it provided to D.H. and M.S. was fifty times average wholesale price (50 times AWP), and that there is no unusual circumstance that justified the prices IVS charged for the drugs.  The price was solely set by IVS' automatic pricing mechanism.

- Testimony of United's expert, Mr. Cornish, and its employee, Eleanore Soriano, that IVS' charges were more than 50 times the prices charged by

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW; CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

1    other pharmacies and there were lower-cost providers for the drugs IVS

2    provides to the Members.

3    • Testimony of M.S. about charges from other home infusion providers for

4    services provided to him.

5    • Testimony of Renee Sadow, former Pharmacist-in-Charge at IVS, of the

6    charges at other home infusion pharmacies for the drugs provided by IVS to

7    the Members.

8    **10.   Affirmative defense 13:  Setoff and recoupment.**

9    United asserts this defense to the extent that the jury or Court finds that

10   money is due from United to IVS under certain claims in this case and that money

11   is due to United from IVS under other claims in this case.  The applicability of this

12   defense depends on the decisions at trial.

13   **11.   Affirmative defense 14:  Mistake of fact (unilateral).**

14   **a.   United (or its agent) was mistaken about the claims that existed that were covered by the contracts.**

15   • The D.H. Viant Agreement, which was entered into after United had already

16   paid for half of IVS' drug claims for D.H. at Medicare rates, and which only

17   references nursing services that IVS provided in December 2009.

18   • The M.S. Viant Agreement, which was entered into after IVS had provided

19   four infusions to M.S., but IVS had only sent a bill for one date of service.

20   Testimony of Viant's employees that:

21   o  United sent Viant no claims for D.H. for negotiation other than the

22   $3000 nursing claim, and the nursing claim was the only claim

23   addressed between Viant and IVS with respect to D.H.;

24   o  At the time the Viant Agreement was executed, Viant was aware of

25   only one claim for M.S. with a specific List Price for a specific drug

26   code, and Viant was not aware of any claims for M.S. other than the

27   claim Viant negotiated with IVS; and

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

74

UNITED'S MEMO OF CONTENTIONS OF FACT & LAW;
CASE NO. 2:12-CV-04887-FMO-MRWX

LAACTIVE-601612477.11

- Viant expected that IVS would comply with the terms of M.S.'s and D.H.'s health insurance policies and that the terms of those policies would apply.

- Testimony of IVS' witnesses that:
  - IVS never discussed D.H.'s drug claims with Viant;
  - IVS did not disclose all dates of service for M.S. to Viant when it negotiated the M.S. Viant Agreement; and
  - IVS never informed anyone at United, Viant or Three Rivers that IVS would waive all copays, deductibles, and coinsurance obligations of the Members.

- Testimony of Sarah Peterson that United expected that IVS and other providers comply with members' health insurance policies, including by charging copays, deductibles, and coinsurance as required.

- Documents, including EOBs, showing that: (1) at the time the D.H. Viant Agreement was executed, United had already paid several claims for D.H.; (2) at the time the M.S. Viant Agreement was executed, IVS had already provided four sets of services to M.S., for which it was holding the bills that would eventually total $600,000; and (3) for each date of service for D.H. and M.S., United informed IVS of the Member's responsibility.

### b.    IVS knew that United (or its agent) was mistaken and used that mistake to take advantage of it.

- The D.H. Viant Agreement, which (1) was entered into after United had already paid for half of IVS' drug claims for D.H. at market rates; and (2) only references nursing services that IVS provided in December 2009. It also specifically references charging D.H. for deductibles and coinsurance.

- The M.S. Viant Agreement, which (1) was entered into after IVS had provided four infusions to M.S., but IVS had only sent a bill for one date of service; and (2) specifically references charging M.S. for copay, deductibles

and coinsurance.

- Testimony of Viant's employees that:
  - o United sent Viant no claims for D.H. for negotiation other than the $3000 nursing claim, and the nursing claim was the only claim addressed between Viant and IVS with respect to D.H.; and
  - o at the time the Viant Agreement was executed, Viant was aware of only one claim for M.S. with a specific List Price for a specific drug code, and Viant was not aware of any other claims for M.S.
- Testimony of IVS' witnesses that:
  - o IVS never discussed D.H.'s drug claims with Viant;
  - o IVS did not disclose all dates of service for M.S. to Viant when it negotiated the M.S. Viant Agreement; and
  - o IVS never informed anyone at United, Viant or Three Rivers that IVS would waive all copays, deductibles, and coinsurance obligations of the Members.
- Testimony of United's expert Mr. Cornish, who will testify that it is the custom and practice in the health care industry, including for infusion service providers, to collect deductibles, copays, and coinsurance.
- Documents, including EOBs, showing that: (1) at the time the D.H. Viant Agreement was executed, United had already paid several claims for D.H.; (2) at the time the M.S. Viant Agreement was executed, IVS had already provided four sets of services to M.S., for which it was holding the bills that would eventually total $600,000; and (3) for each date of service for D.H. and M.S., United informed IVS of the Member's responsibility.
- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by these charges.

### c.   United's (or its agent's) mistake was not caused by its excessive carelessness.

- The D.H. Viant Agreement, which was entered into after United had already paid for half of IVS' drug claims for D.H. at market rates, and which only references nursing services that IVS provided in December 2009.

- The M.S. Viant Agreement, which was entered into after IVS had provided four infusions to M.S., but IVS had only sent a bill for one date of service.

- Testimony of Viant's employees that:
  - United sent Viant no claims for D.H. for negotiation other than the $3000 nursing claim, and the nursing claim was the only claim addressed between Viant and IVS with respect to D.H.; and
  - At the time the Viant Agreement was executed, Viant was aware of only one claim for M.S. with a specific List Price for a specific drug code, and Viant was not aware of any other claims for M.S.

- Testimony of IVS' witnesses that:
  - IVS never discussed D.H.'s drug claims with Viant;
  - IVS did not disclose all dates of service for M.S. to Viant when it negotiated the M.S. Viant Agreement; and
  - IVS never informed anyone at United, Viant or Three Rivers that IVS would waive all copays, deductibles, and coinsurance obligations of the Members.

- Testimony of Sarah Peterson that United expected that IVS and other providers comply with members' health insurance policies, including by charging copays, deductibles, and coinsurance as required.

- Testimony of United's expert Mr. Cornish, who will testify that it is the custom and practice in the health care industry, including for infusion service providers, to collect deductibles, copays, and coinsurance.

- Documents, including EOBs, showing that: (1) at the time the D.H. Viant Agreement was executed, United had already paid several claims for D.H.; (2) at

the time the M.S. Viant Agreement was executed, IVS had already provided four sets of services to M.S., for which it was holding the bills that would eventually total $600,000; and (3) for each date of service for D.H. and M.S., United informed IVS of the member's responsibility.

**d.    United (or its agent) would not have agreed to enter into the contracts if it had known about the mistake.**

- Testimony of Sarah Peterson that if United had known that IVS intended the D.H. Viant Agreement to apply to drug claims, or that IVS had concealed three service dates for M.S. before entering into the M.S. Viant Agreement, or that IVS would waive all copays, deductibles, and coinsurance obligations of the Members, it would not have entered into any agreement with IVS. Instead, United would not have paid IVS' claims and it would have asked its Fraud, Waste, and Abuse department to seek recovery of its prior payments to IVS.

- Testimony of United's expert, Professor Baicker, who will testify as to the harm caused to United, consumers, health plan members and the health care industry by the waiver of copays, deductibles, and coinsurance by health care providers, and the economic incentives provided by those charges.

**12.    Affirmative defense 17:  Equitable claims barred because adequate remedy is available at law.**

Under California law, declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law.  Here, IVS is not entitled to declaratory relief because the legal causes of action it has pleaded would fully compensate it for its claimed injuries.  Moreover, none of the contracts on which it is sued provide for continuing obligations by United.

- Testimony of IVS' witnesses that D.H.'s and M.S.'s treatment with IVS has completed.

- Testimony of M.S. that his treatment with IVS has completed.

CROWELL & MORING LLP
ATTORNEYS AT LAW

LAACTIVE-601612477.11

### 13.    Affirmative defense 20:  Claims preempted by ERISA.

IVS' entitlement to payment in this case is dependent, in part or in whole, on the terms of the Members' ERISA-governed employer health insurance policies, including, *inter alia*, terms requiring the Members to pay deductibles and coinsurance, conditioning the availability of benefits on a health provider's non-waiver of benefits, and (for D.H.) limiting benefits for out-of-network services to a lifetime maximum.  The following evidence supports this defense:

- The claims submitted by IVS to United, which state that IVS obtained an assignment of benefits from the Members of their employer health insurance policy benefits.
- The assignments of benefits documents for each Member in this case.
- The Agreements, which all condition payments for services rendered to the Members on their entitlement to benefits under their employer health insurance policies.
- The D.H. and M.S health insurance policies.

### UNITED'S POSITION ON ANTICIPATED EVIDENTIARY ISSUES

United has filed the following motions in limine, which are currently pending before the Court and remain to be ruled upon:

1.    Defendant's *Motion in Limine* No. 2 to exclude any testimony or evidence regarding any wrongful acts by any affiliate of United because such evidence would be irrelevant, more prejudicial than probative of any issues in this case and admission of such evidence would constitute the improper use of evidence of unproven prior acts having nothing to do with the claims in this case.  Fed. R. Evid. 401, 402, 403, 404.

2.    Defendant's *Motion in Limine* No. 3 to exclude any testimony by Plaintiffs' expert Randy Farber (i) on interpretations of the contracts at issue in this case; (ii) on alleged shortages of IVIG during the time relevant to this case; (iii) that United had no contracted providers for IVIG during the time relevant to this case;

(iv) on the reasonable and customary values for IVIG; (v) that United was legally obligated to redirect D.H. and M.D. to in-network providers; (vi) that the Members had no financial incentive to seek less-costly providers; (vii) that IVS has not overcharged United for IVIG drugs in this case; (viii) that IVS has special capabilities or qualifications as an infusion pharmacy; and (ix) that United expert Mr. Cornish purportedly relied on improper evidence for the reasonable and customary charges for IVIG.  These opinions should be excluded because they are speculative and not based in fact, because they constitute statements of the law or legal conclusions which are improper matters for expert testimony and because they are more prejudicial than probative of any relevant facts.  Fed. R. Evid. 401, 402, 403, 702.

      3.      Defendants' *Motion in Limine* No. 4 to exclude any testimony by Plaintiffs' rebuttal expert Dylan Roby.  Mr. Roby's opinions should be excluded because they are speculative and not based in fact, because they constitute statements of the law or legal conclusions which are improper matters for expert testimony, because they exceed the scope of his rebuttal expert designation, and because they are more prejudicial than probative of any relevant facts.  Fed. R. Evid. 401, 402, 403, 702.

      4.      Defendants' *Motion in Limine* No. 5 to exclude any testimony or evidence of settlement offers or statements made during discussions between IVS and United's legal department regarding the claims for any of the Members. Evidence regarding these settlement offers and discussions is irrelevant, more prejudicial than probative of any fact, and subject to a specific exclusionary rule. Fed. R. Evid. 401, 402, 403, 408.

## BIFURCATION OF DAMAGES

Pursuant to California Code of Civil Procedure Section 3295(d), United requests that the Court bifurcate trial of the amount of punitive damages until the trier of fact has decided the parties' respective liability for punitive damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### JURY TRIAL

The trial is to be a jury trial, and a timely demand has been made.

The specific issues to be tried by the Court are as follows:

1.      Counterclaim No. 1:  Unfair business practices:  *See Hodge v. Super. Ct.*, 145 Cal. App. 4th 278, 284 (2006) (no jury trial available in a UCL action because "the UCL provides only for equitable remedies").

2.      Affirmative Defense No. 8: Laches:  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("there is no right to a jury on the equitable defense of laches").

3.      Affirmative Defense No. 12: Unconscionability. *See McCaffrey Grp., Inc. v. Super. Ct.*, 224 Cal. App. 4th 1330, 1347 (2014)  ("'Unconscionability is ultimately a question of law for the court.'") (citing *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 851 (2001)).

4.      Affirmative Defense No. 17: Equitable claims barred because an adequate remedy is available at law.  Whether an adequate remedy exists at law is a legal issue.  *See Flying Dutchman Park, Inc.*, 93 Cal. App. 4th at 1138-1139 (sustaining demurrer to claim for injunctive, mandatory and declaratory relief based on judicial finding that plaintiff had an adequate remedy at law).

5.      Affirmative Defense No. 20: IVS' claims are preempted by federal ERISA statutes.  Preemption is a matter of law for the court.

### CLAIMS FOR ATTORNEYS FEES AND COSTS

Under California law, an award of attorney's fees is only available if provided in a contract between the parties, or if authorized by statute.  None of the contracts on which IVS sues provides for attorney's fees.  While IVS seeks attorney's fees under California Code of Civil Procedures, Section 1021, IVS cannot establish that its prosecution of this suit vindicates any important public right; rather, this suit solely involves matters of IVS' private concern.

## ABANDONMENT OF ISSUES

As stated more particularly in Section II.A. above, United does not intend to pursue the following Affirmative Defenses:

- Affirmative Defense No. 1:  Failure to state a claim for which relief can be granted
- Affirmative Defense No. 4:  Failure of consideration
- Affirmative Defense No. 6:  Estoppel
- Affirmative Defense No. 9:  Material breach
- Affirmative Defense No. 10:  Unjust enrichment
- Affirmative Defense No. 11:  IVS' claims are barred because they seek payments in excess of the benefits available under a plan member's health care benefits plan
- Affirmative Defense No. 15:  Justification and privilege
- Affirmative Defense No. 16:  No right to restitution
- Affirmative Defense No. 18:  No entitlement to interest under the California Knox-Keene Act (including Health & Safety Code §§ 1371 and 1371.5)
- Affirmative Defense No. 19:  No entitlement punitive damages
- Affirmative Defense No. 21:  No entitlement to attorneys' fees

Dated:     January_15, 2016                    CROWELL & MORING LLP


                                                    */s/ Steven D. Allison*
                                                    Steven D. Allison
                                                    Jennifer S. Romano
                                                    Samrah Mahmoud
                                                    Attorneys for Defendant and Counterclaimant
                                                    UNITED HEALTHCARE SERVICES, INC.